**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Indianapolis Division**

| | |
|---|---|
| DEMONA FREEMAN, | |
| Plaintiffs, | |
| v. | Case No.  1:18-CV-3844-TWP-DLP |
| OCWEN LOAN SERVICING, LLC, MANLEY DEAS KOCHALSKI, LLC, and THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK as successor in interest to JPMorgan Chase Bank, N.A., as Trustee for C-BASS Mortgage Loan Asset-Backed Certificates, Series, 2005-RPI, | |
| Defendants. | |

**DEFENDANT OCWEN LOAN SERVICING, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Ocwen Loan Servicing, LLC ("Ocwen"), by counsel, submits this Memorandum in Support of its Motion to Dismiss Counts II, III, V, VI, VII, VIII, X, and XI of Plaintiff Demona Freeman's ("Plaintiff") Second Amended Complaint.  For the reasons stated below, Ocwen respectfully requests the Court grant its Motion.

## I.    INTRODUCTION

This case concerns alleged errors that were made in conjunction with Plaintiff's Chapter 13 Bankruptcy filed in 2012 to avoid foreclosure on her home.  Specifically, Plaintiff alleges that after the Bankruptcy Court disallowed a portion of the claim filed by The Bank of New York Mellon ("BONY") in the Bankruptcy Court, its servicer (Ocwen) nonetheless sought to collect the

disallowed charges and fees. Plaintiff now brings eight claims against Ocwen,[1] alleging violations of (1) the Real Estate Procedures Settlement Act ("RESPA") in Count II; (2) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k ("FDCPA") in Count III; (3) the Fair Credit Reporting Act, 15 U.S.C. § 1681c-1 ("FCRA") in Count V; (4) the Bankruptcy Discharge Injunction (11 U.S.C. § 524) in Count VI; (5) Orders of the United States Bankruptcy Court for the Southern District of Indiana in Count VII; (6) the Indiana Crime Victim's Relief Act, § 34-24-3-1 ("ICVRA") in Count VIII; (7) the Indiana Deceptive Consumer Sales Act, I.C. § 14-5-0.5 *et seq.* ("IDCSA") in Count X; and (8) the Telephone Consumer Protection Act ("TCPA") in Count XI.

However, for the multiple reasons summarized below and explained further herein, Plaintiff's claims must be dismissed:

- Plaintiff claims under the Real Estate Settlement Procedures Act (Count II) must be dismissed because (i) the correspondence she sent to Ocwen does not constitute "Qualified Written Requests," (ii) Ocwen's responses to her inquiries were objectively reasonable, (iii) there is no private right of action for many of her claims, (iv) she erroneously claims statutory damages in excess of $2,000, and (v) fails to state a claim for pattern and practice damages.

- Plaintiff's claim under the Fair Debt Collection Practices Act (Count III) must be dismissed because it is preempted by the Bankruptcy Code and/or time-barred under the FDCPA's one-year statute of limitations.

- Plaintiff's claim under the Fair Credit Reporting Act (Count V) must be dismissed because she has failed to allege facts to state a claim upon which relief can be granted.

- Plaintiff has failed to state a claim for violation of the Bankruptcy Court's Discharge Injunction (Count VI) because there is no private right of action under 11 U.S.C. § 524.

---

[1] There are three additional claims in the Second Amended Complaint that are not brought against Ocwen. Specifically, Count I (Breach of Contract) and Count IV (violations of the Truth in Lending Act) are brought only against The Bank of New York Mellon. Count IX (violations of the Fair Debt Collection Practices Act) is brought only against Manely, Deas, Kochalski, LLC.

- Plaintiff has failed to state a claim for violation of the Bankruptcy Court's Orders (Count VII) because there is no private right of action for damages based on a violation of the orders.

- Plaintiff's claim under the Indiana Crime Victim's Relief Act (Count VIII) must be dismissed because it is preempted by the Bankruptcy Code.

- Plaintiff claim under the Indiana Deceptive Consumer Sales Act (Count X) must be dismissed because she did not satisfy the prerequisites to filing suit and otherwise failed to allege facts to state a claim upon which relief can be granted.

- Plaintiff has failed to State a Claim for Violation of the Telephone Consumer Protection Act (Count XI) because she has failed to allege facts sufficient to state a claim upon which relief can be granted.

## II.    BACKGROUND

Plaintiff filed her original Complaint against Ocwen on December 6, 2018. *See* Pl.'s Compl. (ECF No. 1). Ocwen filed an Answer to the original Complaint. (ECF No. 18). Plaintiff thereafter sought leave and filed a First Amended Complaint, which added Defendants BONY and the law firm Manley Deas Kochalski, LLC. *See* Pl.'s First Amend. Compl. (ECF No. 24). Defendants BONY and Ocwen also filed Answers to the First Amended Complaint. (ECF Nos. 37 & 38).

