## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEMONA FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03844-TWP-DLP |
| | ) | |
| OCWEN LOAN SERVICING, LLC, and | ) | |
| BANK OF NEW YORK MELLON | ) | |
| *f/k/a THE BANK OF NEW YORK as successor in* | ) | |
| *interest to JPMorgan Chase Bank, N.A., as* | ) | |
| *Trustee for C-BASS Mortgage Loan Asset-Backed* | ) | |
| *Certificates, Series, 2005-RPI,* | ) | |
| *a/k/a BANK OF NEW YORK*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

This matter is before the Court on Motions to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Ocwen Loan Servicing, LLC ("Ocwen") ([Filing No. 86](#)), and Bank of New York Mellon ("BONY") ([Filing No. 88](#)), (collectively, "Defendants"). Plaintiff Demona Freeman ("Freeman") initiated this action against the Defendants alleging violation of numerous federal statutes—the Real Estate Settlement Procedures Act, Truth in Lending Act, Fair Debt Collection Practices Act, Telephone Consumer Protection Act, and Fair Credit Reporting Act—as well as for breach of contract and other state law claims. The Defendants separately filed Motions asking the Court to dismiss the claims asserted in Freeman's Second Amended Complaint. For reasons explained below, the Court **grants in part and denies in part** the Motions.

## I.      <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all

inferences in favor of Freeman as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Freeman is the owner of real property and improvements located in Westfield, Indiana. In December 2003, she financed the purchase of a home with a loan, evidenced by a note and a mortgage on the home that secures the note. The loan was originated by Sun Mortgage Company, LLC ("Sun Mortgage") and subsequently placed in a mortgage-backed security guaranteed by Fannie Mae[1]. Thereafter, ownership of the note was transferred to Defendant BONY. Defendant Ocwen acts as the agent of and loan servicer for BONY (Filing No. 84 at 2).  Ocwen obtained servicing rights from Litton Loan Servicing around September 1, 2011, a time when Freeman's loan was in default, and began servicing Freeman's loan.

Ocwen employs hundreds of individuals at various call centers throughout the country. These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the hundreds of thousands of debts collected by the company. A significant portion of Ocwen's business operations are dedicated to servicing consumer loans that are in default or foreclosure or were involved in bankruptcy proceedings. *Id.* at 6–7.

Ocwen's regular business practices include making repeated telephone calls, as well as sending notices, statements, bills, and other written correspondence to individuals like Freeman who it believes are responsible for paying past due amounts. To service consumer loans, Ocwen uses automatic telephone dialing systems ("ATDS") and automated/pre-recorded voices ("Robocalls"). Ocwen uses ATDS equipment and software that has the capacity to store or produce

---

[1] The Federal National Mortgage Association, commonly known as Fannie Mae, is a government-sponsored enterprise that makes mortgages available to low- and moderate-income borrowers. It does not provide loans, but backs or guarantees them in the secondary mortgage market. *See* fanniemae.com

telephone numbers to be called, including auto-dialers and predictive dialers. Ocwen has made calls using an ATDS and Robocalls to Freeman's cellular telephone even though she did not provide prior express consent to receive such calls, or Freeman revoked any consent thereafter. *Id.* at 7. Ocwen regularly and in the ordinary course of business furnished information to one or more consumer reporting agencies about Freeman's transactions. Any improper reporting of a mortgage tradeline has a particularly adverse effect on a consumer's credit score (such as Freeman) as it represents the largest and longest active debt obligation in a person's credit history. *Id.* at 9–10.

Freeman began having financial difficulties in 2008 as a result of the financial collapse brought on by the mortgage industry. On April 13, 2009, BONY filed a foreclosure action against Freeman in the Hamilton County (Indiana) Superior Court (the "First Foreclosure Case"). Because of ongoing financial difficulties, Freeman sought to stop the foreclosure and forced sale of her home by filing for bankruptcy. She filed bankruptcy under Chapter 13 of the United States Bankruptcy Code on April 23, 2012, in the United States Bankruptcy Court for the Southern District of Indiana (the "Bankruptcy Case"). The Bankruptcy Case had the effect of staying the First Foreclosure Case. Freeman filed the Bankruptcy Case to cure all pre-petition defaults on her home loan. *Id.* at 10.

Freeman's proposed Chapter 13 bankruptcy Plan was confirmed on April 10, 2013, and later modified by court order pursuant to 11 U.S.C. § 1329 on March 15, 2016. Under the Chapter 13 Plan, she was to make regular monthly payments of $1,740.00 to the Chapter 13 Trustee, from which Ocwen would receive approximately $1,029.00 per month to maintain the monthly payments it was owed plus an additional sum to address all arrearages, which was originally estimated by Freeman to be $15,000.00 (Filing No. 84 at 10–11).

Ocwen appeared in the Bankruptcy Case and participated in those proceedings by filing a Proof of Claim on behalf of BONY. The Proof of Claim asserted a secured claim in the amount of $133,064.46 and an arrearage claim of $22,668.03, which included escrow charges of $6,649.43, a transfer fee balance of $2,328.05, property valuation fees of $121.00 (listed twice for a total of $242.00), foreclosure fees of $225.00, foreclosure costs of $695.36, and a proof of claim fee of $150.00. On September 13, 2012, the United States Trustee filed an Objection to Claim, which detailed approximately three pages of errors in Ocwen's Proof of Claim, including unsubstantiated and objectionable charges. Ocwen did not respond to the Objection. On October 26, 2012, the Bankruptcy Court entered an order on the United States Trustee's Objection to Claim and disallowed the objected to and unsubstantiated fees, expenses, and charges totaling $10,289.84 as well as any fees for preparation of the Proof of Claim or amendments. The Bankruptcy Court's order allowed the balance of Ocwen's Proof of Claim, which was an arrearage in the amount of $12,378.10. *Id.* at 11–12.

On February 22, 2013, Ocwen filed a Notice of Post-petition Fees, Expenses, and Charges to supplement its original Proof of Claim, a portion of which had been disallowed. In this Fee Notice, Ocwen listed a "Bankruptcy Fee," dated January 17, 2013, in the amount of $300.00. Attached to the Fee Notice was an invoice that provided further detail regarding the "Bankruptcy Fee." The invoice indicated the fee (which was to be assessed to Freeman's account) related to a "Response to Objection to Claim – (Rec from Brwr)." In response to the Fee Notice, the United States Trustee filed a motion and explained that Ocwen failed to respond to the Claim Objection, so any fees for a "Response to Objection to Claim" were improper and should be disallowed entirely. Again, Ocwen did not file a response to the Trustee's motion. The Bankruptcy Court set the motion for a hearing, and proper notice of the hearing was issued to Ocwen. However, Ocwen

failed to appear at the hearing. On April 8, 2013, the Bankruptcy Court entered an order granting the Trustee's motion and disallowing the $300.00 fee requested by Ocwen, explaining that all fees relating to the Proof of Claim filed by Ocwen, amendments to the Proof of Claim, and any litigation related to the Proof of Claim or future matters that related to the Trustee's litigation in the case were disallowed and could not be charged to Freeman's mortgage account. *Id.* at 12–13.

On April 12, 2017, the Chapter 13 Trustee filed a Notice of Final Cure Payment, stating the amount to cure the pre-petition default ($12,378.19 in arrearage) had been paid in full and that Freeman had completed all payments required under the Chapter 13 Plan. Soon thereafter, Ocwen filed a Response to Notice of Final Cure Payment, agreeing that Freeman had paid in full the amount required to cure the pre-petition default on Ocwen's claim. Ocwen affirmed Freeman was current with all post-petition payments consistent with §1322(b)(5) of the Bankruptcy Code including all fees, charges, expenses, escrow, and costs. According to Ocwen's Response to Notice of Final Cure Payment, Freeman was to make her next post-petition payment directly to Ocwen on May 1, 2017. Beginning in May 2017, Freeman began making timely and adequate monthly installment payments on the home loan to Ocwen by a series of ACH debits. On November 21, 2017, Freeman obtained an Order of Discharge from the Bankruptcy court. *Id.* at 13–14.

