# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### Indianapolis Division

| | |
|---|---|
| **DEMONA FREEMAN**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.     1:18-cv-3844-TWP-DLP |
| | ) |
| **OCWEN LOAN SERVICING, LLC**, and | ) |
| **THE BANK OF NEW YORK MELLON** f/k/a | ) |
| The Bank of New York, as successor in interest to | ) |
| JPMorgan Chase Bank, N.A., as Trustee for | ) |
| C-BASS Mortgage Loan Asset-Backed Certificates | ) |
| Series, 2005-RPI, | ) |
| | ) |
| Defendants. | ) |

## REPLY IN FURTHER SUPPORT OF MOTION TO ENTER
## FINAL JUDGMENT OR CERTIFY INTERLOCUTORY APPEAL

Plaintiff, Demona Freeman ("Freeman"), by and through undersigned counsel, hereby submits this Reply In Further Support of Motion to Enter Final Judgement or Certify Interlocutory Appeal. In support thereof, Freeman states:

## INTRODUCTION

Freeman has never been afforded the opportunity to actually amend, or cure any alleged technical pleading defect. While true the operative Complaint has been modified on two prior occasions, leave was first sought and received "to make additional claims against Ocwen based on significant factual developments that occurred since the filing of the Complaint(,)" (Filing No. 21), then "to make additional claims against Ocwen for violations of the Ind. Deceptive Consumer Sales Act, I.C. § 14-5-0.5, et seq., and the Telephone Consumer Protection Act."

(Filing No. 53).   Thus, as indicated in the corresponding (unopposed) motions for leave, and evidenced by the changes occurring as a result, these "amendments" were actually  supplements contemplated by Rule 15(d) of the Federal Rules of Civil Procedure. In response to each of the supplemented Complaints, Ocwen promptly filed an Answer. On September 24, 2019 - nine months after the initiation of these proceedings, only after the Court's denial of Freeman's motion for leave to *further* supplement the Complaint (Filing No. 83), and in response to Freeman filing a corrected copy of the Second Amended Complaint to cure exhibit numbering and hyperlinking deficiencies, Ocwen sought dismissal of all claims raised against it. On December 21, 2020, the Court entered its Order on Defendant's Motion to Dismiss ("MTD Order") dismissing with prejudice Count V, Count VI, Count VII and Count X (the "Dismissed Claims").

## ARGUMENT

I.    **Freeman's Delay in Seeking a Rule 54(b) Order Was Not Occasioned by Neglect or Carelessness and Interests of Justice Require Abrogation of the General Rule Set Forth in *Schaefer* to Avoid Hardship.**

Ocwen argues Freeman's motion for entry of final judgement pursuant to Federal Rule of Civil Procedure 54(b) should be denied because it was untimely. In support, Ocwen cites to *Schaefer v. First Nat'l Bank of Lincolnwood*, 465 F.2d 234, 236 (7th Cir. 1972), where the Seventh Circuit held "as a general rule it is an abuse of discretion for a district judge to grant a motion for a Rule 54(b) order when the motion is filed more than thirty days after the entry of the adjudication to which it relates." *Id.* However, Ocwen conveniently omits the court in *Schaefer* also held, "[t]here may be of course cases of extreme hardship where dilatoriness is not occasioned by neglect or carelessness in which the application of this general rule might be abrogated in the interest of justice." *Id.* This oversight is likely because the instant matter is

precisely the type of case where the general rule should be abrogated. In fact, Freeman is not aware of a single case in this Circuit where a motion for a Rule 54(b) order filed just two days late was denied, let alone one involving the hardships and circumstances found here. *See, e.g.*, *Officer v. AS Chase Insurance Life & Annuity Co.*, 500 F. Supp. 2d 1083 (2007) ("Here, *nearly two months* after the order denying summary judgment, the Plaintiff filed a Motion for Rule 54(b) Certification asserting that there is no just reason for delay. ") (emphasis added); *King v. Newbold*, 845 F.3d 866 (7th Cir. 2017) (denying a Rule 54(b) motion made 13 months after partial summary judgment was granted and more than 30 days after entry of partial judgment on the pleadings).

