UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMONA FREEMAN, | ) |
| | ) Cause No. |
| Plaintiff, | ) 1:18-CV-03844-TWP-DLP |
| | ) Evansville, Indiana |
| vs. | ) **January 15,** 2021 |
| | ) 2:37 p.m. |
| OCWEN LOAN SERVICING, INC., | ) |
| ET AL,, | ) |
| | ) |
| Defendants. | ) |

**Before the Honorable**
**DORIS L. PRYOR,**

OFFICIAL REPORTER'S TRANSCRIPT OF
DISCOVERY CONFERENCE – BY TELEPHONE

**For Plaintiff:**           Nicholas H. Wooten, Esq.
                            Nick Wooten, LLC
                            5125 Burnt Pine Drive
                            Conway, AR  72034

                            Travis W. Cohron, Esq.
                            Clark Quinn Moses Scott & Grahn
                            320 N. Meridian St., Suite 1100
                            Indianapolis, IN  46204

                            Rusty A. Payton, Esq.
                            Payton Legal Group LLC
                            20 N. Clark St., Ste. 3300
                            Chicago, IL  60601

**For Defendants:**          Ethan G. Ostroff, Esq.
                            Carter R. Nichols, Esq.
                            Troutman Sanders LLP
                            222 Central Park Ave., Ste 2000
                            Virginia Beach, VA  23462

Court Reporter:             Margaret A. Techert
                            United States District Court
                            101 NW Martin Luther King Blvd.
                            Evansville, Indiana  47708
        PROCEEDINGS TAKEN BY AUDIO RECORDING
   TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

```
 1                        (In open court.)
 2            THE COURT:  We're here in cause number 1:18-CV-3844,
 3   Freeman versus Ocwen Loan Servicing, Inc., et al.  Today's
 4   date is January 15, 2021.  The time is approximately 2:37 p.m.
 5   The record is electronic.  For purposes of appearances, who do
 6   we have on behalf of Demona Freeman?
 7            MR. WOOTEN:  Your Honor, this is Nick Wooten for
 8   Ms. Freeman.
 9            THE COURT:  Mr. Wooten, please spell your last name
10   for the record.
11            MR. WOOTEN:  W-O-O-T-E-N.
12            THE COURT:  And I understand that you have counsel
13   Travis Cohron is there as well and Rusty Payton appearing as
14   well.
15            On behalf of the defendants?
16            MR. OSTROFF:  Good afternoon, Your Honor.  This is
17   Ethan Ostroff of Troutman Pepper.  I'm also joined by my
18   colleague Carter Nichols.
19            THE COURT:  Thank you, Mr. Ostroff.  For purposes of
20   our discovery conference, the parties did submit to the
21   Court -- and I appreciate -- an outline of the discovery
22   dispute as we see it.  Kind of moving forward on the call,
23   this afternoon, as I understand procedurally where we are, the
24   Court had put in place January 8th I had vacated the
25   settlement conference and put a stay in discovery in place of
```

1   this case -- 2018 case which was lifted in October of 2020.

2          Since that time, there has been a ruling on the

3   defendant's motion to dismiss.  Recently, January 11, 2021,

4   there is now a pending motion for reconsideration by

5   Ms. Freeman, docket 140.

6          And regarding the posture of the case, Mr. Wooten,

7   understanding those claims that were dismissed for purposes of

8   our discovery conference, I think I need to ask the first

9   question is, as far as moving forward on the discovery

10  disputes, does it make sense for us to put that stay in place

11  to give Judge Pratt an opportunity to rule on the motion for

12  reconsideration, or would you still like to move forward with

13  your discovery conference this afternoon?

14          MR. WOOTEN:  Your Honor, we had discussed that among

15  ourselves and with our client and come to the conclusion that

16  the matters that are in controversy with respect to discovery

17  right now is probably best suited not to reimpose the stay,

18  although we do think, given the time constraints that are

19  left, that it may make sense to extend the CMP deadlines

20  slightly, and that would allow us to not be pressed for time

21  to take depositions and we can focus on primarily resolving

22  the remaining documentary discovery issues in preparing to

23  undertake the depositions, you know, pending the ruling from

24  Judge Pratt on the reconsideration issue.

25          From our perspective, and I've shared this with

1    Ethan, you know, we feel like the Court's ruling on the motion

2    to dismiss is, in a way, turn one lawsuit into three because,

3    obviously, now we have the pending adversary proceeding in the

4    bankruptcy court on the contempt that the bankruptcy

5    discharged injunction; and then, of course, we now also have

6    to address post-complaint misconduct of an ongoing nature

7    arising from the discharge injunction violations as well that

8    are more -- more directly breaches of the servicing standards

9    that apply to Ocwen's conduct in the case.

10           Basically where we are is we believe getting the RCR

11   issue resolved, the monitor report issue resolved, and then

12   getting servicing notes unredacted will advance the ball to a

13   point that all we'll need to do, once those things are in

14   place, is set depositions; and then we can hold off on that as

15   long as we can to allow a resolution of the Court's ruling on

16   the motion for reconsideration.