Despite two previous attempts at pleading her claims in this case, Plaintiff again sought leave and filed a Second Amended Complaint, adding additional claims against Ocwen. *See* Pl.'s Second Amend. Compl. (ECF No. 59). After errors with the exhibits in the Second Amended Complaint were brought to her attention by Defendants during a hearing with the Court, Plaintiff sought leave from the Court to correct the exhibits. *See* Pl.'s Mot. for Leave (ECF No. 61). As part of that Motion for Leave, Plaintiff also asked the Court for leave to file a Third Amended Complaint. *See id.*

While considering Plaintiff's Motion for Leave to file a Third Amended Complaint, the Defendants moved for an extension to file a responsive pleading until the Court decided whether

to grant leave for a Third Amended Complaint.  (ECF No. 63).  On July 19, 2019, the Court entered an Order setting Defendants' responsive pleading date as twenty-one (21) days after it ruled on Plaintiff's Motion for Leave to file a Third Amended Complaint.  (ECF No. 64).  Thereafter, on September 3, 2019, the Court entered an Order Granting in Part and Denying in Part Plaintiff's Motion for Leave.  (ECF No. 83).  Specifically, the Court denied Plaintiff's request for leave to file a third amended complaint but allowing Plaintiff to correct the exhibits in her Second Amended Complaint, making that the operative pleading.  *Id*.  On September 20, 2019, Plaintiff filed the corrected Second Amended Complaint.  (ECF No. 84). This Motion to Dismiss is filed in response to the corrected Second Amended Complaint.

### III.    LEGAL STANDARD

Under Rule 12(b)(6), the court reviews the sufficiency of the complaint.  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations marks omitted). Although factual allegations must be accepted, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"Although detailed factual allegations are not required, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  Further, the Court need not accept the legal conclusions, inferences, or arguments that are drawn from the facts.

*Iqbal*, 556 U.S. at 678.  In order to survive a motion to dismiss for failure to state a claim, a plaintiff needs to allege enough to "nudg[e] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Documents that are referred to in a complaint, authentic, and central to a plaintiff's claim can be considered in a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment. *Hecker v. Deere & Co., 556 F.3d 575, 582* (7th Cir.2009) (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir.2002)).  And although courts do not presume that a plaintiff means to adopt every word in its exhibits, attachments trump contradictory allegations. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir.1998).

## IV.    ARGUMENT

**A.    Plaintiff has Failed to State a Claim for Violation of the Real Estate Settlement Procedures Act (Count II), Asserts Claims without a Private Right of Action, Erroneously Claims Statutory Damages in Excess of $2,000, and Fails to State a Claim for Pattern and Practice.**

### 1.    Plaintiff's letters to Ocwen do not constitute Qualified Written Requests because they were repetitive, discovery-style documents.

"Rambling, repetitive" letters posing "discovery-style document demands and interrogatories" do not constitute "Qualified Written Requests" ("QWRs") within the meaning of RESPA.  *See Ekundayo v. PNC bank, Nat. Ass'n*, Case No. A-14-CA-142-SS, 2014 WL 5092625, at *5 (W.D. Tex. Oct. 9, 2014).  Similarly, subsequent letters that "raise[] essentially the same dispute" as previous letters do not require a response under RESPA.  *See Hawkins-El v. First American Funding, LLC*, 891 F.Supp.2d 402, 408 (E.D.N.Y. 2012); *see also Ruegsegger v. Caliber Home Loans, Inc.*, No. SA CV 17-0907-DOC (KESx), 2018 U.S. Dist. LEXIS 226567, at *71 (C.D. Cal. Apr. 30, 2018) (repeated requests for the same information, or multiple follow-ups, do not constitute separate actionable QWRs).  Moreover, under RESPA, "servicing means receiving

any schedule periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to amount received from the borrower."  12 U.S.C. § 2605(i)(3).  To that end, inquiries or alleged errors outside the scope of "servicing" do not require a response under the statute.  *See Kelly v. Fairon & Assoc.*, 842 F.Supp.2d 1157, 1160 (D. Minn. 2012).

The correspondence, prepared by Plaintiff's counsel and sent by them to Ocwen between July 2018 and December 2018, can be described as nothing short of "rambling, repetitive" letters posing "discovery-style document demands and interrogatories."  *See Ekundayo*, Case No. A-14-CA-142-SS, 2014 WL 5092625, at *5.  Indeed, within the span of 36 calendar-days (October 29, 2018 to December 4, 2018), Plaintiff's counsel sent three purported Notices of Error – all sent before the statutory deadline for Ocwen's response to the First Notice of Error (January 8, 2019).[2] *See* Pl.'s Second Amend. Compl., <u>Exs. E, H, and J</u> (ECF No. 84).  In that same time period, Plaintiff's counsel also sent a second purported Request for Information.  *See id*. at <u>Ex. G</u>.  In addition, these letters were all sent during an active foreclosure action in state court and this federal lawsuit.

As is evident from a review of the Notices of Error attached to Plaintiff's Second Amended Complaint, each letter raised the same issues – adding only purported failures to respond to requests for information previously sent.  Rather than wait for a response from Ocwen to its first Notice of Error, Plaintiff's counsel fired off multiple, redundant correspondences – inundating Ocwen with repetitive discovery-style demands in an effort to conjure up more claims for Plaintiff to pursue in the already pending litigation.

---

[2] Ocwen elected to use the 15-day extension allowed by 12 C.F.R. § 1024.36(d)(2)(ii) for each response to Plaintiff's Notices of Error, and Plaintiff does not allege differently.