On February 21, 2018, BONY filed a Notice of Relief from Stay and Abandonment in the First Foreclosure Case. This Notice was filed because of information provided to BONY from Ocwen. BONY explained in its Notice that the property at issue had been abandoned from the bankruptcy estate. In reality, the property had not been abandoned from the bankruptcy estate. The filing of the Notice had the effect of restarting the First Foreclosure Case. On March 6, 2018, after receiving messages from Freeman's bankruptcy counsel, BONY acknowledged that the First

Foreclosure Case should be closed. On May 2, 2018, BONY filed a motion to vacate the judgment and to dismiss the case, and on May 5, 2018, the First Foreclosure Case was dismissed. *Id.* at 15.

In June 2018, Freeman obtained a copy of the life of loan mortgage transactional history for her home loan. A review of this document revealed a myriad of unexplainable and errant servicing conduct. During the course of the Bankruptcy Case, Ocwen assessed fees and expenses, some of which were applied to Freeman's mortgage account as a debit and others that were applied and then reversed. Ocwen did not provide notice of the charging of these fees and expenses to the Bankruptcy Court. These fees and expenses applied to Freeman's mortgage account included $6,649.43 in escrow charges specifically disallowed in the Bankruptcy Case by the October 26, 2012 order. The life of the loan document also indicated that, during Freeman's Bankruptcy Case and thereafter, Ocwen maintained a large surplus balance in Suspense (Filing No. 84 at 15–16).

By maintaining a large surplus balance in Suspense rather than applying the funds to principal, interest, and escrow, Ocwen resultantly charged Freeman fees and additional interest without basis. This also deprived Freeman of the time value of that money as Ocwen did not pay interest toward the balance. Ocwen's conduct also created a negative escrow balance throughout the Bankruptcy Case and thereafter. If the amount withheld in the escrow account for insurance and taxes was insufficient, Ocwen was required to notify Freeman of the shortage. Ocwen failed to provide Freeman with notice of the shortage or explanation for the activities underpinning the negative escrow balances. By maintaining a negative escrow balance, Ocwen caused Freeman to incur fees, penalties, and interest that she would not have otherwise incurred. *Id.* at 17.

Around April 26, 2017, despite the Notice of Cure declaring Freeman current and requiring her to begin making payments directly to Ocwen starting in May 2017, Ocwen rejected Freeman's attempt to make a payment, telling her she was eight months behind on her payments. Ocwen later

accepted the May 2017 payment. Around December 19, 2017, despite never having missed a payment or made an inadequate payment during or following her Bankruptcy Case, Freeman received a call from Ocwen in which an Ocwen representative alleged she was nine months behind on her mortgage payments. Around February 8, 2018, despite never having missed a payment or made an inadequate payment during or following her Bankruptcy Case, Freeman received a call from Ocwen during which an Ocwen representative alleged she was approximately $8,000.00 behind on her mortgage payments. In May 2018, simultaneous with the dismissal of the First Foreclosure Case, Ocwen again stopped accepting Freeman's payments on her home loan. On May 30, 2018, Freeman received a thirty-day pre-foreclosure notice letter from Ocwen. But for Ocwen's refusal to accept her May payment, Freeman was contractually current on her home loan. On July 5, 2018, Ocwen applied a $20.00 "Property Inspection (Exterior)" fee to Freeman's mortgage without appropriate cause or necessity. *Id.* at 18–19.

Within forty-five days of the conclusion of the Bankruptcy Case, Ocwen began making weekly collection calls to Freeman, asking how she intended to cure an alleged default status on her mortgage. During these phone calls, Freeman notified Ocwen's representatives, or their supervisor, that she was current, had made adequate and timely monthly payments as required, and any alleged delinquency was an error. Ocwen's telephone calls, and Freeman's attempts to notify Ocwen of its error in treating her as if she was in default, continued until late May 2018. *Id.* at 19.

Freeman retained counsel, and by letter dated July 12, 2018, she sent a "Request for Information Pursuant to Section 1024.36 of Regulation X" to obtain documents regarding the cause of the alleged default. Ocwen received this request on July 17, 2018. In response, on July 20, 2018, Ocwen provided Freeman with a mortgage reinstatement quote, sought the immediate payment of $6,587.05 (including an escrow payment tied to an alleged deficiency in the amount of $2,409.48),

and notified her that the mortgage may be referred to foreclosure if the account was not reinstated. However, Ocwen did not provide Freeman with the requested copies of its servicing notes, its last two escrow analyses, an accurate payoff statement, or its credit reporting information provided to any credit bureaus. *Id.* at 20–21.

On October 29, 2018, Freeman sent a letter via counsel to Ocwen, providing notice of its errors for failing to accept payments as contractually obligated and failing to provide an accurate payoff statement. The notice-of-errors letter also asked Ocwen to provide all documents it relied upon if it determined that no error had occurred. By this letter and her other communications with Ocwen representatives, Freeman brought the errors to Ocwen's attention, made it aware of the false default status on her home loan, and requested that the errors be investigated and corrected. Ocwen received this notice-of-errors letter on November 1, 2018. Ocwen took no action to reasonably investigate or correct the errors identified and the false default status of the loan. *Id.* at 21–22.

By letters dated November 13, 2018, Freeman provided Ocwen a second request for information as well as a second notice of errors for failing to send monthly billing statements; failing to perform an escrow analysis accurately, calculate proper escrow payments, or refund an escrow surplus; failing to comply with the October 26, 2012 order in the Bankruptcy Case; continuing to fail to accept timely and adequate payments as contractually obligated in July, August, September, October, and November 2018; imposing fees for which it had no reasonable basis to impose and for improperly placing and leaving funds in Suspense on at least fifty-six different occasions; failing to provide a payoff statement within seven business days; and failing to adequately respond to Freeman's first request for information within thirty business days when it refused to provide copies of its last two escrow analyses and information about the reporting of Freeman's loan to the credit bureaus. This second notice of errors also disputed any information or

reporting previously made by Ocwen to any credit bureau suggesting she was delinquent or had

an unpaid balance. Ocwen received these two letters on November 17, 2018. Ocwen took no action

to reasonably investigate or correct the errors identified in the second notice of errors and the false

default status of the loan (Filing No. 84 at 23–24).

More than a month after the Complaint was filed in this federal lawsuit, Ocwen responded

to the first notice of errors on January 7, 2019. It was Ocwen's contention that the October 29,

2018 letter did not provide details regarding any specific errors made by Ocwen in servicing the

loan. The response noted that Ocwen made changes to the loan payment history by applying funds

in escrow to the principal balance and by removing certain charges. It further noted that Ocwen

conducted an investigation and determined that no error occurred. Then Ocwen responded to the

second notice of errors on January 22, 2019. Ocwen asserted that no error occurred with respect

to the failure to send billing statements, and it noted that the escrow funds were available to be

refunded to Freeman if she requested. Ocwen explained that with respect to the fees and costs

assessed to the loan in connection with the bankruptcy proceedings, Ocwen had determined that

an error occurred, and the removal of the fees and costs at issue were shown in the payment history

provided on January 7, 2019. It noted that no error occurred with respect to the refusal of payments

tendered by Freeman in July, August, September, October, and November 2018. Ocwen noted

other errors in the assessment of fees and explained that those fees would be removed. *Id.* at 22,

24–25.