Preliminary, the language in *Schaefer* and its progeny suggest the phrase "extreme hardship" was to elucidate a situation where circumvention of the general 30 day rule would be warranted, not impose a bright line rule that *extreme* hardship always be present. *See, e.g.*, *King*, 845 F.3d at 868 (7th Cir. 2017) ("Here, King's Rule 54(b) motion was made 13 months after partial summary judgment was granted and more than 30 days after entry of partial judgment on the pleadings. Because the motion was seriously tardy, King ***needed to show hardship***.") (emphasis added). It would be illogical to impose such a stringent standard when the Seventh Circuit itself declined to do so in the much more recent *King* opinion. In fact, because Rule 54(b) does not itself contain any express temporal restriction, it is arguably most appropriate to read *Schaefer* as requiring a showing of hardship against the particular delay. S*ee, e.g.*, *Bank of New York v. Hoyt*, 108 F.R.D. 184, 185 (D.R.I. 1985) ("eschew[ing]" the inflexible criterion of *Schaefer* and holding "[t]o be sure, the longer an aggrieved party waits after receiving notice of the court's ruling, the less likely it will be - in the typical case - that he can persuade the nisi prius court that there is, in the language of the rule, 'no just reason for delay.'")

3

Notwithstanding the foregoing segue into the theoretical, the rule of *Schaefer* should not be applied here because Freeman can satisfy the requisite elements for abrogation including the extreme hardship. To wit, Freeman will be deprived of any chance of presenting her case in its entirety to the jury and the duration of this litigation will be dramatically increased.[1] These considerations alone exceed the hardship found in *Hayes v. Wisconsin & Southern Railroad, LLC.*, 2020 WL 1955226 (2020)(declining to enter final judgment but finding insurers need to force insured to either appeal or accept the Court's decision so it could forego further defense as "the sort of "extreme hardship" that would justify an exception to *Schaefer*'s 30 day rule."), and interests of justice mandate Ocwen not be given an opportunity to advance knowingly false representations to the jury like it did via "Marla's mistake" in *Saccameno v. Ocwen Loan Servicing, LLC.,* 943 F.3d 1071, 180-182 (7th Cir. 2019).

With respect to the existence of any neglect or carelessness associated with Freeman's delay, this lawsuit presents unique issues of complex federal consumer protection statutes and the MTD Order was entered on December 21, 2020 - four days before Christmas. In the ensuing 32 days, and in addition to other personal and professional obligations, counsel for Freeman fully reviewed the 36 page MTD Order and analyzed the basis upon which it was granted, fully briefed the Motion to Reconsider (filed on January 11, 2020) (Filing No. 140), drafted and filed an Adversary Complaint in Freeman's reopened bankruptcy seeking relief per the Court's instructions (AP Filing No. 1), prepared for and participated in a telephonic Discovery Conference on January 22, 2021, during which the Court was notified of Freeman's intent to

---

[1] For example, should an interim appeal be denied, and Freeman is successful in reviving Count V post trial of the surviving claims, a second trial will obviously be required. However, because of the unique and technical nature of Count V, and Ocwen's insistence discovery now proceed tied solely to the contents of the Second Amended Complaint associated with the surviving claims, those proceedings will at a minimum require reopening discovery, conducting a second deposition of Ocwen's 30(b)(6) representative and deposing additional fact witnesses. In short, it will be as if an entirely new lawsuit had been commenced. Moreover, because of the independent harm and the potential for punitive damages stemming from Count V,  denial of an interim appeal will make resolution without a trial nearly impossible.

seek leave to appeal the MTD Order, and fully briefed the Motion for Rule 54(b) Order and Motion to Certify Interlocutory Appeal now at issue. During the same time, as detailed in the Reply to Response In Opposition to Motion to Reopen Bankruptcy Case filed in Freeman's bankruptcy proceedings [BK Filing No. 161], undersigned counsel was also confronted with the death of a relative from Covid-19 and his daughter being severely injured in an accident. In the face of the above, despite exhaustive efforts including cancelling planned time off to work (and working weekends), Freeman's delay simply could not be avoided.