17           THE COURT:  Looking at the order on the motion to

18   dismiss, I understand that -- as I understand it, Judge Pratt

19   has dismissed with prejudice Ms. Freeman's RESPA claim to the

20   extent it's based on Section 2609, but the claim is able to

21   proceed in all other aspects as well.  Judge Pratt dismissed

22   with prejudice the plaintiff's FDCPA claim to the extent that

23   it's based on conduct that occurred before, I believe,

24   December 6th of 2017, in the bankruptcy case in discharge.

25           For purposes of our first issue that was raised

1  involving the risk conversion reports and monitor reports,

2  now, the portion of the case has been dismissed.  What will be

3  the relevancy of the risk conversion report and which claim

4  would that go to establish it was the monitor reports,

5  Mr. Wooten?

6           MR. WOOTEN:  Your Honor, the RCR's, as the case is

7  presently postured, would be relevant to pattern of practice

8  issues with respect to Ocwen's inability to comply with their

9  obligations under a RESPA, which are admitted in those

10 documents, as well as their obligations to properly manage

11 their foreclosure processes and not proceed with foreclosure

12 improperly, which are topics also covered in the risk

13 convergence reports where Ocwen admitted extensive problems

14 with their ability to both monitor foreclosures correctly and

15 make accurate decisions about whether foreclosure should be

16 pursued or not; and that also, obviously, implicates claims

17 coming out of foreclosure filings following cases that were

18 discharged in bankruptcy.

19          As you're well aware, Your Honor, we had went

20 through these documents line-by-line in the Todd case with

21 Ocwen's previous counsel and every one of those issues are

22 there in detail; and as we discussed with you prior on this --

23 these particular documents, yeah, they basically create

24 efficiencies in discovery because we don't have to go and get

25 other documents from Ocwen and fight over emails and internal

1  reports of other types and internal communications among

2  executives because it affects everything that we need to

3  establish those issues are present in those RCR's.

4        And since these issues were heavily litigated with

5  Your Honor in the Todd case, Your Honor's, I know, also

6  familiar with the documents and the arguments, and we should

7  know that briefing ultimately resulted in a ruling to produce

8  those documents without redaction.

9        A secondary concern of mine with this, Your Honor --

10 and it was present here -- is there were assertions made in

11 the motion to dismiss about the technical attacks on our

12 claims as far as the artfulness of our pleadings; but the

13 underlying conduct which was being asserted was conduct that

14 Ocwen knows and has admitted continues and has continued for

15 more than a decade.

16       And quite frankly, it's troubling to me that Ocwen

17 makes a technical attack on a complaint when they understand

18 that the underlying factual premises of a complaint are true;

19 and I'm not sure that that's even proper and we may very well

20 end up testing whether that's proper or not.  But it certainly

21 is unfair that a party's able to deny something in litigation

22 because they have documents that have been protected

23 artificially by confidentiality, and then they use the hidden

24 nature of that information to go and to seek valid claims.

25       So from our perspective, we think the documents

1  ought to be brought into this case unredacted and we also

2  think they're not deserving of any confidentiality protections

3  because of this type of conduct.

4         MR. COHRON:  Judge, I would also add briefly that

5  the documents are also relevant and --

6         THE COURT:  Please identify yourself for the record.

7         MR. OSTROFF:  My apologies, Judge.  Attorney Travis

8  Cohron for the plaintiff.

9         THE COURT:  Go right ahead, Mr. Cohron.

10         MR. COHRON:  The documents are also relevant to

11  confronting Ocwen's affirmative defense that the conduct at

12  issue, third parties are parties that are not under their

13  control are responsible for the conduct or caused the conduct

14  at issue.  The documents are also relevant to the FDCPA claim

15  to the extent that Ocwen had knowledge of the improper

16  attempts to collect a debt, knowledge that the debt was not,

17  in fact, owed or at least knowledge of the fact that there

18  was -- credibly likely that they were mistaken on that issue.

19         Finally, the documents are also relevant to the

20  issue of the surviving breach of contract claim because they

21  detail information that Ocwen, often servicing this conduct

22  and/or internal issues that implicate whether or not other

23  holders of the notes knew or should have known about in

24  continuing to retain years Ocwen serviced the mortgage.

25         THE COURT:  I don't follow the argument, Mr. Cohron.

1  Can you explain that a little bit more on the breach of

2  contract claim of how (inaudible) established the breach?

3          MR. COHRON:  Specifically, Judge, it would be

4  whether or not the information that's contained in the RCR was

5  known by Deutsche Bank or other parties.  There is some

6  indication in those documents that suggest that, you know,

7  Deutsche Bank and other holders of the -- of the notes had

8  raised issues and/or there were issues by and between the two

9  parties.  If you'll recall, Judge, Ocwen acted as servicer but

10 is not the owner of the mortgage.  Deutsche Bank, in essence,

11 hired or retained, you know, servicers such as Ocwen to

12 conduct the servicing function.