For example, Notices of Error 1, 2, and 3 all alleged an error with accepting payments. *See* Pl.'s Second Amend. Compl., Exs. E, H, and J (ECF No. 84). Had Plaintiff and her counsel waited for Ocwen's January 7, 2019, response to the first Notice of Error, they would see that Ocwen had no record of rejecting payments from Plaintiff and was seeking additional information with respect to the allegations. *See* Ocwen's Response to Notice of Error No. 1, Pl.'s Second Amend. Compl., Ex. F (ECF No. 84). Similarly, had Plaintiff and her counsel waited for Ocwen's response, they would have seen that Ocwen made corrections to the payment history by "applying funds held in escrow to the principal balance and by removing certain charges." *Id.* at p. 2. Also, all three Notices of Error also claimed Ocwen failed to provide a reinstatement quote within seven business days of the correspondence. *See id.* at Exs. E, H, and J. And all three Notices of Error claimed errors with the calculation and handling of Plaintiff's escrow. *Id.*

A fair assessment of the correspondence prepared by Plaintiff's counsel and the timing of the letters shows that they were not a good faith effort to obtain information and correct errors on the account pursuant to RESPA. Indeed, the correspondences were full of repetitive and irrelevant information, clearly designed by Plaintiff's counsel to try to generate claims for violations of RESPA rather than obtain information regarding Plaintiff's account and correct any issues with the account. In particular, given the proximity in time to the federal lawsuit that Plaintiff filed two days after her third Notice of Error, it is patently obvious that the correspondences were "discovery-style demands and interrogatories" that Plaintiff hoped to use in its pursuit of an "excess of sixty distinct errors . . . ." *See id.* at ¶ 249.

Again, Plaintiff sent all three of its Notices of Error *before* Ocwen was statutorily required to provide a response to the first. To that end, this is not a case of Plaintiff going through exhaustive efforts to obtain information, and then being forced as a matter of last resort to file suit

because she could not address the alleged errors on her account.  There was active litigation ongoing prior to, during, and after all the Notices of Error. As other courts have responded to similar behavior, this Court should not countenance Plaintiff's tactics by finding that her three Notices of Error and two Requests for Information do not constitute "Qualified Written Requests" under RESPA.  *See Hawkins-El*, 891 F.Supp.2d at 408; *Ekundayo*, Case No. A-14-CA-142-SS, 2014 WL 5092625, at *5; *see also Ruegsegger*, No. SA CV 17-0907-DOC (KESx), 2018 U.S. Dist. LEXIS 226567, at *71.

        2.     <u>Ocwen's responses to Plaintiff's purported Qualified Written Requests were objectively reasonable and in compliance with RESPA.</u>

Despite the fact that Plaintiff's multiple, repetitive correspondences should not constitute "Qualified Written Requests" under RESPA, Ocwen's responses were nonetheless proper and complied with its statutory duties as a matter of law.

Generally speaking, RESPA requires servicers to respond to Qualified Written Requests – in particular, Notices of Error – either by acknowledging an error occurred and fixing it, or by advising that no error occurred and the reason for that determination.  The investigation into the alleged error must be reasonable.  *See Hernandez v. Bank*, No. 14-24254-CIV, 2015 WL 9302827, at *4 (S.D. Fla. Dec. 21, 2015) ("[I]f a servicer selects option (B), then it has two obligations: (1) conducting a reasonable investigation, and (2) providing a written response containing certain types of information and disclosures.").  Ultimately, what Plaintiff fails to realize – and the flaw in her claims – is that her dissatisfaction or disbelief of Ocwen's responses do not render those responses inadequate or unreasonable.  *See Walker v. Branch Banking and Trust Company*, 237 F.Supp.3d 1326 (S.D. Fla. 2017) (subsequent notice of error alleging inadequate response to prior qualified written request was not a standalone error under RESPA).

In this case, Ocwen's responses were objectively reasonable. Where Plaintiff claimed error, Ocwen either acknowledged an error and made changes to the account, denied an error was present based on the information available, or explained to Plaintiff that additional information was needed to assess the alleged errors. *See* Ocwen's Response to Plaintiff's Notices of Error, Pl.'s Second Amend. Compl., <u>Exs. F, I, K</u> (ECF No. 84). Ocwen's responses also included dozens of pages of documents along with an explanation of how those documents addressed Plaintiff's concerns. *Id.*

Again, all of Plaintiff's Notices of Error were sent to Ocwen before its statutory deadline to respond to the first Notice of Error. And, as can be observed in Ocwen's responses, the January 7, 2019 response to Plaintiff's first Notice of Error made corrections to the account that addressed issues raised in the second and third Notices of Error. *See id.* Notably, Ocwen never received any of the information it requested from Plaintiff to further analyze the errors she alleged. Moreover, Plaintiff's purported Notices of Error were replete with alleged errors that did not require a response from Ocwen under the statute. It defies logic and reason that Plaintiff could complain of alleged errors in Ocwen's responses to its Notices of Error when Plaintiff did not wait for any response from Ocwen before alleging repetitive errors across three letters over a 36-day time period.

Accordingly, because Ocwen's responses to Plaintiff's purported Qualified Written Requests are objectively reasonable, this Court should dismiss Plaintiff's RESPA claims.

3.    <u>There is no private right of action for many of Plaintiff's RESPA claims.</u>

There is no private right of action regarding Plaintiff's claims for mishandling of her escrow account, unlawful increase in escrow payments amount, unlawful treatment of payments as late, and misrepresentations in account statements. *See* Pl.'s Second Amend. Compl. ¶ 243. Any and all claims brought under Section 2609 ("Limitation on requirement of advance deposits

in escrow accounts") of RESPA fail because no private right of action exists to enforce this section. *See Allison v. Liberty Savings*, 695 F.2d 1086 (7th Cir. 1982) (holding "no implied private cause of action exists under § 10 [section 2609] of RESPA").