Ocwen's response to the second notice of errors contradicted the escrow documents it

provided and the payment history it referenced. Its response failed to take actions necessary to

correct the errors identified, including reversing all payments and reapplying them pursuant the

loan's terms; acknowledging in writing that the loan was current with no outstanding amounts;

removing all disallowed fees per the October 26, 2012 order in the Bankruptcy Case; and ceasing the rejection of payments from Freeman and beginning to appropriately apply the payments. Despite being requested in the second notice of errors, Ocwen did not provide the documents or information it relied upon in reaching its determination. *Id.* at 26–27.

On December 4, 2018, Freeman sent a third notice of errors to Ocwen. It noted Ocwen's continuing rejection of Freeman's payments and its failure to provide an accurate payoff statement within seven business days following Freeman's second notice of errors. This third notice also specifically disputed the reporting of any delinquency or missed payments since June 2012. The third notice also asked for copies of all documents relied upon if Ocwen determined that no error had occurred. Ocwen received this third notice of errors on December 7, 2018. Ocwen responded by letter dated January 22, 2019, and asserted that the third notice of errors failed to provide sufficient detail regarding any error made by Ocwen in servicing the loan. The response asserted that Ocwen had conducted a reasonable investigation and determined that no error occurred with respect to the alleged refusal of a payment tendered by Freeman in December 2018, and it noted that she could request the documents that Ocwen relied upon through Ocwen's counsel. *Id.* at 27–28.

After refusing to accept and apply payments, and despite Freeman's attempts to notify Ocwen of its errors, Ocwen and BONY declared Freeman to be in default, and on August 15, 2018, BONY filed a second foreclosure case in the Hamilton County (Indiana) Superior Court (the "Second Foreclosure Case"). The Second Foreclosure Case was filed even though Freeman's mortgage account was purportedly less than 120 days delinquent. In its motion to dismiss the First Foreclosure Case, BONY had asserted that the loan was due and current as of May 2017. Freeman made timely and adequate payments to Ocwen from May 2017 to May 2018 when Ocwen began

rejecting her payments. In the Second Foreclosure Case, Ocwen and BONY alleged the loan was in default and that Freeman owed a principal balance of $88,039.35 plus other foreclosure related fees. On October 26, 2018, BONY was directly informed that Freeman was current but for the payments recently rejected by Ocwen; then on October 31, 2018, Freeman's counsel filed an answer denying any default, raising affirmative defenses including Ocwen's errors, and a counterclaim for breach of contract. *Id.* at 29–30.

On November 19, 2018, Freeman provided to Ocwen and BONY a payment history, which evidenced her timely and adequate payments for every month from May 2017 to December 2017. No corrective action was taken by Ocwen or BONY in response to receiving this payment history. On December 4, 2018, Freeman sent a letter to Ocwen and BONY, requesting a list of documents she could provide to Ocwen and BONY that would be sufficient to dismiss the Second Foreclosure Case. Then on January 23, 2019, the Second Foreclosure Case was dismissed without prejudice (Filing No. 84 at 31).

Because of Ocwen's conduct, Freeman remains in a wrongful and false default status under her loan. Because of this wrongful and false default status, Ocwen has imposed a number of unwarranted fees on the loan, including improper late fees and improper default service fees such as fees for property inspection and corporate advances that have not been removed from the account. Ocwen's conduct has caused Freeman to suffer harm to her credit. The false and misleading reporting has resulted in the suppression of Freeman's credit rating, a diminishing of the credit available to her, and an increase in the cost of insurance. The incorrect credit reporting has been disputed by Freeman on several occasions, but no corrective action has been taken. *Id.* at 32–33.

On December 6, 2018, Freeman filed her initial Complaint in this action against Ocwen, asserting eight claims against it (Filing No. 1). BONY was added as a defendant through Freeman's First Amended Complaint, which was filed on March 14, 2019. Freeman asserted nine claims in a First Amended Complaint (Filing No. 24). On July 10, 2019, Freeman filed a Second Amended Complaint, asserting eleven claims against the Defendants (Filing No. 59). Freeman sought leave to file a third amended complaint and to correct the order of the exhibits attached to her Second Amended Complaint. The Court denied leave to file a third amended complaint but allowed Freeman to correct the error with her exhibits. On September 20, 2019, Freeman filed a corrected Second Amended Complaint (Filing No. 84). Thereafter, the Defendants filed their Motions to Dismiss.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581

F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

While review under Rule 12(b)(6) is limited to the complaint, courts consider documents attached to and incorporated in the complaint as part of the complaint and will consider documents that are referred to in the complaint, which are concededly authentic and central to the plaintiff's claim. *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *see also Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (courts may consider "the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice"). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

## III.   DISCUSSION

The Defendants filed separate Motions to Dismiss, asking the Court to dismiss claims asserted against them in Freeman's Second Amended Complaint. Ocwen seeks dismissal of Counts II, III, V, VI, VII, VIII, X, and XI of Freeman's Second Amended Complaint.   BONY seeks

dismissal of the two claims filed against it, Counts I and IV. The Court will first address the Motion filed by BONY and then turn to the Motion filed by Ocwen.

### A.    <u>BONY's Motion to Dismiss</u>

In her Second Amended Complaint, Freeman asserts two claims against BONY: breach of contract (Count I) and violation of the Truth in Lending Act, 15 U.S.C. § 1601 (Count IV). BONY argues both claims should be dismissed.

#### 1.    <u>Breach of Contract</u>

BONY argues that the breach of contract claim is largely preempted by the Bankruptcy Code because the allegations concern conduct that occurred during the pendency of Freeman's Chapter 13 Bankruptcy or are directly dependent on the proceedings in the Bankruptcy Court. BONY further argues that the remaining allegations regarding the breach of contract claim are insufficient to state a claim because the plain language of the parties' contract does not concern the conduct alleged. Thus, the breach of contract claim must be dismissed.

BONY asserts that "the Bankruptcy Code preempts virtually all claims which allege misconduct in Bankruptcy proceedings," *Cox v. Zale Delaware, Inc.*, 242 B.R. 444, 449–50 (N.D. Ill. 1999), and a cause of action arising under state law, like breach of contract, is preempted if, absent the Code, there would be no cause of action. *Id.* at 450. BONY points out that this Court previously has recognized that state-law claims based solely on conduct arising in a bankruptcy proceeding are preempted under the theory of "field preemption." *Carter v. HSBC Mortg. Servs.*, 2016 U.S. Dist. LEXIS 128682, at *18–20 (S.D. Ind. Sep. 21, 2016). "[S]tate-law claims that attempt to govern the same activity regulated by the Bankruptcy Code are expressly preempted because Congress intended to occupy the entire field by providing exclusive remedies in the Bankruptcy Code." *Id.* at *19 (internal citation and quotation marks omitted).

Freeman's allegations are that BONY, through Ocwen, breached the mortgage contract by

(i) failure to accept Freeman's timely and adequate mortgage payments as contractually obligated; (ii) failure to credit and apply Freeman's payments as contractually obligated; (iii) assessment of unauthorized late fees, legal fees, costs, and property inspection fees; . . . [and] (vi) converting funds towards fees or costs specifically disallowed by Order dated October 26, 2012.

(Filing No. 84 at 35–36.)