**II**.     **The Dismissed Claims are Factually Distinct Such that Entry of Final Judgment is Appropriate.**

Ocwen next argues that because the Dismissed Claims are intertwined they cannot be sufficiently factually distinct to warrant the entry of final judgment. Specifically, it suggests because all claims "arise out of an allegation that a certain amount of money owed on Plaintiff's mortgage loan was disallowed by the Court in Plaintiff's Chapter 13 Bankruptcy, and subsequent servicing activities or credit reporting violated various laws because the purportedly disallowed amounts were sought…they do not involve different facts at all." (Filing No. 160, at ECF pp. 7-8). While this position, and the gross oversimplification of the conduct to which it is tied, may have minimal footing with respect to Count X, it is groundless as to the other dismissed claims.

Foremost, Ocwen concedes the Dismissed Claims each entail entirely distinct elements, injury, underlying conduct, and measure of damages. Second, with respect to Count V, the claim arises not simply from Ocwen's "subsequent servicing activities or credit reporting" but its failure to investigate and correct inaccurate credit reporting upon receipt of Freeman's disputes from TransUnion, LLC., Equifax Information Solutions, and Experian Information Services, Inc. despite full knowledge of systemic deficiencies with its credit reporting processes and systems. Prosecution of the claim will require discovery and the presentation of evidence on topics

5

including Ocwen's policies and procedures for handling ACDVs, the training, qualifications, and testimony of the individuals tasked with conducting the purported investigations responsive to the ACDVs, and issues of willfulness. Thus, Count V is "separate" from the remaining claims as it "involves different facts" than the surviving claims and if the surviving claims were to be appealed at the end of the case the court would not have to go over the same ground it covered in an interim appeal. *See, e.g.*, *Lottie v. W. Am. Ins. Co.*, 408 F.3d 935, 939 (7th Cir. 2005) ("The test for separate claims under [Rule 54(b)] is whether the claim that is contended to be separate so overlaps the claim or claims that have been retained for trial that if the latter were to give rise to a separate appeal at the end of the case the court would have to go over the same ground that it had covered in the first appeal.").

###  III. The Court's Basis for Dismissing Count V: Violation of the FCRA § 1681s-2(b) ("Count V") With Prejudice Meets the Criteria for an Interlocutory Appeal (the "FCRA Issues").

Ocwen also argues the Dismissed Claims, with particular focus on the FCRA Issue, do not entail "controlling" or "contestable" questions of law and therefore do not satisfy the requisites for an interlocutory appeal. In addition, Ocwen contends Freeman has misconstrued the breadth of the MTD Order and asks the Court to ignore the indisputable contents of the ACDVs attached to the Second Amended Complaint.[2] With respect to the latter, if the Court were to consider the ACDVs, and in the broader of context of this litigation, it will realize one of two scenarios has occurred: Ocwen has vexatiously multiplied these proceedings by abusing the

---

[2] Ocwen also posits Freeman's presumption that if reinstated her FCRA claim would survive summary judgment is dubious. But given the contents of the ACDVs (including irrefutable evidence of a failure to make any changes to disputed reporting on numerous occasions upon receipt from a consumer reporting agency), Ocwen's inability and failure to raise an accuracy defense, and the existence of internal investigations establishing complete knowledge and admit Ocwen's inability to comply with the requirements of the FCRA, this is a virtual certainty. The only contestable element remaining would be whether any of Ocwen's purported investigations were reasonable, a question of fact best left for the jury. *See, e.g.*, *Westra v. Credit Control Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) ("Whether a defendant's investigation is reasonable is a factual question normally reserved for trial.").

very purpose of *Iqbal* and *Twombley* while concealing that which is undeniable, or Ocwen seeks to cement the dismissal of Count V and needlessly delay these proceedings by advancing legal positions only tenable if the undeniable remains ignored. Under either scenario, counsel for Ocwen walks a very fine line between a vigorous defense and sanctionable conduct.