13         THE COURT:  Okay.  Thank you.  On the issue of the

14 RCR reports and monitor reports, I'll hear from you,

15 Mr. Ostroff.

16         MR. OSTROFF:  Sure, Your Honor.  I guess I would

17 first note that a large amount of what the two counsel for the

18 plaintiffs just mentioned as their rationale or justification

19 for believing these documents continue to be discoverable in

20 this case, this is the first time we've heard that.  That's

21 not something that we've talked with them about previously.

22 Not something that's part of their correspondence or

23 (inaudible) for a telephone conversation we had.  I'm

24 struggling as to why we are hearing about these proposed

25 justifications now.

1          I will say that, you know, I have never seen these

2   StoneTurn reports.  They're reports that they sought from

3   StoneTurn pursuant to the subpoena.  I am not and my firm was

4   not involved in other litigation, the Todd case, and can't

5   comment on whether or not there were or were not redactions in

6   the productions or not.  I don't know.

7          I do know that this case is not the Todd case and

8   that many of the claims that were dismissed from this case

9   were claims that were brought in the Todd case and from our

10  perspective, were the justification for the Court's

11  determination that those documents were properly discoverable

12  in the Todd case.

13         Quite frankly, I cannot understand how documents --

14  from my understanding, you know, the RCR's are from a time

15  frame of 2012 -- or excuse me.  They're around the 2014 time

16  frame, I believe.  I don't know how that would possibly be

17  relevant to an FDCPA claim that's been limited in this case,

18  for example, that nothing before the date Your Honor mentioned

19  before is permissible.

20         I also don't know how it will be possibly, you know,

21  relevant to a breach of contract claim.  Those RCR's are not

22  in any way specific to the Demona Freeman loan.  So I'm not

23  sure how they would go to whether or not there's been a breach

24  of Demona Freeman's contract or some type of conduct that's

25  violative of the FDCPA with respect to Demona Freeman.

1          And similarly, I'm not sure how those RCR's or the

2    StoneTurn -- or the risk -- excuse me, the compliance monitor

3    reports would be relevant to a pattern and practice claim

4    that's still remaining under RESPA in this case.  Those

5    documents, to my understanding, you know, have nothing to do

6    with what happened on Demona Freeman's loan.  Those documents

7    are from well before the claims at issue in this case.  And so

8    whether or not there was a pattern and practice with respect

9    to her loan and violative conduct under RESPA with respect to

10   her loan has no relevancy to these two groups of documents.

11          In addition, Judge, there's -- there's a pattern and

12   practice cap for damages of $2,000.  So I can't understand how

13   these documents or conducting discovery about them would have

14   anything to do or would have any relevancy to that pattern and

15   practice issue.

16          I will say with respect to the statements about

17   what -- the statements on the record today about what is

18   contained in those documents, you know, my understanding is

19   those documents were produced in that Todd case and they were

20   produced subject to a protective order.  I have significant

21   concerns about counsel for the plaintiffs -- excuse me, for

22   the plaintiff on the record today talking about the content of

23   those documents they obtained in a separate case pursuant to a

24   protective order and understanding that those documents were

25   produced in that case solely for that other case.

1          THE COURT:  Are you here, Mr. Ostroff, concerned in

2     regard to moving forward with producing those RCR's, monitor

3     reports in this case at this juncture?  With the (inaudible)

4     motion to reconsider, I have to say that I'm lost with what

5     Judge Pratt's December 21st order and at this point I will

6     give authorization, Mr. Wooten, for you to move forward with a

7     motion to compel on the issue regarding RCR's.

8          MR. WOOTEN:  Your Honor, the issue with motions --

9     or the monitoring class reports --

10          THE COURT:  Excuse me.  Hang on one second,

11     Mr. Wooten.

12          MR. WOOTEN:  I'm sorry.

13          THE COURT:  No, it's fine.  Okay.  Go ahead.  I'm

14     ready now.  I know we had --

15          MR. WOOTEN:  So the issue of monitor compliance

16     reports, Your Honor, in our view is slightly different.

17     Really what we were seeking confirmation of, as you recall,

18     those documents were produced pursuant to a subpoena to

19     StoneTurn in the Todd case, which again was objected to and

20     opposed by Ocwen and fully briefed in that matter.  Then they

21     were produced to us by StoneTurn Group; and obviously, you

22     know, they were provided first to the Court in that case

23     under -- directly into the Court's hands rather than on the

24     record.

25          However, we don't see those documents as protected

1  in the same manner under the prior protective order as, say,

2  the RCR's because the manner in which they were acquired from

3  a third-party and the fact that we never received any

4  contemporaneous objection or request that it be provided

5  confidentiality by Ocwen pursuant to the protective order in

6  that case.

7         So we actually were seeking confirmation of our

8  position there that the monitor reports were not confidential

9  and just to confirm our position.  And again, that's out of an

10  abundance of caution and fairness to the other side; but our

11  position had been that because there was no contemporaneous

12  request by Ocwen for specific protection of those documents

13  and because they did come from a third-party, that they are

14  not protected and that we do have, in effect, the ability to

15  use those documents as well.