      4.      <u>Statutory Damages under RESPA cannot exceed $2,000.</u>

Under his RESPA claim, Plaintiff seeks "statutory damages of $2,000 against Ocwen for *each and every violation* contained in Count II." *See* Pl.'s Second Amend. Compl., at 50 (emphasis added). She also argues that "Ocwen committed in excess of sixty distinct errors. . . ." *Id.* at ¶ 249. In other words, Plaintiff claims she is entitled to $2,000 for each separate alleged violation and estimates statutory damages to the tune of $120,000 or more under her RESPA claim. This is legally erroneous.

As a matter of law, Plaintiff is not entitled to $2,000 for each alleged violation of RESPA. Rather, RESPA caps statutory damages at a **<u>total</u>** of $2,000 regardless of the number of violations:

> (f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> > (1) Individuals. In the case of any action by an individual, an amount equal to the sum of –
> >
> > > (A) any actual damages to the borrower as a result of the failure; and
> > >
> > > (B) any additional damages, as the court may allow, ***in the case of pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000***.

12 U.S.C. § 2605(f) (emphasis added).

A plain reading of this language demonstrates that while an individual is entitled to *actual damages* for each failure, *statutory damages*, "in the case of a pattern or practice of noncompliance" are limited to "an amount not to exceed $2,000." *See id.* at (f)(1)(B). Indeed, if Congress had intended $2,000 in statutory damages for each violation, it would not have inserted

the "pattern and practice" language, nor would it have expressly stated statutory damages are limited to "an amount *not to exceed* $2,000." *Id.* (emphasis added).

Courts in the Seventh Circuit have expressly rejected the idea that statutory damages are available on a per violation basis. *See, e.g.*, *Ploog v. HomeSide Lending*, *Inc*., 209 F.Supp.2d 863, 869 (N.D. Ill. 2002). In *Ploog*, the court considered whether the statute's plain, unambiguous language permitted a statutory damages per violation, or a total cap regardless of the number of individual violations.[3] In addressing the "for each such failure" language in the introductory paragraph, the court concluded that this language meant a borrower is entitled to only "*actual* damages for each violation of the act." *Id.* (emphasis added). Thus, the court concluded that "a plaintiff can recover actual damages for each violation of the act and statutory damages no greater than $1,000 by proving a pattern or practice of noncompliance." *Id.* Other courts have outside the Seventh Circuit have reached the same conclusions. *See, e.g.*, *Katz v. The Dime Savings Bank*, 992 F. Supp. 250, 257 (W.D.N.Y. 1997) (holding that RESPA statutory damages are capped at $1,000 not available on a "per violation" basis).

Accordingly, the proper interpretation of Section 2605(f) limits statutory damages to $2,000, regardless of the number of violations, and any statutory damages Plaintiff seeks under RESPA are so limited.

    5.    Plaintiff has failed to plead a "pattern and practice" of non-compliance.

Plaintiff has failed to plead a "pattern and practice" of non-compliance under RESPA because the Second Amended Complaint is devoid of any factual allegations to that effect. The Seventh Circuit has held that in order to show a "pattern and practice" under RESPA, there must be more than random examples of similar behavior. Instead there must be some evidence of

---

[3] At the time, the statutory damages were capped at $1,000 rather than $2,000.

"coordination." *See Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 858 (7th Cir. 2017). Other circuit courts have held that, to establish a pattern and practice, the alleged violations must be a part of "the company's standard operating procedure – the regular rather than the unusual practice." *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 720 (8th Cir. 2018). Moreover, threadbare allegations about a Company's business practices or allegations founded on "information and belief" have been held to be insufficient. *See Giordano v. MGC Mortg., Inc.*, 160 F.Supp.3d 778, 785 (D. N.J. 2016) (finding that allegations based on information and belief not sufficient to plead a pattern or practice under RESPA); *Sutton v. CitiMortgage, Inc.*, 228 F.Supp.3d 254, 276 (finding conclusory allegations concerning defendant's business practices not sufficient to state claim of pattern or practice of RESPA violations); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2012 WL 1372260, at *5 (E.D.N.Y. April 18, 2012) (finding that "pattern or practice" means a standard or routine way of doing things, and that alleging four examples of RESPA violations does not qualify as a standard or routine way of doing things.).

Plaintiff's Second Amended Complaint is devoid of any factual allegations that the alleged RESPA violations in this case are part of any coordinated effort or a result of Ocwen's business practices, rather than a unique result of the circumstances in this case. General reference to other cases or settlements involving alleged servicer errors are not sufficient. So too are conclusory statements about Ocwen's business practices insufficient.

Accordingly, because Plaintiff has failed to allege facts regarding a coordinated pattern and practice of similar RESPA violations, her claim for statutory damages must be dismissed.

**B.    Plaintiff's Claim under the Fair Debt Collection Practices Act (Count III) is Preempted by the Bankruptcy Code and/or Time-Barred.**

Plaintiff makes a wide array of allegations under Count III alleging violations of the FDCPA, which all share one common nexus: they are premised on an alleged wrongful act that occurred during and/or in connection with Plaintiff's Chapter 13 Bankruptcy.  As a result, the FDCPA claims are preempted by the Bankruptcy Code. *See Wehrheim v. Secrest*, No. IP 00-1328-C-T/K, 2002 WL 31242783, at *8-9 (S.D. Ind. Aug. 16, 2002).  Additionally, Plaintiff's claim arises from conduct that occurred more than a year before the filing of this lawsuit and is therefore time-barred under the FDCPA's one-year statute of limitation.  *See* 15 U.S.C. § 1692k(d).