BONY asserts that underlying these statements is Freeman's allegation that, "[d]uring the course of the Bankruptcy Case, Ocwen assessed fees and expenses, some of which were applied to Freeman's mortgage account as a debit and others that were applied and then reversed," *id.* at 16, and "[t]hose fees and expenses applied to Freeman's mortgage (*i.e.,* fees and expenses paid by Ocwen to Ocwen from funds that should have been applied to principal, interest, or escrow.) include $6,649.43 in escrow charges ***specifically disallowed*** in the Bankruptcy Case by the October 26, 2012 Order . . . ." *Id.* (emphasis in original). Freeman has alleged that the misapplication of funds disallowed by the Bankruptcy Court led to inaccurate escrow balances and an erroneous default on the mortgage. *Id.* at 16–17.

BONY argues that the collection of fees and expenses complained of by Freeman is directly linked to the effect of the October 26, 2012 order issued by the Bankruptcy Court in Freeman's Chapter 13 bankruptcy. Thus, without the October 26, 2012 order, the collection of fees and expenses is not independently actionable because the propriety of those actions is inextricably linked to what amounts the Bankruptcy Court did or did not allow. Therefore, BONY asserts, Freeman's claim for breach of contract attempts "to govern the same activity regulated by the Bankruptcy Code" and is thus preempted.

BONY additionally contends that Freeman has failed to state a claim for breach of contract because the conduct complained of is not governed by the terms of the mortgage contract. Freeman

alleges BONY breached the contract by "(iv) fail[ing] to dismiss the foreclosure action upon receiving notice of the facts alleged herein;" and "(v) placing the loan in default and inaccurately reporting to credit bureaus said status." (Filing No. 84 at 36.) But Freeman does not allege that the mortgage contract requires BONY to dismiss foreclosure actions, and she does not allege that the mortgage contract governs the reporting of information to credit bureaus. The plain language of the mortgage contract does not have any terms governing the dismissal of foreclosure actions or the reporting of credit information. Because the plain language of the mortgage contract does not establish a duty to dismiss a foreclosure action upon receipt of certain information or to report information to credit bureaus, BONY argues that Freeman has failed to state a claim for breach of contract.

Freeman responds, "While it is true some of the alleged duties underpinning Freeman's claimed breach are not expressly included in the Mortgage, BONY's argument ignores those that are and other language requiring adherence to RESPA." (Filing No. 91 at 3–4.) Freeman asserts that numerous other courts have permitted claims for breach of contract to proceed based on allegations of the same or similar conduct. However, "Freeman concedes the failure to timely dismiss the foreclosure action does not constitute a duty upon which a claim for breach of contract can be reached." *Id.* at 4.

Freeman contends that BONY's argument concerning field preemption of the breach of contract claim is unavailing because "BONY's assertion that Freeman's allegations for breach of contract are rooted solely in Ocwen's attempts to collect fees and expenses that were disallowed by the Bankruptcy Court is a gross mischaracterization of the allegations of Freeman's Complaint." *Id.* at 5.

Furthermore, Freeman asserts, the primary authorities on which BONY relies are not applicable to the facts and circumstances of this case as is demonstrated by the analysis and holding of *In re Laskowski*, 384 B.R. 518 (Bankr. N.D. Ind. 2008) (holding that RESPA and breach of contract claims were not preempted by Bankruptcy Code). The cases relied upon by BONY involved circumstances where the plaintiffs' claims were based solely on conduct that was wrongful only because it violated provisions of the Bankruptcy Code. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir. 2001) (plaintiff's claim sought rescission of a debt-reaffirmation agreement and recovery of amounts paid pursuant to the agreement because the creditor had violated the requirement of Section 524(c) of the Bankruptcy Code); *Carter*, 2016 U.S. Dist. LEXIS 128682 (plaintiff's state law claims of actual fraud, constructive fraud and unjust enrichment were based solely on defendant filing a false proof of claim in plaintiff's bankruptcy proceeding). Freeman asserts that, when the conduct upon which a plaintiff's claims are based is wrongful because it involves violations of federal or state laws independent of the provisions of the Bankruptcy Code, preemption of the claims by the Bankruptcy Code does not occur. *In re Laskowski*, 384 B.R. at 530–31.

Freeman reiterates that her breach of contract claim involves (i) failure to accept Freeman's timely and adequate mortgage payments as contractually obligated; (ii) failure to credit and apply Freeman's payments as contractually obligated; (iii) assessment of unauthorized late fees, legal fees, costs, and property inspection fees; (iv) failure to dismiss the foreclosure action upon receiving notice of the facts; (v) placing the Loan in default and inaccurately reporting to credit bureaus said status; and (vi) converting funds towards fees or costs specifically disallowed by Order dated October 26, 2012 (*see* Filing No. 84 at 35–36). These factual underpinnings are not based solely on conduct that was wrongful only because it violated a provision of the Bankruptcy

Code. Thus, Freeman argues, the breach of contract claim against BONY is not preempted by the Bankruptcy Code.

Furthermore, Freeman asserts,

[C]ontrary to the gross mischaracterization of the allegations of Freeman's Complaint by BONY, most of the conduct on which Freeman's breach of contract claim is based occurred subsequent to, and independent of, Freeman's Chapter 13 bankruptcy proceeding. For example, BONY's wrongful failures to accept Freeman's timely and adequate mortgage payments as contractually obligated (which is still occurring as we speak) all occurred post-Bankruptcy. (Pl.'s Second Amend. Compl. ¶¶ 118-26). So too, there were assessments of unauthorized fees and additional interest resulting from Ocwen's maintenance of unlawful surplus balances in Suspense, as well as assessments of unauthorized fees, penalties and/or interest resulting from Ocwen's maintenance of unlawful negative escrow balances, that occurred subsequent to the bankruptcy proceeding and involved conduct independent of the bankruptcy proceeding. (Pl.'s Second Amend. Compl. ¶¶ 107-08, 111-15, 125).

(Filing No. 91 at 7.)

The Court first notes that Freeman conceded that her claim for breach of contract cannot proceed on the theory of a failure to timely dismiss the foreclosure action. Therefore, the Court **grants** BONY's Motion to Dismiss the breach of contract claim to the extent that the claim relies on this theory. The Court agrees with BONY's position that Freeman's mortgage contract does not create any contractual duties or obligations regarding accurate reporting to credit bureaus (*see* Filing No. 84-15). Therefore, the Court **grants** BONY's Motion to Dismiss the breach of contract claim to the extent that the claim relies on this additional theory. Furthermore, the Court agrees with BONY's position regarding "field preemption" for bankruptcy proceedings and the Bankruptcy Code and, therefore, **dismisses** Freeman's breach of contract claim under the theory that a breach occurred by converting funds towards fees or costs specifically disallowed by the Bankruptcy Court's October 26, 2012 order.

The remaining theories of liability for supporting Freeman's state-law breach of contract claim are not based solely on conduct arising from the bankruptcy proceeding, and thus, those theories of liability are not preempted. Freeman's remaining breach of contract theories do not flow solely from and are not dependent upon the resolution of the underlying bankruptcy issues. Absent the Bankruptcy Code, a breach of contract cause of action would still exist. Freeman has alleged sufficient facts regarding BONY's conduct to support a claim for breach of contract to move beyond the motion to dismiss stage. Therefore, the Court **denies** the Motion to Dismiss the breach of contract claim based upon Freeman's other theories of liability.

### 2. <u>Violation of the Truth in Lending Act</u>

BONY asserts that Freeman's claim against it for violation of the Truth in Lending Act ("TILA") should be dismissed because BONY is not a "creditor" as defined by TILA, and the statute's assignee liability does not extend to the acts alleged by Freeman. Additionally, the statutory provisions and regulations cited by Freeman explicitly disclaim liability for BONY and are otherwise inapplicable.

Section 1640(a) of TILA provides that "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person . . . ." 15 U.S.C. § 1640(a). A "creditor" is defined by TILA as,

> [A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of the indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). Thus, BONY asserts, in the context of mortgages, "creditor" means the originator of a loan, not subsequent assignees of the mortgage.