As for its argument Freeman has misconstrued the breadth of the MTD Order, Ocwen is mistaken. First, it would be inappropriate for the MTD Order to be interpreted in a manner exceeding the "triggering event" because Ocwen only sought dismissal on that basis: "Plaintiff has failed to alleged that she disputed her credit information with a consumer reporting agency[] or that any such dispute was transmitted by a consumer reporting agency to Ocwen[.]" *See* (Filing No. 87 at, ECF p. 16). Moreover, the MTD Order plainly reads: "The allegations are devoid of conclusory factual assertions to support the legal elements of a dispute being made to a credit reporting agency, and the credit reporting agency in turn notifying Ocwen of the dispute." (Filing No. 133 at, ECP p. 30).

With respect to Ocwen's contention Freeman has failed to raise a "controlling" question of law,  disposition of the FCRA Issues is "serious" if not integral to the case as a whole. *See, e.g.*, *Katz v. Carte Blance Corp*. 496 F.2d 747, 755 (3d Cir.), *cert. denied*, 419 U.S. 885 (1974) ("[C]ontrolling' means serious to the conduct of the litigation, either practically or legally… And on the practical level, saving of time of the district court and of expense to the litigants [are] deemed to be a rightly relevant factor."); *see also In re Ocwen Fed. Bank FSB*, 2006 U.S. Dist. LEXIS 21715, 2006 WL 1371458 (N.D. Ill. May 16, 2006). As argued previously, an intermediate appeal would save considerable time and expense without necessarily delaying trial. In fact, because this matter is not stayed, will not be stayed, and trial is not scheduled until January 31, 2022, an interim appeal would ensure the conclusion of this matter is at worse

delayed a couple of months. Further, if certification is denied, save Ocwen stipulating to forego seeking to limit the scope of discovery, the contours of trial and discovery are assuredly to be different. This is the reason, the only reason, Ocwen so fervently objects to an interim review. It hopes to limit the scope of discovery and ensure the piecemeal presentation of evidence to the jury; hide the scope and severity of its conduct. Thus, proceeding forward without an interim review of the MTD Order will affect "the scope of evidence in a complex case," *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970), and the "scope of discovery procedure, and the expenditure of time, money and effort" ultimately required. *Atlantic City Electric Co. v. General Electric Co.*, 207 F. Sup. 613, aff'd, 312 F.2d 236 (2d Cir. 1962), cert denied, 373 U.S. 909 (1963).

In regards to Ocwen's contention Freeman has failed to raise a "contestable" question of law with respect to Count V, the mere fact the Seventh Circuit confronted the FCRA Issues and reached a different conclusion than the Court in *Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464, 466 (7th Cir. 2007), even if in a nonbinding opinion, establishes "substantial grounds for difference of opinion." It was entered after *Twombly*, its analysis and holding is unaffected by *Iqbal*, and should not be disregarded in favor of distinguishable cases from lower courts involving pro se litigants and unopposed positions. Moreover, even if arguendo *Lang*, *Purcell v. Bank of America*, 2010 WL 4955542 (2010), or the similar cases from other Circuits, do not constitute a conflict of law or precedent, Ocwen implicitly concedes they entail "a question of first impression," *Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief and Dev*., 291 F.3d 1000 (7th Cir. 2002) (holding that questions of first impression regarding the interpretation of statutes were contestable) and "substantial grounds for difference of opinion."