16         So we were seeking clarity about that point since

17  Your Honor had familiarity with everything that transpired

18  with respect to our acquisition of those documents.

19         THE COURT:  The Court is not going to issue a ruling

20  regarding the monitor reports that were received in the Todd

21  case.  If there is a desire to use those in Free -- in your

22  Freeman case, if that's what I'm hearing.  Is that my

23  understanding, Mr. Wooten?  You're wanting --

24         MR. WOOTEN:  Yes, ma'am.

25         THE COURT:  -- to use the information you received

1  from StoneTurn Group in this formalization because StoneTurn

2  Group is not -- has not been pulled into this litigation to be

3  able to use that information, that discovery, I think

4  StoneTurn Group would be at a disadvantage not being able to

5  be heard on that point, if there's a desire to use those

6  discovery received from a prior case.

7          MR. WOOTEN:  All right.

8          MR. COHRON:  Thank you, Judge.

9          THE COURT:  Yes, sir.  Mr. Wooten, what's our next

10  issue?

11          MR. WOOTEN:  Our next issue of importance involves

12  the servicing notes produced by Ocwen which were heavily

13  redacted by counsel for Ocwen, and we had substantive

14  objections as to the lack of compliance with the requirements

15  for the contents, the privilege log, but we had an overall

16  objection to the idea that it was proper to redact any entries

17  in the notes log in any manner.

18          First of all, as we've stated before and we stated

19  in this case, the notes log is Ocwen's own internal record of

20  all the actions that it's taken on the case and Ocwen relies

21  upon the notes log as business records, which they testified

22  to numerous times and forms the basis of supporting any

23  position they take with respect to a case in any court, be it

24  bankruptcy, foreclosure, or consumer litigation.

25          And as the Court is familiar from other discovery

1   discussions about Ocwen, there are literally thousands of

2   employees spread all over the world who have access to every

3   entry in the notes log pretty much without any restriction and

4   can go in and view them, in some cases alter them, but in all

5   cases see them in full.  They're not in any way restricted to

6   decision makers with respect to any legal issue in any case

7   and they're not in any way prevented from wider dissemination,

8   including third parties who access Ocwen's servicing platform

9   who have nothing but a contractual relationship with Ocwen to

10  perform other services.

11          So we find it hard to square the idea that this is a

12  business record subject to an exception to the hearsay rule

13  but also documents that are confidential and protected by

14  attorney/client privilege and work product doctrine.  We see

15  the entries that allegedly have some reference to ancillary

16  matters, such as a foreclosure or RESPA note, is not as

17  specific legal advice but merely as a record of communications

18  between Ocwen and outside counsel, sometimes on nothing more

19  than a comment like:  Today we filed a foreclosure.  So we

20  fail to see how anyone could actually justify in good faith

21  redacting entries in a consumer notes log and servicing

22  record.

23          THE COURT:  Was a privilege log provided?

24          MR. WOOTEN:  There was a privilege log provided,

25  Your Honor, that we have challenged as being noncompliant with

1    requirements in the Seventh Circuit.

2            THE COURT:  All right.  Thank you very much,

3    Mr. Wooten.  I'll hear from you, Mr. Ostroff.

4            MR. OSTROFF:  Thank you, Your Honor.  Quite frankly,

5    I have asked for but not obtained from plaintiff's counsel any

6    explanation as to why they believe our privilege log is

7    deficient.  I do not understand the argument that they are

8    making.  The notion that a business record cannot contain

9    privileged information, I don't -- I don't understand it.

10           Clearly there are records, we believe, that are

11   privileged -- attorney/client privilege, attorney work

12   product, documents prepared in anticipation of litigation or

13   trial and are properly subject to a claim for privilege.  If

14   they want to explain to us what -- which ones of our privilege

15   log entries they believe are not sufficient, we are happy to

16   work with them on that and to supplement them.

17           But as I understand it, their claim overarching is

18   not about the substance of a privilege log.  It is a general

19   challenge to say because of the type of document this is,

20   servicing notes, account notes, there can never be any basis

21   to claim that business record contains any privileged

22   information, and we simply do not agree with that.

23           THE COURT:  Mr. Wooten, is that the argument?

24           MR. WOOTEN:  Your Honor, yes.  If you look at the

25   standard for imposing attorney work product protection or

1    attorney/client privilege, very first one is that the attorney

2    must make some effort to keep the matter privileged or

3    confidential.  When you disburse to it a thousand or ten

4    thousand people who have nothing to do with the litigation,

5    then obviously you voluntarily waived any claim of privileges

6    or confidentiality.  So you know, when you start talking about

7    whether an attorney can put their deepest, darkest thoughts

8    into a notes log, first of all, that's absurd.  That never

9    happened.