1.    Plaintiff's claims under the FDCPA are preempted by the Bankruptcy Code because all of the alleged conduct is based on conduct that occurred during and/or in connection with Plaintiff's Chapter 13 Bankruptcy.

Plaintiff's claims under the FDCPA are preempted by the Bankruptcy Code because all of the alleged conduct either occurred during the pendency of her Chapter 13 Bankruptcy or arose out of the Bankruptcy proceeding.  This Court has held that the "the Bankruptcy Code precludes Plaintiff's FDCPA claim based on Defendant's attempt to collect a debt discharged in bankruptcy." *Wehreheim*, No. IP 00-1328-C-T/K, 2002 WL 31242783, at *9.  Preemption is not limited to "only conduct that occurs during the pendency of a bankruptcy case." *Id.* at 8.  Rather, it is the remedial structure of 11 U.S.C. § 524 that preempts all claims arising out of attempted collection of a debt discharged by Bankruptcy. *See id.* Specifically, this Court stated that:

> To allow Plaintiff to bring an FDCPA claim for damages based on a violation of § 524 would undercut the remedies provided by § 524. If Plaintiff were allowed to pursue her FDCPA claim based on a violation of § 524, then the court would have to decide whether the debt on the mortgage note had been discharged in bankruptcy. This would interject the court into bankruptcy laden questions and require reference to the Bankruptcy Code. . . if the FDCPA claim were not precluded, the remedy provided for in § 524 would become superfluous as most debtor-plaintiffs would opt to bring their claim under the FDCPA which allows for damages and attorney's fees rather than § 524.

*Id.*

In this case, Plaintiff's FDCPA claim is premised on Ocwen's allegedly improper attempts to collect fees and expenses that were discharged by the Bankruptcy Court during Plaintiff's Chapter 13 Bankruptcy.  *See* Pl.'s Second Amend. Compl. ¶ 257. And indeed, Plaintiff explicitly alleges conduct that began after the Discharge Order was entered but before Plaintiff's Bankruptcy case was dismissed.  *See id.* at ¶¶ 107, 111 (detailing incorrect escrow balances starting in 2013); *see also* ¶¶ 118, 119 (detailing conversations with Ocwen agents where Plaintiff claims she was erroneously told she was in default).

Accordingly, because the alleged violations of the FDCPA occurred during or directly arose from the Plaintiff's Chapter 13 Bankruptcy – in particular, Ocwen's alleged violation of the Discharge Injunction – Plaintiff's FDCPA claims are preempted by the Bankruptcy Code and should be dismissed.

2.    <u>Plaintiff's FDCPA claims based on conduct prior to December 6, 2017 are time-barred.</u>

The FDCPA specifies that suits must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added). District courts have reasoned from this language that the statute of limitations inquiry for FDCPA claims must focus on when 'a violation is made, not when it is made known.'  *See e.g.*, *Judy v. Blatt, Hasenmiller, Leibsker & Moore LLC*, No. 09 C 1226, 2010 WL 431484, at *6 (N.D. Ill. Jan. 29, 2010) (quoting *Purnell v. Arrow Financial Servs., LLC*, No. 05 CV 73384, 2007 WL 421828, at *3 (E.D.Mich. Feb. 2, 2007)).

Plaintiff's original Complaint in this Court was filed on December 6, 2018.  Thus, any FDCPA claims for conduct prior to December 6, 2017, is time-barred by the FDCPA's one-year

statute of limitations.  And indeed, Plaintiff alleges conduct prior to December 6, 2017 in support of her claim.  *See, e.g.*, Pl.'s Second Amend. Compl. ¶ 118 (alleging wrongful acts in April 2017). It was these initial acts – attempted collection of allegedly disallowed debt – that form the basis for all subsequent violations alleged.  To that end, all of Plaintiff's FDCPA claims are time-barred as they are not distinct violations, but rather a continuation of a single violation that allegedly occurred in April 2017.  *Id.*

Accordingly, because Plaintiff's FDCPA claim is based on conduct that occurred more than one year prior to the filing of this suit, her claims are time barred by the FDCPA's one-year statute of limitations.

**C.    Plaintiff has Failed to State a Claim for Violation of the Fair Credit Reporting Act (Count V).**

Plaintiff has failed to state a claim under Count V for violation of the FCRA, 15 U.S.C. § 1681s-2(b) because she fails to allege that she disputed her account with any consumer reporting agency[4], which is required to trigger the duty of a furnisher like Ocwen to investigate and respond to a credit dispute.  Similarly, to the extent Plaintiff is claiming that Ocwen is liable for simply reporting allegedly inaccurate information, she has failed to state a claim because there is no private right of action under Section 1681s-2(a).

The FCRA places two sets of obligations on entities that furnish information to consumer reporting agencies.  First, under Section 1681s-(2)(a), a furnisher is required to report accurate information to the consumer reporting agencies.  However, a consumer has *no private right of*

---

[4] The FCRA defines a "consumer reporting agency" as an entity which "regularly engages in the practice of assembling or evaluating, and maintaining, for the purposes of furnishing consumer reports … bearing on a consumer's credit worthiness …, credit standing, or credit capacity, . . . public record information, [or] credit account information from persons who furnish that information regularly and in the ordinary course of business." 15 U.S.C. § 1681a(p).