Assignee liability under TILA is available only in certain, limited circumstances.

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if (A) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and (B) the assignment to the assignee was voluntary.

15 U.S.C. § 1641(e)(1). TILA provides, "With respect to any failure to make disclosures required under this part or part D or E of this subchapter, liability shall be imposed only upon the creditor required to make disclosure, except as provided in section 1641 of this title." 15 U.S.C. § 1640(a).

In her Second Amended Complaint, Freeman alleges "[t]he Loan was originated by Sun Mortgage Company, LLC, and subsequently placed in a mortgage-backed security guaranteed by Fannie Mae." (Filing No. 84 at 2.) "Thereafter, ownership of the Note was transferred to [BONY]." *Id.* BONY points out there is no allegation that the assignment to BONY was involuntary, and thus, BONY argues, it is at most an assignee under TILA.

Freeman alleges that BONY violated TILA through:

> (i) Ocwen's breach of its duty to send interest rate and payment change notices pursuant to 15 U.S.C. § 1638a and Reg. Z, 12 C.F.R. § 1026.20(c) and (d); (ii) Ocwen's breach of its duty to promptly credit payments pursuant to 15 U.S.C. § 1639f and Reg. Z, 12 C.F.R. § 1026.36(c)(1); (iii) Ocwen's breach of its duty to send periodic mortgage statements pursuant to 15 U.S.C. § 1638(f) and Reg. Z, 12 C.F.R. § 1026.41; and (iv) Ocwen's breach of its duty to provide a timely payoff statement pursuant to 15 U.S.C. § 1639g and Reg. Z, 12 C.F.R. § 1026.36(c)(3).

*Id.* at 40.

BONY argues that it is an assignee, not a creditor, and none of the alleged theories of liability state a cause of action based on "a violation apparent on the face of the disclosure statement" as required for assignee liability under TILA. *See* 15 U.S.C. § 1641. Each of the alleged violations concern conduct by a servicer after assignment and do not concern the disclosure made by the originating creditor. Thus, the TILA claim against BONY must be dismissed.

BONY contends that the statutory provisions and regulations cited by Freeman explicitly disclaim liability for BONY because BONY is not the creditor or servicer of the loan. Freeman has alleged that Ocwen is the servicer of her loan (*see* Filing No. 84 at 2). Freeman alleges BONY violated TILA because of "Ocwen's breach of its duty to promptly credit payments pursuant to 15 U.S.C. § 1639f and Reg. Z, 12 C.F.R. § 1026.36(c)(1)." *Id.* at 40. However, Section 1639f only applies to servicers, not creditors or assignees. Section 1639f provides, "In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt . . . ." 15 U.S.C. § 1639f(a). Because BONY is not a "servicer" of Freeman's loan, Section 1639f is not applicable to BONY.

Freeman also alleges BONY violated TILA because of "Ocwen's breach of its duty to send periodic mortgage statements pursuant to 15 U.S.C. § 1638(f) and Reg. Z, 12 C.F.R. § 1026.41." (Filing No. 84 at 40.) BONY explains that Regulation Z explicitly states, "[a] creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this section to provide a periodic statement." 12 C.F.R. § 1026.41(a)(2). As pled by Freeman, BONY is not subject to the periodic statement requirement under Section 1638(f) as regulated by 12 C.F.R. § 1026.41.

Freeman further alleges BONY violated TILA because of "Ocwen's breach of its duty to provide a timely payoff statement pursuant to 15 U.S.C. § 1639g and Reg. Z, 12 C.F.R. § 1026.36(c)(3)." (Filing No. 84 at 40.) BONY again asserts that Regulation Z explicitly states that "[a] creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement." 12 C.F.R § 1026.36(c)(3). As pled by Freeman, BONY is not subject to the payoff statement requirement under Section 1639g as regulated by 12 C.F.R. § 1026.36.

BONY additionally argues that Freeman's TILA claim based upon Section 1638a is time-barred and must be dismissed. Freeman alleges BONY violated TILA because of "Ocwen's breach of its duty to send interest rate and payment change notices pursuant to 15 U.S.C. § 1638a and Reg. Z, 12 C.F.R. § 1026.20(c) and (d)." (Filing No. 84 at 40.) Section 1638a provides,

> During the 1-month period that ends 6 months before the date on which the interest rate in effect during the introductory period of a hybrid adjustable rate mortgage adjusts or resets to a variable interest rate or, in the case of such an adjustment or resetting that occurs within the first 6 months after consummation of such loan, at consummation, the creditor or servicer of such loan shall provide a written notice, separate and distinct from all other correspondence to the consumer . . . .

15 U.S.C. § 1638a(b). BONY asserts this provision of TILA concerns a disclosure that is required during the month ending on the date six months before an introductory interest rate converts to an adjustable rate.

Freeman's introductory rate ended on April 1, 2005 (*see* Filing No. 84-15). Thus, the disclosure under Section 1638a was required between September 1, 2004 and October 1, 2004. BONY argues that whether the disclosure in question was made is irrelevant because this claim is approximately fourteen years outside the one-year statute of limitations under TILA. *See* 15 U.S.C. § 1640(e). Because Section 1638a applies to notice of interest rate changes after an introductory period, which occurred in April 2005 in this case, BONY asserts Freeman's claim under this section is time-barred.

"Freeman concedes she has failed to state a claim under Section 1638a of TILA" because it is time-barred (Filing No. 91 at 12). However, as to the other aspects of her TILA claim, Freeman responds that BONY's argument employs an impermissibly narrow reading of the statute and disregards other cases where assignees were found liable for the acts and omissions of their servicers in situations nearly identical to those alleged here. *See, e.g.*, *St. Breux v. U.S. Bank N.A.*, 919 F. Supp. 2d 1371 (S.D. Fla. 2013); *Justice v. Ocwen Loan Serv., L.L.C.*, 2014 WL 526143

(S.D. Ohio Feb. 7, 2014); *Cenat v. U.S. Bank N.A.*, 930 F. Supp. 2d 1347 (S.D. Fla. 2013); *R.G. Fin Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st Cir. 2006). Freeman's TILA claim is based on allegations of BONY's failure to promptly credit payments, BONY's failure to send periodic mortgage statements, and BONY's failure to provide a timely payoff statement in violation of 15 U.S.C. §§ 1639f and 1639g. Freeman asserts that these acts and omissions are alleged to have been committed by BONY itself and alternatively by its agent Ocwen, for which it is vicariously liable. Freeman notes that BONY's narrow interpretation of TILA is inconsistent with the general rule that, as a remedial law, TILA is designed to protect consumers and thus should be liberally construed. *See, e.g.*, *Hauk v. JP Morgan Chase Bank United States*, 552 F.3d 1114 (9th Cir. 2009).

Freeman argues that, while a very narrow and literal reading of the relevant regulations could lead to the conclusion of no liability for BONY because it is not a "creditor" or "servicer," BONY's interpretation obfuscates the remedial purpose of TILA and canons of statutory construction. TILA should be given a broad, as opposed to narrow, reading in order to effectuate its intent. Freeman asserts she has plausibly pled that BONY owns her mortgage loan, that BONY retained Ocwen to service the loan on its behalf, and that BONY has a principal-agent relationship with Ocwen.

In reply, BONY notes, despite TILA's plain language establishing the circumstances a creditor or its assignee may be liable, Freeman improperly argues BONY is responsible for all of the alleged conduct because either it or its servicer (Ocwen) violated TILA. However, TILA's language is unambiguous and clear as to when there is liability against an assignee, and Freeman has failed to allege a cause of action against BONY under the plain terms of the statute. Freeman's vicarious liability theory also conflicts with Freeman's concession that there is no servicer liability under TILA. *See Khan v. Bank of New York Mellon*, 849 F. Supp. 2d 1377, 1379 (S.D. Fla. 2012).