    **IV.    The Court's Basis for Dismissing Count VI: Violation of the Discharge Injunction ("Count VI") and Count  VII: Violation of the Bankruptcy**

**Court's Orders dated October 26, 2012 and April 8, 2013 ("Count VII") (the "Bankruptcy Claims") With Prejudice Meets the Criteria for an Interlocutory Appeal.**

Freeman has asked this Court to certify for interlocutory appeal the dismissal of her Bankruptcy Claims "***with prejudice.***" Such interlocutory appeal becomes moot if the Court clarifies or modifies the MTD Order to reflect that the Bankruptcy Claims were dismissed "without prejudice." Freeman seeks this relief because absent clarification or modification, Ocwen will further advance an argument[3] her right to seek relief in bankruptcy court is barred by *res judicata*.

a. Freeman stated the question of law she seeks to certify for interlocutory appeal and likewise satisfied the "question of law" element.

Ocwen contends Freeman "fail[ed] to provide any argument or clear articulation on what 'question of law' she believes is properly subject to interlocutory appeal." (Filing No. 160 at, ECF p. 22). This argument is demonstrably flawed.[4] First, Freeman plainly states "the Court's application of a jurisdictional standard in dismissing [the Bankruptcy Claims] . . . with prejudice and without mention of transfer to the Bankruptcy Court is a controlling ***question of law*** within the meaning of 28 U.S.C. § 1292(b) … ." (Filing No. 147, at ECF p. 19) (emphasis added).

---

[3] Ocwen's arguments, both in its Response in Opposition to this instant Motion to Enter Final Judgement or Certify for Interlocutory Appeal (Filing No. 160) and in its Response in Opposition to Plaintiff's Motion to Reconsider (Filing No. 154), clearly evidence Ocwen's intent to raise a res judicata argument regarding this Court's dismissal of the Bankruptcy Claims in an action by Freeman to properly pursue those claims in the Bankruptcy Court. Indeed, Ocwen has already asserted an affirmative defense of res judicata regarding these very claims asserted in Freeman's Adversary Proceeding Complaint. *See Freeman v. PHH Mortgage et al.*, Case No. 21-50006 (S.D. Ind. Bankr.), Def.'s Answer,(AP Filing No. 8,  at ECF p.3) and Affirmative Defenses ("Plaintiff's claims fail to the extent she is barred by the doctrines of estoppel (judicial, equitable, collateral or otherwise) and/or res judicata.").

[4] Despite its misrepresentations of Freeman's articulation of the relevant "question of law" regarding the Bankruptcy Claims, Ocwen clearly understands which question of law Freeman believes is properly subject to interlocutory appeal. In its Response in Opposition to this instant Motion to Enter Final Judgement or Certify for Interlocutory Appeal, Ocwen acknowledges the jurisdictional issue as the relevant question of law. *See, e.g.*, "With respect to the issue of whether the Court had jurisdiction to hear Plaintiff's Bankruptcy claims, this matter is not 'contestable.'" (Filing No. 160, at ECF p. 24) (though Ocwen misstates the question of law Freeman seeks to certify for interlocutory appeal as whether the Court had jurisdiction to hear Freeman's Bankruptcy Claims, as opposed to the Court's misapplication of a jurisdictional standard in dismissing the Bankruptcy Claims with prejudice, as Freeman argues in her Memorandum).

Insofar as Ocwen's argument is premised on Freeman's articulation of these issues in tandem, Courts routinely address the requisite "question of law" and "controlling" elements as one for purposes of analyzing the merits of a motion to certify for interlocutory appeal pursuant to Section 1292(b). *See, e.g.*, *Wine & Canvass Dev. LLC v. Weisser*, Case No. 1:11-cv-01598-TWP-DKL, 2014 WL 5335831, 2014 U.S. Dist. LEXIS 149271, (S.D. Ind. Oct. 20, 2014) (Pratt, J.) (holding that because the 1292(b) factors are "conjunctive, not disjunctive," and because Plaintiff's Motion for Certificate of Appealability pursuant to 1292(b) failed to establish a question of law, Plaintiff's Motion thus "fail[ed] for lack of a pure question of controlling law.") (emphasis added) (citing *Ahrenholz v. Bd. of Trust. of the Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2002));*see also In re Text Messaging Antitrust Litig.*, 630 F.3d  622, 626 (7th Cir. 2010) ("Decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous.").

b. Freeman properly stated that the question of law she seeks to certify for interlocutory appeal is a "controlling" question of law.