10           Second of all, it's disbursed to everyone in the

11   company without restriction and certainly not limited to

12   anyone who actually makes decisions about legal strategy or

13   tactics by Ocwen.  So they can't fail the first -- I mean,

14   they can't pass the first test to invoke privilege, which is

15   maintenance of a process reasonably intended to keep that

16   matter confidential and thereby limited to the decision makers

17   who are in charge of the litigation for the corporate

18   defendant.

19           THE COURT:  Have you all had an opportunity,

20   Mr. Wooten, to meet and confer on this issue regarding --

21           MR. WOOTEN:  Well, Your Honor-

22           THE COURT:  -- the privilege log and the contents of

23   the log and what has been redacted?  I'm sorry.  Did I cut you

24   off, Mr. Wooten?  I'm sorry.

25           MR. WOOTEN:  I apologize, Your Honor.  I jumped in

1  too quickly.  I got a little frustrated and I apologize to

2  everyone for that.

3         Your Honor, we've had as much communication about

4  the lack of communication as any case I've been involved in in

5  22 years of doing this.  We've reached out numerous times

6  where we've gone days, weeks, months without any response.

7  Written extensively about the need to get together more

8  frequently and resolve things among ourselves and not have to

9  need the involvement of the Court.

10        And in much like the situation that was present when

11 I first entered the Todd case, there are a lot of things here

12 that normally professional litigators resolved without ever

13 needing the involvement of the Court; but unfortunately, we

14 were not able to have any substantive conversation with our

15 colleagues on the other side until about Tuesday of this week.

16 And you know, part of that, at least in my end, was an

17 insistence that I felt like we were -- be lacking in our

18 obligations to the Court if we did not have that meeting

19 before today.

20        So we did try to talk on Tuesday.  But to the extent

21 that there's an argument that we have not repeatedly stated

22 that the privilege log fell far short of the requirements of

23 specificity called for by the Seventh Circuit, I'm sure

24 Mr. Cohron can provide the Court with probably somewhere

25 between two and five letters that mention the privilege log

1  and talk about the concerns, and that's been brought up in the

2  very limited conversation we have had.

3          And then this more general argument that I just

4  expressed to the Court that, you know, you can't, as an

5  attorney, claim confidentiality on something that you put on

6  blast to thousands of people.  We have had these

7  conversations.  In fact, we pointed to and referenced in our

8  writing an opinion from Judge Castillo out of the Northern

9  District of Illinois on this very topic where these arguments

10 were more or less dismantled for basically the same reasons

11 that I stated.  These are just the inclusion of attorney

12 information or statements in a consumer mortgage notes log for

13 Ocwen is incidental to their servicing of the mortgage loan.

14 It is not the purpose of the entry.  And it's clear, when you

15 look at the basis for privilege, the fundamental --

16          THE COURT:  Or standard.

17          MR. WOOTEN:  -- basis is confidentiality.

18          THE COURT:  Correct?

19          MR. WOOTEN:  So that was a major portion of

20 discussion.  We have -- we have had, in our limited talks and

21 our correspondence, these issues have been broached a number

22 of times.

23          THE COURT:  Mr. Ostroff?

24          MR. OSTROFF:  Your Honor, so -- you know, let me

25 start by saying I am sorry Mr. Wooten decided that he thinks

1   that we're acting unprofessionally.  I disagree.  Your Honor,

2   I've never had an opposing counsel accuse me to a court of

3   acting professionally -- unprofessionally.  So I am troubled

4   by that.

5           I don't think it's fair, in particular, because we

6   had a fully briefed motion to stay.  They were pressing us to

7   do things in discovery.  We said we didn't think we should do

8   those things until the motion to dismiss is decided.  The

9   motion to dismiss was decided just before Christmas.  We sent

10  them a letter -- letters on these issues after that motion was

11  decided.  We scheduled a meet-and-confer telephone

12  conversation.  We had a meet-and-confer telephone

13  conversation.  On that conversation they told us they now were

14  going to seek a stay until the motion on remand was decided.

15          Now we're on the phone call today and they tell us

16  they're not going to seek a stay.  They want to move forward.

17  Okay.  We asked them on that meet-and-confer telephone

18  conversation, we've asked them previously:  Tell us what

19  entries on the privilege log you think are not sufficient and

20  we will supplement them.  I'm not aware of a single entry

21  they've pointed to to say:  We think this doesn't satisfy your

22  obligations for a privilege log.

23          Now, as I've mentioned before, I really think the

24  issue of the sufficiency of the privilege log is a secondary

25  issue now because they are arguing that under no circumstances

1  could any information contained in this document be subject to

2  a claim of privilege.  We disagree with that.  We had a

3  meet-and-confer on that.  That is the position they took

4  during our meet-and-confer telephone conversation.  We

5  explained to them that we respectfully disagree.

6        THE COURT:  Before I have them move to redaction,

7  Mr. Wooten, I need to give you an opportunity to brief the

8  issue regarding the privilege itself and to determine whether

9  or not, before we delve into the privilege log, that the

10 privilege does apply to the documents asserted by the

11 sentence.  My preference would be to give the parties an

12 opportunity, before we have more briefing, to have a

13 meet-and-confer that is substantive and in keeping with our

14 local rule that requires that meet-and-confer.