*action* against a furnisher of information who provides inaccurate information to credit reporting agencies in violation of 15 USC § 1681s-2(a). *See Shepard v. Spectrum*, Case No. 17-C-3104, 2018 WL 2147953, at *2 (S.D. Ind. May 10, 2018). Second, under Section 1681s-(2)(b), a furnisher which receives notice from a consumer reporting agency as to the completeness or accuracy of information it previously provided must conduct an investigation with respect to the dispute, report the results of the investigation to the consumer reporting agency, and take certain steps if the person finds the information to be inaccurate, incomplete or impossible to verify.

Plaintiff does not allege that she disputed her credit information with any consumer reporting agency. Instead, she alleges that "[o]n information and belief, Ocwen has improperly and incorrectly reported to various CRAs that the Loan was and/or is'90-119 Days Late." Pl.'s Second Amend. Compl. ¶ 222. Moreover, a claim under Section 1681s-2(b) is only available where the furnisher received notice of the underlying credit dispute from a *consumer reporting agency*. *Id*. More specifically, the "duties of a furnisher of information under this statute are triggered when notice of a dispute, pursuant to Section 1681i(a)(2), is received." *Id.* The duty to investigate *only* arises when a consumer reporting agency *notifies* Ocwen of a dispute not, as generally alleged here, when the information is disputed by a consumer. Thus, without more, Plaintiff's allegations do not sufficiently state a claim under Section 1681s-2(b) because the Court cannot reasonably infer that Ocwen's duties under the statute were triggered where there is no factual allegation to that effect.

Accordingly, because Plaintiff has failed to allege that she disputed her credit information with a consumer reporting agency, or that such dispute was transmitted by a consumer reporting agency to Ocwen, she has failed to state a claim under Section 1681s-2(b) of the FCRA.

To the extent that Plaintiff is alleging a violation of Section 1681s-2(a) for Ocwen's purported act of reporting false information on Plaintiff's credit report, this claim fails because a consumer has *no private right of action* against a furnisher of information who provides inaccurate information to credit reporting agencies in violation of 15 USC § 1681s-2(a).  *Shepard*, Case No. 17-C-3104, 2018 WL 2147953, at *2.

**D.**      **Plaintiff has Failed to State a Claim for Violation of the Bankruptcy Court's Discharge Injunction (Count VI).**

Plaintiff has failed to state a claim under Count VI because there is no private right of action for violations of the Bankruptcy Code's Discharge Injunction under 11 U.S.C. § 524.  *See Cox v. Zale Delaware, Inc.*, 242 B.R. 444, 449 (N.D. Ill. 1999), *aff'd*, 239 F.3d 910 (7th Cir. 2001). Other circuit and district courts throughout the country have similarly held that there is no private right of action under Section 524.  *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) (holding that there is no private cause of action implicit in § 524, and that the proper redress lies in the court's contempt power); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000) (holding that a private cause of action is inappropriate where § 524(a) creates an injunction and the traditional remedy for violation of an injunction is a contempt proceeding); *see also In re Giles*, 502 B.R. 892, 905 (N.D. Ga. Bankr. 2013) (finding no private right of action under § 524).

Plaintiff alleges that Ocwen violated 11 U.S.C. § 524 by seeking to collect expenses and fees that were disallowed by the Bankruptcy Court.  Because there is no private right of action under Section 524's Discharge Injunction, Plaintiff has failed to state a claim upon which relief can be granted.

**E.    Plaintiff has Failed to State a Claim for Violation of the Bankruptcy Court's Orders (Count VII).**

Plaintiff claims violations of the Bankruptcy Court's October 26, 2012 and April 8, 2013 Orders relating to the disallowance of certain fees and expenses during Plaintiff's Chapter 13 Bankruptcy. *See* Pl.'s Second Amend. Compl. ¶¶ 292. Plaintiff does not cite any statute or other authority upon which this Court can grant relief. Again, there is no private right of action under 11 U.S.C. § 524, which deals with the Discharge Injunction. *See Cox*, 239 F.3d at 917. Additionally, at least one court in the Seventh Circuit has foundthere is no private cause action under 11 U.S.C. §§ 105 and 502. *See Holloway v. Household Automotive Finance Corp.*, 227 B.R. 501, 504-507 (N.D. Ill. 1998).

Although not directly analogous in terms of the underlying violation alleged (an allegedly false proof of claim), the analysis in *Holloway* is informative in this case. The court there considered Section 105, which deals with the Bankruptcy Court's power to issue order "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It also considered Section 502, which gives the bankruptcy courts power to allow or disallow certain claims made against a debtor. *See* 11 U.S.C. § 502. The *Holloway* court concluded there was no private right of action under Sections 105 or 502 because neither explicitly provided for one, and there was no implied right intended by Congress. *See Holloway*, 227 B.R. at 505. The same analysis is applicable here: there is no suggestion – and Plaintiff does not allege – that Congress intended to create a private right of action for damages resulting from violations of bankruptcy orders.

Accordingly, because there is no private right of action for violations of a bankruptcy court's order, Plaintiff has failed to state a claim upon which relief can be granted.