BONY's arguments concerning Freeman's TILA claim are well-taken. The allegations in the Second Amended Complaint seek to impose liability on BONY for the actions of Ocwen (BONY's servicer), yet Freeman acknowledges that there is no servicer liability under TILA (*see* Filing No. 91 at 8 n.2). Freeman also acknowledges that BONY is not a "creditor" under TILA. Furthermore, Freeman concedes that her TILA claim under Section 1638a fails because it is time-barred. The other sections of TILA upon which Freeman relies impose obligations on servicers, not on entities in BONY's position. Additionally, Freeman concedes that a literal reading of the relevant regulations could lead to the conclusion of no liability for BONY because it is not a "creditor" or "servicer." Freeman suggests that the Court ignore the unambiguous, explicit language of the statute and apply a broad interpretation to allow her claim to proceed. The Court declines to do so in light of the plain and explicit language of TILA. Therefore, the Court **grants** BONY's Motion to Dismiss Freeman's TILA claim.

**B.**     **Ocwen's Motion to Dismiss**

In her Second Amended Complaint, Freeman asserts eight claims against Ocwen: violation of the Real Estate Settlement Procedures Act ("RESPA") (Count II), violation of the Fair Debt Collection Practices Act ("FDCPA") (Count III), violation of the Fair Credit Reporting Act ("FCRA") (Count V), violation of the Discharge Injunction and Federal Rule of Bankruptcy Procedure 3002.1 (Count VI), violation of Bankruptcy Orders (Count VII), violation of Indiana's Crime Victim's Relief Act (Count VIII), violation of Indiana's Deceptive Consumer Sales Act (Count X), and violation of the Telephone Consumer Protection Act ("TCPA") (Count XI). Ocwen argues that each of these claims should be dismissed. The Court will address these claims in turn.[2]

---

[2] After the Motion to Dismiss was fully briefed, Freeman and Ocwen filed a stipulated dismissal of Count XI (violation of the TCPA) of the Second Amended Complaint (Filing No. 123), and the Court dismissed that claim (Filing No. 124). Therefore, the Court will not address that claim in this Order.

### 1.   **Real Estate Settlement Procedures Act Claim**

RESPA was enacted by Congress to provide homebuyers and sellers with complete settlement cost disclosures. *See* 12 U.S.C. §§ 2601–2617. Ocwen presents various arguments for the dismissal of Freeman's RESPA claim. First, Ocwen argues that Freeman's letters to Ocwen are rambling, repetitive discovery-style document demands rather than "qualified written requests" that could provide a basis for RESPA liability. Ocwen argues that inquiries or alleged errors outside the scope of loan servicing cannot support a RESPA claim, and Freeman's letters were simply an attempt to manufacture a RESPA claim shortly before and during litigation between the parties. Rather than waiting for Ocwen to respond to the initial letter, Freeman inundated Ocwen with repetitive letters. In any event, Ocwen argues, its responses to Freeman's letters were objectively reasonable and complied with the requirements of RESPA. Ocwen asserts that Freeman's dissatisfaction with Ocwen's responses does not render the responses noncompliant.

Ocwen points out that there is no private right of action for Freeman's claims for mishandling her escrow account, unlawful increase in escrow payments amount, unlawful treatment of payments as late, and misrepresentations in account statements. Any claims brought under Section 2609 of RESPA fail because no private right of action exists to enforce this section. *See Allison v. Liberty Savings*, 695 F.2d 1086 (7th Cir. 1982) (holding "no implied private cause of action exists under § 10 [section 2609] of RESPA"). Ocwen also argues that Freeman's RESPA claim should be dismissed or at least limited because she has requested $2,000.00 in statutory damages for each violation of RESPA, but, Ocwen asserts, RESPA caps statutory damages at $2,000.00 total. Finally, Ocwen argues that Freeman has not sufficiently alleged factual assertions to support a "pattern and practice" claim under RESPA because she has not alleged a coordinated effort or widespread business practice of Ocwen that violates RESPA.

Freeman responds that her notices of errors and requests for information sent to Ocwen complied with RESPA, and Ocwen's assertion to the contrary is inaccurate and based on a mischaracterization of the correspondence. The notices and requests pertained to Ocwen's improper servicing of Freeman's home loan, and thus, are proper under RESPA. Freeman asserts that ongoing litigation does not invalidate her written requests sent to Ocwen for purposes of RESPA. And Ocwen's characterization of the correspondence as an attempt by lawyers to manufacture RESPA claims is inaccurate and legally irrelevant. Freeman requested information and provided notice of errors, and this is sufficient to support a RESPA claim. Freeman argues that Ocwen's responses to her requests were unreasonable and violated RESPA, but in any event, the Court must take the pleadings as true at the motion to dismiss stage. And Freeman asserts that she has alleged facts that Ocwen did not respond reasonably to her requests because the responses were boilerplate or perfunctory.

Freeman argues that, although RESPA may not provide for a private right of action for escrow account servicing errors under § 2609, RESPA does provide for a private right of action against servicers who fail to comply with the error resolution procedures set forth in 12 U.S.C. § 2605 and Section 1024.35 of Regulation X. 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts . . ."). *See Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053 (7th Cir. 2018) ("In § 2605(f), RESPA provides a private right of action for actual damages resulting from violations of § 2605."). Freeman asserts that Ocwen's failure to comply with the error resolution procedures with respect to its servicing errors supports her RESPA claim.

Concerning Ocwen's argument about a $2,000.00 statutory cap on damages, Freeman asserts that Ocwen's case citations have no precedential value as they are district court cases, and

the plain language of RESPA provides for $2,000.00 statutory damages for each failure to comply with RESPA. Regarding the argument about a "pattern and practice," Freeman argues she can plead a pattern and practice of failing to comply with RESPA through Ocwen's repeated failure to respond to her numerous requests or through Ocwen's noncompliance as a servicer of other borrowers' loans. She asserts that she has pled many RESPA violations and failures to respond to requests as pertaining to herself individually, and she has pled many other lawsuits have been brought by other borrowers against Ocwen for similar violations, thereby sufficiently alleging a pattern and practice for RESPA purposes.

A review of the pleadings and the cited statutory provisions show that Freeman's arguments are well-taken at this motion to dismiss stage. Ocwen's arguments for dismissal very well could be successful in a summary judgment motion; however, the standard is different under a motion to dismiss, and the Court must accept the pleadings as true and view them in the light most favorable to the non-moving party. Freeman has pled enough factual allegations to support a legally cognizable claim under RESPA. Any argument concerning a cap to statutory damages is not a proper basis to dismiss outright the RESPA claim, and this damages issue need not be decided at the motion to dismiss stage. The Court notes that "RESPA doesn't allow for a private right of action for violations of [certain RESPA] sections [including 2609]." *Wells Fargo Bank, N.A. v. Jones*, 2015 U.S. Dist. LEXIS 63831, at *10 n.2 (N.D. Ind. May 15, 2015) (citing *Allison*, 695 F.2d at 1087). Therefore, to the extent that Freeman's RESPA claim is based upon Section 2609, the claim is **dismissed**; in all other respects, the claim may proceed beyond the motion to dismiss stage.

### 2. FDCPA Claim

Similar to BONY's argument of "field preemption" discussed above, Ocwen argues that Freeman's FDCPA claim must be dismissed because it is preempted by the Bankruptcy Code.