Ocwen argues Freeman failed to articulate the "controlling'' element with respect to the Bankruptcy Claims. (Filing No. 160, at ECF p. 23). In doing so, Ocwen misstates Freeman's argument as "suggest[ing] error in the Court's Order dismissing the Bankruptcy claims because it was made 'without mention of transfer to the Bankruptcy Court.' … This is neither a proper question of law nor one that would be controlling." (Filing No. 160, at ECF p. 23) (quoting Freeman's Mem. in Supp. of Pl.'s Mot. to Enter Final J. or Certify Interlocutory Appeal, (Filing No. 147)). This misrepresentation of Freeman's argument by Ocwen is demonstrably flawed. First, Freeman did articulate the controlling question of law: "[T]he Court's application of a [seemingly] jurisdictional standard in dismissing [the Bankruptcy Claims] of Freeman's Second

10

Amended Complaint with prejudice and without mention of transfer to the Bankruptcy Court is a

***controlling question of law*** within the meaning of 28 U.S.C. § 1292(b) … .” (Filing No. 147 at

p. 19) (emphasis added).

> c. Freeman satisfied the "contestable" element.

Ocwen next argues Freeman failed to satisfy the "contestable" element with respect to the

Bankruptcy Claims because "[t]he Seventh Circuit Court of Appeal [sic], this Court, and others

have definitely held that there is no private right of action to bring a claim for violation of the

Discharge Injunction or violations of a Bankruptcy court's orders." (Filing No. 160, at ECF p.

24). Again, Ocwen obfuscates.  The Court's dismissal of Freeman's bankruptcy related claims

entail "substantial grounds for difference of opinion" because district courts in this Circuit have

concluded they may properly adjudicate and enforce orders and rights inherent to the Bankruptcy

Code, including the Discharge Injunction. *See, e.g.*, *Saccameno v. Ocwen Loan Servicing, LLC*,

372 F. Supp. 3d 609 (N.D. Ill. 2019) (Judge Joan Gottschall maintained jurisdiction and control

over Plaintiff's claim for  contempt of the bankruptcy discharge injunction through its

termination by settlement after the jury trial on the non-bankruptcy claims); *Price v. Rochford*,

947 F.2d 829, 832 n.1 (7th Cir. 1991) ("[A]fter a bankruptcy is over, it may well be more

appropriate to bring suit [to enforce provisions of the Bankruptcy Code] in district court,

especially when other claims are attached."); *Martin-Trigona v. Champion Federal Sav. & Loan*

*Assoc.*, 892 F.2d 575, 577 (7th Cir. 1989) (recognizing that a suit to enforce certain rights under

the Bankruptcy Code could be brought in district court before a district judge).

Moreover, in this very District, Judge Sweeney recently denied a motion to dismiss

aimed at a "claim" for contempt of a discharge injunction *styled in the very same fashion* as

Count VI. *See Crum v. SN Servicing*, No 1:19-cv-02045-JRS-TAB, Order on Mot. to Reconsider,

(Crum Filing No. 123). Accordingly, in the face of Ocwen's continued efforts to promote form

over substance, Freeman has established there is conflicting judicial opinion or "substantial

grounds for a difference in opinion" about a district court's ability to enforce and provide relief

arising from the Bankruptcy Code, whether styled as a claim or motion for contempt, in this very

District.