15        It sounds, what I've heard over the last 45 minutes,

16 that we haven't had those substantive talks that we tend to

17 over -- the Court pushes for before there is court

18 intervention to slow down the amount of paper and briefing

19 needed on these issues that potentially can be resolved by a

20 conversation.

21        MR. WOOTEN:  Your Honor, thank you for that and I'll

22 certainly have to engage in that; and if I may, before we go

23 any further, let me be clear --

24        THE COURT:  Sure.

25        MR. WOOTEN:  -- about something.  I have not ever

1   accused Mr. Ostroff or of his colleagues of being

2   unprofessional and I hope that what I said previously on the

3   record did not sound that way.  It was rooted more in my

4   frustration that these issues mostly normally get worked out

5   timely.  I think Mr. Ethan and his colleagues are very good

6   lawyers and very professional.  So if that was misconstrued,

7   then I apologize.  I would never do that and I didn't mean to

8   in that instance.

9         My concern is simply that for whatever reason, and

10  it's been a tough time for -- Mr. Cohron and I both had COVID.

11  We've had family members with COVID.  I've had a child who's

12  had a mental break because of COVID, a wife with a cancer

13  scare.  You know, my colleagues have had issues with holidays

14  and everything else.  So for whatever reason, the last few

15  months we have not been able to mesh and get this case focused

16  and any of these issues crystalized the way they should be at

17  the depth that I would normally want to have them done at so

18  that we've done our duty to the Court to see what we can

19  resolve together.

20        And you know, my frustration has been that we have

21  not had the level of communication and the frequency of

22  communication that I thought we needed but I don't blame that

23  on anyone being unprofessional.  I do blame it on the fact for

24  whatever reason, we have just not been able to mesh and get

25  the time that we needed; and you know, we just weren't able to

1  do that before today at the level that I would have hoped we

2  would have been able to.

3         So please accept my apology, Mr. Nichols (sic), if I

4  said that you were being unprofessional.  It certainly wasn't

5  my intent and I hope my explanation basically makes clear to

6  everyone what my intent was.

7         THE COURT:  It does for the Court and I appreciate,

8  Mr. Wooten, that additional context as well in understanding

9  your position as we move forward.

10        Before we go into that last issue regarding our

11 next steps with a formal and granting that permission to file

12 the motion to compel on the issues concerning the redactions,

13 I think it would be important for us to have that substantive

14 meet-and-confer before we move into that next step.

15        MR. COHRON:  We will be glad to do that, Your Honor.

16 Can we put a date on that today, Your Honor?  A deadline at

17 least.

18        THE COURT:  That's what I'm asking if you all can

19 look at your calendars and tell me when you all are available

20 to do that.  I will not be a part of that call but I am going

21 to have another discovery conference after you've had your

22 meet-and-confer.

23        MR. WOOTEN:  Ethan, does your side have any

24 availability next week?

25        MR. OSTROFF:  I do.  I'm sorry.  I'm looking at my

1   calendar.  I do on Wednesday afternoon.

2          MR. WOOTEN:  What time do you have available?

3          MR. OSTROFF:  Anytime in the afternoon is fine with

4   me.

5          MR. WOOTEN:  All right.  You're on Eastern time.  So

6   how about 2:00 o'clock Eastern time on Wednesday?

7          MR. OSTROFF:  That works.

8          MR. WOOTEN:  We just set an hour for that and see

9   what we can get done.

10          THE COURT:  I have availability on the 22nd at -- I

11   could do something at 8:30 and continue our discovery

12   conference until 8:30 on January 22nd and see what issues we

13   have.

14          MR. WOOTEN:  Plaintiffs -- at least I'm available,

15   Your Honor.  I believe my colleagues probably are as well.

16          MR. OSTROFF:  Your Honor, I have a settlement

17   conference that morning.

18          THE COURT:  All right.  And how long is it scheduled

19   to run for?

20          MR. OSTROFF:  I have it on my calendar for two

21   hours, Your Honor, but I don't know that there's a -- I don't

22   believe there's an end time on the conference.

23          THE COURT:  How do you look Monday, January 25th at

24   9:30?

25          MR. OSTROFF:  I have a mediation that day, Your

1   Honor, at 10:00 o'clock.

2          THE COURT:  All right.  Can you start at 8:30 with

3   us?

4          MR. OSTROFF:  On the 25th?  Yes, Your Honor.

5          THE COURT:  Yes.  Mr. Cohron?  Mr. Wooten?

6          MR. WOOTEN:  Your Honor, that works for us.  We

7   previously had it held for the deposition in this case.

8   30(b)(6) depositions.  So we had that day blocked.  We've

9   extended those days.

10         THE COURT:  You had the 22nd blocked or the 25th?

11  I'm sorry.

12         MR. WOOTEN:  No, we're available.  We had held the

13  25th for 30(b)(6) but we had already agreed to move that day

14  with Ethan and his colleagues because of these issues.