**F.**    **Plaintiff's Claim under the Indiana Crime Victim's Relief Act is Preempted by the Bankruptcy Code (Count VIII).**

The Bankruptcy Code preempts "virtually all claims which allege misconduct in Bankruptcy proceedings." *Cox*, 242 B.R. at 449-50, *aff'd*, 239 F.3d 910 (7th Cir. 2001) (collecting cases). A state law cause of action is preempted if, absent the Code, there would be no cause of action. *See id.* at 450; *Twomey v. Ocwen Loan Servicing, LLC*, No. 16-CV-0918, 2016 WL 4429895, at *2 (N.D. Ill. Aug. 22, 2016) ("[T]he Bankruptcy Code preempts the field when it comes to remedying violations of injunctive orders issued by bankruptcy courts.").

This Court has recognized that state law claims based solely on conduct arising in a Bankruptcy proceeding are preempted under the theory of "field preemption." *Carter v. HSBC Mortgage Services, Inc.*, No. 1:15-cv-01938-TWP-MPB, 2016 WL 5121984, at *6 (S.D. Ind. Sept. 21, 2016) (Pratt, J.). In other words, "'state-law claims that attempt to govern the same activity regulated by the Bankruptcy Code are expressly preempted because Congress intended to occupy the entire field by providing exclusive remedies in the Bankruptcy Code.'" *Id.* (quoting *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 913 (7th Cir. 2001)).

Plaintiff's claims under the ICVRA are solely based on the alleged "conversion" of the charges and fees disallowed by the Bankruptcy Court's October 26, 2012 Order. Specifically, Plaintiff alleges that "Ocwen was knowingly or intentionally exerted unauthorized control over funds rightfully belonging to Freeman when it paid itself $6,649.23 in escrow charges (from funds to be held in trust on behalf of Freemen) and $300.00 for legal fees that were both specifically disallowed by the Bankruptcy Court on October 26, 2012." Pl.'s Second Amend. Compl. ¶ 299 (ECF No. 84). Whether or not the charges and fees alleged to have been converted by Ocwen were disallowed by the Bankruptcy Court in its October 26, 2012, is a matter solely under the Bankruptcy Court's jurisdiction. *See Carter*, No. 1:15-cv-01938-TWP-MPB, at *6.

Per Plaintiff's allegations, without the October 26, 2012 Order, there would be no claim under the ICVRA because it is based on the Bankruptcy Court's disallowance of the subject charges and fees.  In other words, the collection and application of Plaintiff's payments in the Bankruptcy Court concern "the same activity regulated by the Bankruptcy Code," and thus, "are expressly preempted because Congress intended to occupy the entire field by providing exclusive remedies in the Bankruptcy Code."  *Id*. (quoting *Cox*, 239 F.3d at 913) (internal quotations omitted).

Accordingly, because Plaintiff's claim under the ICVRA is based solely on conduct arising from her Chapter 13 Bankruptcy and the October 26, 2012 Order issued by that court, the claim is preempted by the Bankruptcy Code and must be dismissed.

**G.    Plaintiff has Failed to State a Claim for Violation of the Indiana Deceptive Consumer Sales Act (Count X).**

The IDSCA "provides remedies to consumers and the attorney general for practices that the General Assembly deemed deceptive in consumer transactions."  *McKinney v.* State, 693 N.E.2d 65, 67 (Ind. 1998).  There are two kinds of actionable deceptive acts: "uncured" and "incurable."  *Id.* at 68. Plaintiff has failed to state a claim under the IDCSA because she has not alleged that she met the prerequisite steps to filing suit for an uncured act and has failed to plead the elements necessary for an incurable act.

The IDCSA states in relevant part:

(a) No action may be brought under this chapter, except under section 4(c) of this chapter, unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier within the sooner of (i) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction, which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, and unless such deceptive act shall have become an uncured deceptive act.

(b) No action may be brought under this chapter except as expressly authorized in section 4(a), 4(b), or 4(c) of this chapter. Any action brought under this chapter may not be brought more than two (2) years after the occurrence of the deceptive act.

Ind. Code § 24-5-0.5-5.

Plaintiff has failed to allege that she gave Ocwen notice fully stating "the nature of the alleged deceptive act **and** the actual damage suffered therefrom." *Id.* (emphasis added). Indeed, Plaintiff merely alleges that "Ocwen [sic] provided notice to Ocwen of its willful unfair deceptive acts via NOE No. 1, NOE No. 2, NOE No.3 . . ." Pl.'s Second Amend. Compl. ¶ 306 (ECF No. 84). She does not allege that those purported notices – which were sent pursuant to RESPA, not the IDCSA – gave "a complete description of the actual damage suffered. . . ." *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*, 500 N.E.2d 1257, 1262 (Ind. Ct. App. 1986). A review of those purported Notices of Error demonstrates that there were no such "complete description" of actual damages suffered. *See* Pl.'s Second Amend. Compl., Exs. E, H, & J (ECF No. 84).