Ocwen asserts that all of the alleged conduct occurred either during the pendency of Freeman's Chapter 13 Bankruptcy or arose out of the bankruptcy proceedings. Courts have held that the Bankruptcy Code precludes FDCPA claims based on a defendant's attempt to collect a debt discharged in bankruptcy. *See Wehrheim v. Secrest*, 2002 U.S. Dist. LEXIS 19020, at *28 (S.D. Ind. Aug. 16, 2002).

Ocwen argues that any FDCPA claims based on conduct prior to December 6, 2017, are time-barred because the lawsuit was filed on December 6, 2018, and the FDCPA has a one-year statute of limitations. The FDCPA specifies that suits must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Ocwen argues that Freeman's claim is based upon the attempted collection of allegedly disallowed debt, which began in April 2017, and Freeman's claim is a continuation of a single violation rather than distinct violations of the FDCPA. Thus, Ocwen argues, the claim is time-barred.

Freeman responds that Ocwen's argument mischaracterizes the allegations of the Second Amended Complaint and uses an inaccurate narrow interpretation of the pleadings. Freeman asserts that her FDCPA claim is based both on wrongfully assessed fees, charges, and expenses that were assessed by Ocwen subsequent to and independent of the fees and expenses discharged by the bankruptcy proceeding as well as on other types of wrongful conduct post-bankruptcy not involving the assessment of fees and charges such as Ocwen's repeated post-bankruptcy mischaracterization of the character, amount, or legal status of Freeman's home loan and threatening and commencing foreclosure proceedings against Freeman.

Freeman argues that the current law in the Seventh Circuit is that the Bankruptcy Code does not preempt claims under the FDCPA even when those claims relate to a violation of an automatic bankruptcy stay or a discharge injunction because they are concurrent, non-exclusive

remedies with different standards. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 733 (7th Cir. 2004); *see also Owens v. LVNV Funding, LLC*, 832 F.3d 726, 734 (7th Cir. 2016). Freeman argues that the statute of limitations factual issue should be left for summary judgment or trial, and the "discovery rule" applies to FDCPA claims as a defense to a statute of limitations argument. Freeman asserts that it is "conceivable and consistent" with her allegations that she did not discover her injury until February 2018 when Ocwen reactivated the First Foreclosure Case.

The Court first notes that the Supreme Court recently held that the discovery rule does not apply to the FDCPA to extend the one-year statute of limitations, which begins on the "date on which the violation occurs." *Rotkiske v. Klemm*, 140 S. Ct. 355 (U.S. 2019). Therefore, the Court **grants** Ocwen's Motion to Dismiss the FDCPA claim to the extent it is based on any conduct that occurred before December 6, 2017, because this case was filed on December 6, 2018. The Court agrees with Ocwen's position regarding preemption or preclusion of the FDCPA claim to the extent it is based upon the bankruptcy proceedings and the Bankruptcy Code. Paragraph 257 of the Second Amended Complaint contains explicit references to the Bankruptcy Case and Discharge, and therefore, the Court **dismisses** the FDCPA claim to the extent it is based upon these allegations.

The remaining allegations supporting Freeman's FDCPA claim are not based solely on conduct arising from the bankruptcy proceeding, so those theories of liability are not preempted. Freeman has alleged sufficient facts regarding Ocwen's conduct to support a claim for an FDCPA violation to move beyond the motion to dismiss stage. The Court **denies** dismissal of the FDCPA claim based upon Freeman's allegations not directly tied to the Bankruptcy Case and Discharge.

### 3.  FCRA Claim

Ocwen next argues that the FCRA claim should be dismissed because Freeman has failed to allege that she disputed her credit information with a consumer reporting agency or that any

such dispute was transmitted by a consumer reporting agency to Ocwen. Thus, she has failed to state a claim under Section 1681s-2(b) of the FCRA. Ocwen argues that to the extent Freeman is alleging a violation of Section 1681s-2(a) for Ocwen's alleged act of reporting false information on her credit report, this claim fails because a consumer has no private right of action against a furnisher of information who provides inaccurate information to credit reporting agencies in violation of 15 U.S.C. § 1681s-2(a). *See Shepard v. Spectrum*, 2018 U.S. Dist. LEXIS 78689, at *4 (S.D. Ind. May 9, 2018).

Freeman responds that she is not bringing her FCRA claim under 15 U.S.C. § 1681s-2(a) but rather under § 1681s-2(b). Freeman asserts that, under § 1681s-2(b), a plaintiff must allege four elements: plaintiff identified an inaccuracy in her credit report, plaintiff notified a credit reporting agency, the credit reporting agency notified the furnisher of the information, and the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements in 15 U.S.C. § 1681s-2(b)(1)(A)–(E). Freeman argues that she has sufficiently pled each of these four elements at paragraphs 222, 49, 223, 279, and 41–55 of her Second Amended Complaint.

The allegations upon which Freeman relies consist of legal assertions, legal conclusions, legal and general factual background information, and threadbare recitations of the elements of the claim. The allegations are devoid of nonconclusory factual assertions to support the legal elements of a dispute being made to a credit reporting agency, and the credit reporting agency in turn notifying Ocwen of the dispute. Such is required for an FCRA claim under § 1681s-2(b). Therefore, the Court **dismisses** Freeman's FCRA claim in the Second Amended Complaint.

### 4.   Violation of the Discharge Injunction and F.R.B.P. 3002.1

Ocwen argues that Freeman's 11 U.S.C. § 524 claim for violation of the Bankruptcy Court's Discharge Injunction must be dismissed because there is no private right of action under § 524.

*See Cox*, 242 B.R. at 449, *aff'd*, 239 F.3d 910 (7th Cir. 2001). Ocwen points out that Freeman alleges Ocwen violated 11 U.S.C. § 524 by seeking to collect expenses and fees that were disallowed by the Bankruptcy Court, but because there is no private right of action under the § 524 Discharge Injunction, Freeman has failed to state a claim upon which relief can be granted.

Freeman responds that Ocwen has mischaracterized the allegations in the Second Amended Complaint, and the discharge injunction can be invoked when a creditor fails to properly credit payments made under the confirmed plan. If this happens, 11 U.S.C. § 524(i) treats such conduct as a violation of the discharge injunction even if the underlying debt is not discharged. Freeman argues her factual allegations support a plausible claim for violation of § 524(i), and § 524(i) gives debtors a cause of action and remedy for misapplication of payments during a Chapter 13 case.

In reply, Ocwen explains that it does not contend that Freeman has no remedy for alleged violations of the Discharge Injunction or that the Bankruptcy Court does not have the power to enforce its orders or provisions of the Bankruptcy Code. Rather, as argued in the opening brief, Freeman's remedy is not available in this District Court because there is no private right of action under § 524. Her available remedy lies in the Bankruptcy Court that issued the Discharge Injunction.

A review of the parties' arguments and the case law leads the Court to conclude that Ocwen's position is well-taken, and there is no private right of action for this particular claim in this District Court. Thus, Ocwen's Motion to Dismiss the claim for violation of the Discharge Injunction is **granted**.

### 5.  Violation of Bankruptcy Orders

Ocwen argues that this claim for violation of the Bankruptcy Court's orders likewise must be dismissed because there is no private right of action under § 524. And at least one court in the

Seventh Circuit has found that there is no private cause of action under 11 U.S.C. §§ 105 and 502. *See Holloway v. Household Automotive Finance Corp.*, 227 B.R. 501, 504–07 (N.D. Ill. 1998).

In response, Freeman asserts again that Ocwen has mischaracterized the pleadings, and Freeman is not seeking to bring an adversary action to recover damage remedies. Instead, she is asking the Court to enforce the Bankruptcy Court's orders by imposing contempt sanctions.