Further, there is also conflicting judicial opinion regarding the propriety of dismissing a

claim "***with prejudice***" for what amounts to a finding of a lack of proper jurisdiction. *See, e.g.*, *In*

*re IFC Credit Corp*.,663 F.3d 315, 320 (7th Cir. 2011) (citing Fed. R. Civ. P. 41(b))

("[D]ismissal for want of jurisdiction, not being an adjudication on the merits, is ***without***

***prejudice***.") (emphasis added); *Textile Prods. v. Mead Corp.*, 134 F.3d 1481, 1486 (Fed. Cir.

1998); *Fishburn v. Brown*, 125 F.3d 979, 981 (6th Cir. 1997) ("[A]bsent subject matter

jurisdiction the court has no authority to rule on the merits of [a] claim[]."); *Crotwell v.*

*Hockman-Lewis Ltd.*, 734 F.2d 767, 769 ("The district court properly concluded that it lacked

subject matter jurisdiction. For some inexplicable reason, the defendants' motion to dismiss was

granted 'with prejudice.' This was error. Since the court lacked subject matter jurisdiction over

the action, it had no power to render a judgment on the merits.").

> d. Freeman satisfied the "expedition" element.

Finally, Ocwen argues an interlocutory appeal will not expedite these proceedings.

(Filing No. 160, at ECF p. 25). However, Freeman covered this ground previously. *See* (Filing

No. 147, at ECF p. 22); *see also* (Filing No. 147, at ECF pp. 3-5). As stated, absent an interim

appeal, Freeman will be forced to wait for final judgment on her surviving claims, and confront

Ocwen's *res judicata* defense in her reopened bankruptcy proceedings, before obtaining clarity on this issue. Thus, an immediate appeal regarding the dismissal with prejudice of the Bankruptcy Claims also would materially advance the ultimate termination of Freeman's *collective* litigation against Ocwen.

## CONCLUSION

For the foregoing reasons, Freeman respectfully requests that the Court enter final judgment pursuant to F.R.C.P. 54(b) with respect to **Count V**: Violation Fair Credit Reporting Act, Section 1681s-2(b); **Count VI**: Violation of the Discharge Injunction, 11 U.S.C. § 524; **Count VII**: Violation of the Bankruptcy Court's Orders dated October 26, 2012 and April 8, 2013 and, **Count X**: Violation of the Indiana Deceptive Consumer Sales Act, I.C. § 24-5-0.5, *et seq*. Alternatively, Freeman respectfully requests the Court amend its Order on Defendants' Motions to Dismiss (Filing No. 133) to certify it for immediate appeal pursuant to 28 U.S.C. § 1292(b). *See* Fed. R. App. Proc. 5(a)(3) (the District Court may amend an order to certify it for appeal).

*Respectfully submitted,*

/s/ *Travis W. Cohron*
Travis W. Cohron, No. 29562-30
Oliva A. Hess, No. 36166-49
CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
tcohron@clarkquinnlaw.com
ohess@clarkquinnlaw.com

/s/ *Nicholas H. Wooten*
Nicholas H. Wooten, No. ASB-1870-o77n
NICK WOOTEN, LLC
5125 Burnt Pine Drive
Conway, AR 72034
Telephone: (833)-937-6389
nick@nickwooten.com

/s/ *Rusty A. Payton*
Rusty A. Payton, IL Reg No. 6201771
Payton Legal Group
20 North Clark Street, Suite 3300
Chicago, IL 60602
Telephone: (773) 682-5210
info@payton.legal

**Counsel for the Plaintiff**

14

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


Carter R. Nichols
Ethan G. Ostroff
John C. Lynch (admitted *Pro Hac Vice*)
**TROUTMAN SANDERS LLP**
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23454
Telephone: (757) 687-7500
carter.nichols@troutman.com
ethan.ostroff@troutman.com
john.lynch@troutman.com
*Counsel for Ocwen Loan Servicing, Inc. and The Bank of New York Mellon*

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30