15         THE COURT:  Okay.  So can we extend it out, the

16  discovery conference, until the 25th?

17         MR. WOOTEN:  Yes, ma'am.  We can be available at

18  8:30 on the 25th.

19         THE COURT:  Will you update the Court following your

20  conversation no later than noon on January 22nd, update the

21  Court as to what issues remain?

22         MR. WOOTEN:  Yes, ma'am.  I will do my best to do it

23  sooner than that but we certainly can do that.

24         THE COURT:  All right.  That will be the Court's

25  position.  I'm going to continue this conference until the

1  25th at 8:30.

2          MR. COHRON:  Judge, attorney Travis Cohron here.

3  Another item, I don't know if the Court has time to address,

4  but we did note that we still seek a copy of a payment

5  reconciliation history of last change date.

6          THE COURT:  Mr. Ostroff, in producing that document?

7          MR. OSTROFF:  Your Honor, the issue is that we -- we

8  are not aware of a document with a last change date on it

9  involving Demona Freeman.  We have talked to our client about

10  this numerous times and have been unable to locate a document

11  like this.  We have --

12          Plaintiff's counsel has informed us that they got a

13  document like this in the Todd case and assuming it was not

14  designated as confidential, they -- they have told us they

15  would provide it to us so that we could look at that and then

16  go to our client and say:  This document existed for this

17  other borrower with this information contained on it.  Can you

18  get this for Demona Freeman?  Does it exist?  I still haven't

19  gotten it from them.

20          Obviously, as I've told them, if we had a document

21  with this column of information on it, we would certainly

22  produce it.  I don't -- I don't have it and I have been unable

23  to get a document like this from our client.

24          MR. COHRON:  Judge, may I respond?

25          THE COURT:  Yes.  Go ahead.

1          MR. COHRON:  I categorically disagree with

2     Mr. Ostroff's assessment and the comment that we have not

3     provided that.  With our submission we provided a copy of the

4     email and the document we referenced, similar document was

5     attached.  The payment reconciliation history with last change

6     date was not a consumer borrower specific document.  It's just

7     simply the print-out of a -- complete print-out of the payment

8     reconciliation history Ocwen maintains.

9          This is not an issue that is isolated to

10     Ms. Freeman.  The document exists.  We got it in the Todd

11     case.  We dealt with this in other cases.  We don't know what

12     else we can do on our end to bridge the gap, other than to

13     proceed with filing a motion to compel.

14          MR. OSTROFF:  Your Honor, this is Ethan Ostroff.  We

15     just had a telephone conversation about this on Tuesday and we

16     told them they sent us a document previously with the last

17     change date on it; but to our knowledge, that was not a

18     document they obtained in the Todd case.  We don't know what

19     case they got that from, but our understanding is that the

20     document they sent us is not a document they got in the Todd

21     case.  They told us they got a document in the Todd case.

22     They told us they got a payment reconciliation history with a

23     last change date in the Todd case and they would send it to

24     us.  They haven't.

25          I'm not aware -- I'm not aware of what -- of what

1  exactly was produced in the Todd case, okay.  I'm not -- I was

2  not counsel for Ocwen in the Todd case.  If they have a

3  payment reconciliation history with a last change date

4  produced in the Todd case and it wasn't provided -- it wasn't

5  designated confidential, which is my assumption because they

6  said they would send it to us, I've asked them to send it to

7  us.  I don't have this document.

8            I've gone to the client and asked them for it.  They

9  told us they don't have it.  I don't -- my understanding is is

10 this is a specific document they're asking for that is

11 borrower specific.  In other words, on each particular loan

12 there is a document called a *Payment Reconciliation History*

13 which contains a last change date.  I don't understand how

14 they could take the position now that it's not borrower

15 specific.

16           THE COURT:  All right.  Let me hear from Mr. Wooten.

17           MR. WOOTEN:  Your Honor, this is Mr. Wooten.  If I

18 can respond to that.  I think we're missing a piece of context

19 that may help the Court recall this sort of ongoing dispute.

20 If the Court will recall in the Todd case, what we presented

21 to the Court was the exhibit from my trial in the *Saccameno*

22 case where we received at a 30(b)(6) deposition and later was

23 introduced into evidence, so it's in the public record, the

24 complete payment history from Ocwen wherein they included an

25 additional column among their print-out onto a spreadsheet.

That column was titled *Last Change Date* and Ocwen testified
that that column showed the last time Ocwen had altered that
line entry.  And the point of it was that it demonstrated that
Ocwen could go in and change a payment history at any time,
even many years after the transaction occurred.

We fought over this issue in Todd.  Eventually a
document was produced in Todd that resulted in a motion for
sanctions that was under consideration by the Court when the
Todd case settled related to a document that Ocwen had
basically come up with that they presented as being the
equivalent of what they gave us before.

I think maybe where we're missing each other on this
is that they're going to need to go back to Ocwen or their
vendor of the source and get this information from the data
that was involved in real servicing.  And they have yet to
take a position as to whether or not they can get this data
and we sort of missed that piece of this in this case at this
point, at least what I'm hearing, and -- so I mean, that's the
issue, is they're going to have to go and get that data from
that source and print it off into a spreadsheet the way it was
done in *Saccameno* to give us that data.