Plaintiff also fails to state a claim under the IDCSA for an incurable deceptive act. *See* Ind. Code § 24-5-0.5-5. "An incurable act is done 'as part of a scheme, artifice, or device with intent to defraud or mislead.'" *Davis v. Contractability.com, LLC*, No. 1:16-cv-02999-LJM-MPB, 2017 WL 413290 (S.D. Ind. Jan. 31, 2017) (citing Ind. Code § 24-5-0.5-2(a)(8)). Plaintiff has not alleged any such "scheme, artifice, or device with intent to defraud or mislead." *Id.* Rather, Plaintiff's allegations concern an alleged error that occurred with respect to the recoverability of certain fees that were subject of an October 26, 2012 Bankruptcy Court Order. Any suggestion that Ocwen intended to defraud Plaintiff is belied by the simple fact that Ocwen made corrections to Plaintiff's account in response to her first purported Notice of Error. *See* Pl.'s Second Amend. Compl., Ex. F (ECF No. 84-6). While Plaintiff may argue over the adequacy of the corrections, that is wholly separate from an allegation of intent to defraud.

As a result, because Plaintiff did not provide notice of an uncured deceptive act and has not alleged the elements of an incurable deceptive act, she has failed to state a claim under the IDCSA.

**H.    Plaintiff has failed to State a Claim for Violation of the Telephone Consumer Protection Act (Count XI).**

Under Count XI, Plaintiff alleges violations of the TCPA. However, the allegations in Plaintiff's Second Amended Complaint are wholly insufficient to state a claim for violation of the TCPA.

Generally, to state a claim under the TCPA a plaintiff must allege that Ocwen (1) made telephone calls to the Plaintiff's cell phone; (2) without the Plaintiff's prior express consent; and (3) using an automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1)(A). However, mere recitations of the legal elements – for example, that an automated telephone dialing system ("ATDS") was used – are insufficient. *See Cunningham v. Foresters Fin. Servs., Inc.*, 300 F.Supp.3d 1004, 1016-17 (N.D. Ind. 2018); *Ashcroft*, 556 U.S. at 678. "Rather, 'a plaintiff should use layman's terms or describe the surrounding circumstances that give rise to the inference that an ATDS, artificial, or prerecorded voice was used.'" *Id.* (quoting *Mauer v. American Intercontinental University, Inc.*, No. 16 C 1473, 2016 WL 4651395 (N.D. Ill. Sept. 7, 2016)).

In this case, Plaintiff only makes one factual allegation about the calls, which is that they "occurred on or after December 1, 2018, and continued through August of 2019." Pl.'s Second Amend. Compl. ¶ 310. The remaining allegations are all conclusory legal statements reciting the bare elements of a TCPA claim. *See id.* at ¶¶ 39-40, 309, 311-312.

Plaintiff makes no factual allegations about the content of the calls or any other circumstances surrounding the alleged calls that would lead to an inference that an ATDS or artificial/pre-recorded voice was used. In fact, Plaintiff's allegations explicitly suggest she spoke

to live representatives.  *See* Pl.'s Second Amend. Compl. ¶¶ 119-120 (describing two calls in December 2017 and February 2018 where she spoke with an "Ocwen representative"). These allegations are insufficient because the mere fact Plaintiff received calls is not lead to an inference that the calls were placed using an ATDS or featured an artificial or pre-recorded voice.  Plaintiff similarly fails to make any factual allegations regarding when she revoked consent or otherwise expressed she did not want to receive calls.

Courts have routinely dismissed TCPA claims for the failure to plead facts as Plaintiff does here.  *See, e.g.*, *Reed v. Quicken Loans, Inc.*, No. 3:18-cv-3377-K, 2019 U.S. Dist. LEXIS 159935 (N.D. Tex. Sept. 3, 2019) (granting motion to dismiss TCPA claim where plaintiff failed to allege facts "indicative of use of an ATDS"); *Whitacre v. Nations Lending Corp.*, No. 5:19CV809, 2019 U.S. Dist. LEXIS 127759 (N.D. Ohio July 31, 2019) (dismissing TCPA claim where plaintiff "d[id] not describe how he 'expressed his lack of consent,' nor d[id] he give any other details about the prerecorded phone calls");  *Rhinehart v. Diversified Cent., Inc.*, No. 4:17-cv-624, 2018 U.S. Dist. LEXIS 5141, at *21-22 (N.D. Ala. Jan. 11, 2018) ("Plaintiff's allegations allow the Court to infer nothing more than that she received several calls. [The TCPA claim] will be dismissed."); *see also McGinity v. Tracfone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1340 (M.D. Fla. 2014) ("[Plaintiff's] 6,000 call claim seems rather implausible, and is not supported by any other factual allegations . . . [Plaintiff also] did not describe the content of any calls. . . .").  Moreover, the complex factual inquiry required to determine whether an ATDS was used must begin with something more than bare recitals of legal elements.  *See Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017) (discussing complex facts necessary to establish whether telephone system qualifies as an ATDS).

Accordingly, because Plaintiff's Second Amended Complaint is devoid of any factual allegations that Ocwen used an ATDS or artificial/pre-recorded voice, or that she revoked consent or otherwise demanded calls stop, she has failed to state a claim for violation of the TCPA and Count XI must be dismissed.

## V.    CONCLUSION

Based on the foregoing reasons, Defendant Ocwen Loan Servicing, LLC, respectfully requests the Court grant its Motion, Dismiss Counts II, III, V, VI, VII, VIII, IX, and X of the Second Amended Complaint, and grant such further relief as the Court deems just.

Dated: September 24, 2019                Respectfully submitted,

By: */s/ Ethan G. Ostroff*
Ethan G. Ostroff
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23454
Telephone: (757) 687-7500
E-mail: ethan.ostroff@troutman.com

*Counsel for Ocwen Loan Servicing, LLC*