Ocwen replies that Freeman did not dispute there is no private right of action, and furthermore, this Court is not the proper avenue for Freeman to obtain the relief she seeks. She cannot seek an enforcement order and contempt sanctions for the Bankruptcy Court's orders in this District Court; her request is properly pursued in the Bankruptcy Court.

Ocwen's position is well-taken and supported by case law. Therefore, the Court **dismisses** Freeman's separate claim for violation of the Bankruptcy Court orders.

### 6. Violation of Indiana's Crime Victim's Relief Act

Similar to BONY's argument concerning the breach of contract claim, Ocwen argues that the Bankruptcy Code preempts "virtually all claims which allege misconduct in Bankruptcy proceedings." *Cox*, 242 B.R. at 449–50, *aff'd*, 239 F.3d 910 (7th Cir. 2001). A state law cause of action is preempted if, absent the Code, there would be no cause of action. *See id.* at 450. Furthermore, this Court has recognized that state-law claims based solely on conduct arising in a bankruptcy proceeding are preempted under the theory of "field preemption." *Carter*, 2016 U.S. Dist. LEXIS 128682. Freeman's state-law Crime Victim's Relief Act claim is premised entirely on Ocwen's alleged "conversion" of charges and fees disallowed by the Bankruptcy Court's order. Thus, Ocwen asserts, the claim is preempted, and the issue is solely under the Bankruptcy Court's jurisdiction.

Freeman did not respond to this argument or present any argument regarding this claim. In its reply brief, Ocwen points out that, "[a]s a result, Plaintiff has forfeited that claim and it must be dismissed with prejudice. *See Johnson v. United States*, 47 F. Supp. 2d 1075, 1080 (S.D. Ind. 1999)." (Filing No. 92 at 3.)

Freeman's failure to respond to the Motion to Dismiss this claim results in a waiver or abandonment of this claim. Regardless, Ocwen's argument is well-taken, and the claim is based entirely on the Bankruptcy Order and proceedings and is thus "field preempted." This claim is **dismissed**.

### 7.   <u>Violation of Indiana's Deceptive Consumer Sales Act</u>

Finally, Ocwen argues that Freeman has failed to state a claim for violation of the Indiana Deceptive Consumer Sales Act ("IDCSA"). Ocwen explains the IDSCA "provides remedies to consumers and the attorney general for practices that the General Assembly deemed deceptive in consumer transactions." *McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998). There are two kinds of actionable deceptive acts: "uncured" and "incurable." *Id.* at 68. Ocwen argues that Freeman has failed to state a claim under the IDCSA because she has not alleged that she met the prerequisite steps to filing suit for an uncured act, and she has failed to plead the elements necessary for an incurable act.

Ocwen asserts that Freeman failed to allege that she gave Ocwen notice fully stating the nature of the alleged deceptive act and the actual damage suffered therefrom, which is required under the IDCSA. Freeman merely alleges that she provided notice to Ocwen of its willful unfair deceptive acts through its notices of errors. But she does not allege that those notices gave a complete description of the actual damage suffered. Thus, her pleadings are deficient for an uncured deceptive act under the IDCSA.

To support a claim for an incurable deceptive act under the IDCSA, a plaintiff must allege a scheme, artifice, or device with intent to defraud or mislead, because under the statute, "[a]n incurable act is done 'as part of a scheme, artifice, or device with intent to defraud or mislead.'" *Davis v. Contractability.com, LLC*, 2017 WL 413290 (S.D. Ind. Jan. 31, 2017) (citing Ind. Code § 24-5-0.5-2(a)(8)). Ocwen argues that Freeman has not alleged any such scheme, artifice, or device with intent to defraud or mislead, so a claim for an incurable deceptive act is not pled.

Freeman responds that her notices of errors were sent to Ocwen and provided sufficient notice for purposes of the IDCSA. She asserts that a review of the notices of error shows that they do provide a description of the damages suffered by Freeman because the damages are, or should be, obvious to a sophisticated servicer like Ocwen from the very nature and context of the errors described in the notices. The notices also spell out the nature of the alleged deceptive acts committed by Ocwen. The notices of errors were sufficient to serve the purpose of the IDCSA, which is to give Ocwen the opportunity to cure its deceptive actions. Freeman further argues that her allegations sufficiently plead a scheme, artifice, or device with intent to defraud or mislead, showing the "who, what, when, and how" of Ocwen's deception. Freeman asserts that her allegations of pattern and practice of similar servicing violations against other borrowers support this claim of an incurable deceptive act.

Ocwen replies that the IDCSA plainly requires the consumer's notice "shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom . . . ." Ind. Code § 24-5-0.5-5. While Freeman argues a sophisticated servicer like Ocwen should know the damages suffered by Freeman, Ocwen asserts that the statute requires more of Freeman before pursuing her claim. And while Freeman has pointed to allegations of servicing errors, none of those allegations

show that Ocwen intended to defraud or mislead Freeman, so an incurable deceptive act is not sufficiently pled.

Ocwen's arguments are well-taken. Freeman's notices of errors were sent to Ocwen with specific reference that the notices were sent pursuant to RESPA. There was no reference to the IDCSA in the notices. More importantly though, the notices failed to "state fully" the "actual damage suffered" from the alleged deceptive acts. This is a plain and explicit prerequisite to an IDCSA claim for an uncured deceptive act. Furthermore, the allegations of Ocwen's numerous servicing errors and failures to correct those errors in a manner that satisfied Freeman do not support the fact or inference of an intent to defraud or mislead. Thus, Freeman's allegations and attached notices fail to satisfy the pleading requirements for an IDCSA claim. Therefore, the Court **dismisses** Freeman's IDCSA claim asserted in the Second Amended Complaint.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** BONY's Motion to Dismiss (Filing No. 88) and **GRANTS in part and DENIES in part** Ocwen's Motion to Dismiss (Filing No. 86).

Freeman's TILA claim brought against BONY is dismissed, and the breach of contract claim against BONY is dismissed in part.

Freeman's RESPA claim against Ocwen is dismissed to the extent that it is based upon Section 2609, but in all other respects, the claim may proceed. The FDCPA claim against Ocwen is dismissed to the extent it is based on any conduct that occurred before December 6, 2017, and where it is based upon the Bankruptcy Case and Discharge. The FDCPA claim may proceed in all other respects. Freeman's FCRA claim against Ocwen is dismissed. The claim against Ocwen for violation of the Discharge Injunction is dismissed. The separate claim against Ocwen for violation

of the Bankruptcy Court orders is dismissed. Freeman's Indiana Crime Victim's Relief Act claim and IDCSA claim are dismissed.

The claims that have been dismissed are **dismissed with prejudice**. Freeman already has been given the opportunity to amend her Complaint twice, and the Court previously denied her request to amend her pleadings for a third time because the deadline passed for amending the pleadings. The Seventh Circuit has noted that "dismissal under Rule 12(b)(6) . . . is a dismissal with prejudice." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015).

**SO ORDERED.**

Date:   12/21/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Rusty A. Payton
PAYTON LEGAL GROUP LLC
info@payton.legal

Nicholas H. Wooten
NICK WOOTEN, LLC
nick@nickwooten.com

Travis W. Cohron
CLARK QUINN MOSES SCOTT & GRAHN LLP
tcohron@clarkquinnlaw.com

Michael P. Maxwell, Jr.
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

John Curtis Lynch
TROUTMAN SANDERS LLP
john.lynch@troutman.com

Carter Randall Nichols
TROUTMAN SANDERS LLP
carter.nichols@troutman.com

Ethan Geoffrey Ostroff
TROUTMAN SANDERS LLP
ethan.ostroff@troutman.com