THE COURT:  I do recall us having this conversation
in the Todd case and that information being provided.  I did
want to give you an opportunity, Mr. Ostroff, to respond.

MR. OSTROFF:  Yes.  Judge, so, you know, what was

1  represented to us during the meet-and-confer call is different

2  than what Mr. Wooten just explained.  They told us in the

3  meet-and-confer call that they got this same document that he

4  got in the *Saccameno* case.  And again, I wasn't involved in

5  *Saccameno*.  I don't know what -- I have no way of knowing if

6  the representations about what happened in the *Saccameno* case

7  are true or not.  I'm not saying that anything that has been

8  said is not correct.  I just don't know.

9         They gave us that document in 2019, I believe, and

10  we have -- we have tried six ways to Sunday to get a document

11  like that for Demona Freeman.  We are not aware of a document

12  like that existing for Demona Freeman.

13         They told us that in the Todd case this same

14  document with -- that was produced in *Saccameno* was produced.

15  We asked them to send it to us so we could see it.  They said

16  they would.  They never did.  Now what I'm hearing is:  Well,

17  actually what was produced in the Todd case was not the same

18  thing that they're looking for.  It's something different, and

19  they sought sanctions because of what was produced in the Todd

20  case.  I don't know --

21         MR. COHRON:  Your Honor, if I may.

22         MR. OSTROFF:  I don't know what to say about that

23  other than we, Troutman Pepper, are not withholding a document

24  like this.  As I've told them numerous times, we have been

25  trying to get this.  We have not been able to get it.  We are

1    not aware of it existing.  We will continue to do that.  If we

2    are able to obtain it, we will produce it subject to any

3    claims of privilege, depending on what the other contents of

4    the document are because I don't -- I don't know what this

5    document will look like.

6         The version they gave me from *Saccameno* is heavily

7    redacted.  So I don't know what those redactions are from that

8    document and if they contained privileged information or

9    anything about it.  I'm really not sure what they want me to

10   do here, other than they certainly believe that this document

11   exists for every borrower for whom Ocwen services a loan.  I

12   do not have that understanding.

13        THE COURT:  And has -- have you had an opportunity,

14   as Mr. Wooten outlined, as to the process to glean and confirm

15   that you don't have access to this information?

16        MR. OSTROFF:  Your Honor, it's not that I don't have

17   access to the information and the information exists.  To our

18   understanding, the information, a document called a *Payment*

19   *Reconciliation History* with a last change date for Demona

20   Freeman to our knowledge does not exist.  Obviously I am

21   continuing to go back to our client, as I've told them, and

22   say:  Hey, look.  They have told us that they believe this

23   exists.  We need to figure this out.  Please check again.

24        But to my understanding, it didn't exist --

25        THE COURT:  So it makes sense for us to wait?

1          MR. OSTROFF:  -- for Todd either.

2          MR. COHRON:  Judge, this is Travis Cohron -- I'm

3  sorry.

4          THE COURT:  Go ahead.

5          MR. COHRON:  If I may respond.  We would ask the

6  Court's permission just to proceed with briefing this issue.

7  I certainly disagree with some of Mr. Ostroff's comments about

8  prior representations and take issue with the claimed

9  ignorance about what this document is or what is at issue

10 without prior mention is clearly aware of the motion for

11 sanction and the issues that arose in Todd, yet simultaneously

12 claim they don't understand what the information is despite

13 that issue being briefed in that motion for sanctions.

14          We don't seek a document.  What we seek is

15 information, a print-out, a document -- a print-out of the

16 document that includes all the data on that particular issue.

17 Ocwen has this information.  This is not -- you know, they

18 have access to it, should have access to it.  If they claim

19 they don't have access to it, then we've got a spoliation

20 issue.

21          THE COURT:  Mr. Cohron, I'm not going to permit us

22 to move forward just yet with a motion to compel.  I do want

23 to figure a chance to have a substantive meet-and-confer and

24 if necessary, we won't make that decision on the 25th.

25          MR. COHRON:  Very good, Judge.

1          THE COURT:  That will be the finding of the Court

2    this afternoon and I'll speak to you all in about a week.

3          MR. WOOTEN:  Thank you, Your Honor.

4          MR. OSTROFF:  Thank you, Your Honor.

5          THE COURT:  Thank you.  Bye-bye.

6          MR. COHRON:  Thank you, Judge.

7    ********************************************************

8                  CERTIFICATE OF COURT REPORTER

9

10     I, Margaret A. Techert, hereby certify that the

11   foregoing is a true and correct transcript from

12   digital recorded proceedings in the above-entitled

13   matter.

14

15

16

17   /S/ Margaret A. Techert                 **January 19, 2021**
     MARGARET A. TECHERT
18   Official Court Reporter
     Southern District of Indiana
19   Evansville Division

20

21

22

23

24

25