**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Indianapolis Division**

| | |
|---|---|
| DEMONA FREEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.     1:18-cv-3844-TWP-DLP |
| | ) |
| OCWEN LOAN SERVICING, LLC, and | ) |
| THE BANK OF NEW YORK MELLON f/k/a | ) |
| The Bank of New York, as successor in interest to | ) |
| JPMorgan Chase Bank, N.A., as Trustee for | ) |
| C-BASS Mortgage Loan Asset-Backed Certificates | ) |
| Series, 2005-RPI | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF THIRD MOTION TO COMPEL**
**AND FOR ORDER IMPOSING SANCTIONS**

Plaintiff Demona Freeman ("Freeman"), by and through undersigned counsel and in accordance with L.R. 37-1 and Fed. R. Civ. Pro. 37, respectfully submits this Memorandum in Support of Third Motion to Compel. For the reasons detailed below, Freeman respectfully moves the Court to enter an Order compelling discovery responses and imposing sanctions against Defendant Ocwen Loan Servicing, LLC ("Ocwen").

## I.        INTRODUCTION

Ocwen is a financial-services company engaged principally in servicing residential, consumer mortgages.  To manage the considerable amount of information required to administer its loans, Ocwen used a software-based servicing system called REALServicing. Unfortunately, REALServicing "lacked necessary...functionality," and thus required constant workarounds to effectively operate.

1

In March of 2015, following the completion of a multi-state examination of alleged deficiencies in Ocwen's servicing platform and loss mitigation infrastructure, including "... (b) inaccurate affidavits…, (c) missing documentation, (d) wrongful foreclosure, [and] (e) failure to properly maintain books and records ....", Goldin Associates, LLC ("Goldin") was appointed as the Operations Monitor to "report directly to" the New York State Department of Financial Services ("NYDFS"). The duties and purpose of this appointment are set out in the Consent Order entered between Ocwen and the NYDFS on December 22, 2014. Specifically:

Operations Monitor:

32.     The Operations Monitor will review and assess the adequacy and effectiveness of Ocwen's operations. Such an assessment will include but is not limited to the following areas:

a.  Information technology systems and personnel, including with respect to record keeping and borrow communications;

d.  Controls in identifying and correcting errors made by Ocwen's personnel or systems;

e.  Risk management functions;

f.  Contracts or proposed contracts with third parties, including but not limited to related parties;

34.     The purview of the Operations Monitor will extend to all matters directly or indirectly affecting New York borrowers, ***including matters that affect borrowers in all states*** or in multiple states that include New York. (emphasis added)

35.     The Operations Monitor will identify needed corrective measures to address identified weaknesses and deficiencies in Ocwen's operations, make recommendations to Ocwen and to the Superintendent, and oversee implementation of reforms. The Operations Monitor will also develop benchmarks against which to assess Ocwen's progress in complying with recommended corrective measures.

37.     The Board will consult with the Operations Monitor to determine which decisions should be committed to the specific oversight of the Board's independent directors, or a committee comprised of such independent directors, including, but not limited to:

g. Determinations as to whether Ocwen is adequately addressing the issues identified by the Operations Monitor and the Compliance Monitor; and

h. Determinations as to whether Ocwen is treating borrowers fairly and is communicating with borrowers appropriately.

39. Ocwen may acquire MSRs upon (a) meeting benchmarks developed by the Operations Monitor concerning the adequacy of Ocwen's onboarding process for newly acquired MSRs and its ability to adequately service both those newly acquired MSRs and its existing loan portfolio, and

2

(b) the Department's approval, not to be unreasonably withheld. The Operations Monitor will act with reasonable expedition to develop such benchmarks in consultation with Ocwen. These benchmarks will address, at a minimum, the following:

> a. The development and implementation of a satisfactory compliance plan;

> b. The development and implementation of a plan to resolve record-keeping and borrower communication issues;

> c. The reasonableness of fees and expenses charged to borrowers and mortgage investors, including those charged directly or indirectly by related parties;

> d. The development and performance of a risk assessment to identify potential risks and deficiencies in the onboarding process; and

> e. The development of a written onboarding plan that addresses potential risks and deficiencies, including testing and quality control review periodically during the onboarding process.

42. Within one hundred twenty (120) days of the date of the formal engagement of the Operations Monitor, the Operations Monitor will submit to the Parties a preliminary written report of findings, including, to the extent the Operations Monitor has had the opportunity to develop them, any proposed corrective measures and associated benchmarks (the "Operations Report"). The Operations Monitor will submit written monthly action progress reports ("Progress Reports") to the Parties. On a quarterly basis, starting ninety (90) days from the date of the first Operations Report, the Operations Monitor will issue an Operations Report covering the three-month period immediately preceding.

A true and accurate copy of the Consent Order is attached hereto as **Exhibit A**.

As emphasized above, Goldin's purview as Operations Monitor included "matters that affect borrowers in all states." This is because Ocwen does not, and has never, by and large treated loans differently based upon the location of the property securing them. The application of payments, assessment of fees, borrower dispute investigative protocols, and credit reporting all occur on a national level using the same procedures, personnel, and system(s) (RealServicing).

**Compliance with Local Rule 37-1(a)**

On April 10, 2019, Freeman served Requests for the Production of Documents upon Ocwen. On June 24, 2019, Ocwen provided responses to the Requests for the Production of Documents. Thereafter, Freeman directed correspondence to Ocwen about deficiencies contained within those responses and the parties "met and conferred" about the same. As a result, on August 12, 2019, Ocwen served First Supplemental Responses to the Requests for the Production of

Documents, a copy of which is attached hereto as **Exhibit B**. Thereafter, Freeman again directed correspondence to Ocwen about deficiencies contained within and the parties "met and conferred" about the same.

On May 4, 2021, Freeman served a Fourth Request for the Production of Documents upon Ocwen, a copy of which is attached hereto as **Exhibit C**. Within, Freeman sought: (1) All summaries and/or reports prepared by Goldin Associates, LLC. pertaining to Ocwen Loan Servicing, LLC. (or any related entity of Ocwen Loan Servicing, LLC including without limitation AltiSource) from January 1, 2015 to February 18, 2019; and, (3) Please produce each Risk Convergence Tracker created between January 1, 2014 and January 1, 2020. On February 4, 2022, Ocwen responded to the Fourth Request for the Production of Documents, a copy of which is attached hereto as **Exhibit D**. Thereafter, Freeman directed correspondence to Ocwen about deficiencies contained within and the parties "met and conferred" about the same.

On February 22, 2022, Freeman submitted a Position Statement to the Court addressing the foregoing. On February 24, 2022, the Court commenced a Discovery Conference about the same and, in response to Ocwen's "confusion" about *exactly* which written discovery requests were at issue, directed Freeman to provide a detailed summary. On February 27, 2022, Freeman provided the Court and Ocwen with three Summar[ies] of Discovery Issues broken down by the type of request, a copy of the relevant summary is attached hereto as **Exhibit E**. On March 7, 2022, the Court commenced an additional Discovery Conference. On March 8, 2022, the Court granted leave to Freeman to proceed with filing of a motion to compel in relation to Ocwen's discovery responses set out in red within her previously provided summaries. [Doc. 230].

## II.        LEGAL STANDARD

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a)(1), (a)(3)(A)-(B), (a)(4); *Cunningham v. Smithkline Beecham*, 255 F.R.D 474, 478 (N.D. Ind. 2009); *Todd v. Ocwen Loan Servicing, Inc.*, No. 2:19-cv-00085-JMS-DLP, 2020 WL 1328640, at *2 (S.D. Ind. Jan. 30, 2020) ("The party opposing a motion to compel has the burden to show the discovery requests are improper and to explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules."). "That burden cannot be met by 'a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Hunt v. Hubler Chevrolet, Inc.*, No. 1:18-cv-01505-RLY-MJD, 2019 WL 1043163, 2019 U.S. Dist. LEXIS 34137 at *6 (S.D. Ind. Mar. 4, 2019) (J. Dinsmore) (quoting *Burkybile v. Mitsubishi Motors, Corp.*, No. 04 C 4932, 2006 U.S. Dist. LEXIS 57892, 2006 WL 2325506 at *6 (N.D. Ill. Aug. 2, 2006)).

## III.   ARGUMENT

Ocwen has responded to Pl.'s Fourth Req. for the Prod. of Docs. No. 5, Pl.'s Fourth Req. for the Prod. of Docs. No. 3, and Pl.'s First Req. for the Prod. of Docs. No. 26 with a menagerie of boilerplate and inapplicable objections.[1] *See Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("[G]eneral objections made without elaboration … are not 'objections' at all—and will not be considered"). Amongst these objections, Ocwen also claims the documents sought are protected by a laundry list of privileges, yet corresponding entries are noticeably absent from its Second Amended Privilege Log. *See* **Exhibit F**. Freeman contends these

---

[1] For example, Ocwen objects to each on the basis they seek "trade secrets or other confidential or proprietary commercial or business information…" despite any legitimate concern being rendered moot by the Stipulated Protective Order. *See* [Doc. 65].

objections and claims of privilege are unjustifiable and reflective of Ocwen's exhaustive efforts to

cabin discovery to a preferred narrative. For these reasons, and those detailed below, Freeman asks

the Court to enter an Order compelling Ocwen to produce unequivocal written responses and all

documents responsive to Pl.'s Fourth Req. for the Prod. of Docs. No. 5, Pl.'s Fourth Req. for the

Prod. of Docs. No. 3, and Pl.'s First Req. for the Prod. of Docs. No. 26.

### A.  Ocwen's Object. and Responses to Pl.'s Fourth Req. for the Prod. of Docs. No. 5

Copies of all summaries and/or reports prepared by Goldin Associates, LLC. pertaining to Ocwen Loan Servicing, LLC. (or any related entity of Ocwen Loan Servicing, LLC including without limitation AltiSource) from January 1, 2015 to February 18, 2019. This request does not seek any unofficial correspondence between Ocwen and Goldin, specific borrower information, or specific loan identifiers used in creating said summaries and/or reports.

OBJECTION: Defendant objects to the phrase "summaries and/or reports prepared by Goldin Associates, LLC" as vague and ambiguous because it is undefined. To that end, Defendant objects to this Request as overbroad and unduly burdensome because it does not specify a particularized category of documents or the subject matter thereof to be produced. Defendant also objects to this Request as overbroad and unduly burdensome because it requests "all summaries and/or reports prepared by Goldin Associates, LLC. pertaining to Ocwen Loan Servicing, LLC. (or any related entity of Ocwen Loan Servicing, LLC including without limitation AltiSource) from January 1, 2015 to February 18, 2019," which explicitly encompasses information that would be outside the scope of, and time period relevant to, Plaintiff's remaining claims in this case, including the applicable statute of limitations that govern Plaintiff's remaining claims. In particular, the Court has specifically limited Plaintiff's FDCPA claim to conduct occurring on or after December 6, 2017, and her RESPA claim concerns purported QWRs sent no earlier than October 2018. Additionally, there is no limitation on the subject matter of the purported "summaries and/or reports" such that the Request is relevant to any of the claims and defenses remaining in this case, all of which concern conduct related to the servicing of her loan specifically and individually. Notably, this Request specifically states that it "does not seek any unofficial correspondence between Ocwen and Goldin, specific borrower information, or specific loan identifiers used in creating said summaries and/or reports." Thus, Plaintiff explicitly concedes that this Request is in no way related to her loan or the servicing thereof. Therefore the Request is irrelevant and outside the scope of permissible discovery. Defendant further objects because this Request is disproportional to the needs of the case, considering the amount in controversy, the parties' resources, the lack of importance of the discovery in resolving the liability issue, and because the burden or expense of the proposed discovery outweighs its likely benefit, in particular because the Request for "all summaries and/or reports prepared by Goldin Associates, LLC. pertaining to Ocwen Loan Servicing, LLC. (or any related entity of Ocwen Loan Servicing, LLC including without limitation AltiSource) from January 1, 2015 to February 18, 2019" has no apparent or claimed relevance to Plaintiff's remaining claims in this case, which only concern alleged conduct regarding Plaintiff's loan. Moreover, none of Plaintiff's remaining claims require or are proven by showing evidence unrelated to Plaintiff's specific loan and the servicing thereof.. Defendant also objects to the extent that this Request seeks to elicit trade secrets or other confidential or proprietary commercial or business information, including but not limited to confidential information regarding its business practices. Defendant objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, mental impressions of counsel, common-interest privilege, banking privilege, self-critical analysis privilege, and/or information generated in anticipation of litigation

and trial, including but not limited to notes/memoranda prepared by counsel and/or correspondence between Defendant and its counsel.

RESPONSE: Pursuant to the foregoing objections, no documents will be produced at this time.

## 1.    The Goldin Reports are Discoverable.

Preliminarily, Ocwen's response to Pl.'s Fourth Req. for the Prod. of Docs. No. 5 continues its pattern of improperly conflating relevancy in relation to discovery with relevancy in relation to evidence admissible at trial. *Aldering Castor Hewitt LLP v. Fletcher*,  No.:16-cv-02435-RLY-MJD, 2018 U.S. Dist. LEXIS 110421 at \*3 (S.D. Ind. Jan. 26, 2018) (In the context of discovery, "relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'") (quoting *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). This starkly contrasts with the liberal standard set forth in Fed. R. Civ. P. 26(b)(1).[2] In other words, while a "[p]laintiff's allegations are important to the scope of discovery[,] they do not necessarily define the boundaries that separate what is appropriate from what is too far afield for discovery purposes." *In re Peregrine Fin. Grp. Consumer Litig.*, Case No. 12 C 5546, 2015 WL 1344466, 2015 U.S. Dist. LEXIS 34829 at \*9 (N.D. Ill. Mar. 20, 2015). As detailed below, the Goldin Reports are discoverable as they are directly relevant to claims and defenses at issue but also because they "reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *See Oppenheimer Fund, Inc.,* 437 U.S. at 351.

---

[2] In fact, the Comments to FRCP 26 explain in no uncertain terms that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note to 2000 Amendment. The Comments to FRCP 26 go on to provide a number of examples of such types of information, including: "other incidents of the same type, or involving the same product"; "information about organizational arrangements or filing systems"; and "information that could be used to impeach a likely witness." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note to 2000 Amendment.

i.    *The Goldin Reports are relevant to Freeman's RESPA claims.*

The Goldin Reports are discoverable because they are relevant to Freeman's RESPA claims, her allegations that Ocwen failed to conduct reasonable investigations in response to her notices of error and has engaged in a "pattern and practice" of servicing misconduct. *See Renfroe v. Nationstar Mortg., LLC.*, 822 F.3d 1241 (11th Cir. 2016); *O'Gara v. Equifax Information Services, LLC.*, No. 1:16-cv-01237-TWP, MPB, 2018 WL 513535, 2018 U.S. Dist. LEXIS 10361, at *24 (S.D. Ind. Jan. 23, 2018) (Plaintiff argued he was entitled to know what Equifax knew about mixed files and when it knew it—to wit, that if Equifax had never encountered a mixed file before, because the standard of care to correct such an error would be much different than if Equifax had ample knowledge of the type of error but failed to take remedial measures); *see also Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.,* 845 F.3d 852, 858, 2017 WL 104466 (7th Cir. 2017) (finding absence of evidence to support "pattern and practice": "Two examples of similar behavior—in different states, separated by a handful of years, and with no evidence of coordination— isn't enough to support recovery of statutory damages."); *Diedrich v. Ocwen Loan Servicing, LLC*, Case No. 17-CV-1104, 2020 WL 3208532, 2020 U.S. Dist. LEXIS 104327 at *26 (E.D. Wis. June 15, 2020) ("Some courts have said a 'pattern or practice' amounts to a 'standard or routine way of operating.'").  In another context, a "pattern and practice" has been defined as a "standard operating procedure - the regular rather than the unusual practice." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

ii.    *The Goldin Reports are relevant to Freeman's FDCPA Claims.*

The Goldin Reports are also discoverable because they are relevant to Freeman's claims for violation of the Fair Debt Collections Practices Act ("FDCPA"), the assessment of statutory damages under §1692k,[3] and to confront Ocwen's "bona fide error" defense.

For example, a debt collector violates § 1692e (2) and §1692(e)(10) by making "false statements or misrepresentations" that would materially mislead or confuse an unsophisticated consumer. *Koehn v. Delta Outsource Grp.*, Inc., 939 F.3d 863, 864 (7th Cir. 2019). Clearly, if Ocwen sought to collect an alleged debt from Freeman despite full knowledge it was (per the Goldin Reports) a byproduct of REALServicing's widespread deficiencies, the documents would be not just relevant to, but probative of, violative conduct.

With respect to Ocwen's "bona fide error" defense, it claims: "Plaintiff's claims should be dismissed to the extent that any alleged violations of the FDCPA by Ocwen were the result of bona fide error, were unintentional, and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Here again, if Ocwen had knowledge of an ongoing failure to comply with the FDCPA, or of its propensity to commit the servicing errors complained of by Freeman that would invariably result in it violating the FDCPA, and those failures continued on with correction (precisely the information Freeman alleges is contained in the Goldin Reports), the documents would be entirely relevant to, if not probative of, an absence of reasonable procedures and intentional conduct.

       iii.    *The Goldin Reports are relevant to confronting Ocwen's affirmative defenses.*

---

[3] In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors: (1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. 15 U.S.C.A. § 1692k.

In addition, the Goldin Reports are discoverable because they are relevant to confronting two of Ocwen's affirmative defenses: "4. Plaintiff cannot recover from Ocwen to the extent that any damages that Plaintiff may have or will suffer as alleged in the Amended Complaint, which Ocwen continues to deny, have been and will be proximately caused, in whole or in part, by the negligent, willful, or tortious acts or omissions of persons or entities over whom Ocwen had no control, and for whom Ocwen is not responsible, which bars or diminishes any recovery by Plaintiff against Ocwen"; and "8. At all times relevant, Ocwen acted reasonably and in good faith and without any malice or intent to injure Plaintiff or to violate applicable federal and/or state law."

It goes without saying if Ocwen knew of its propensity to commit violations of the same type as alleged by Freeman yet did nothing, then it could not have been acting "in good faith and without malice or intent" and the damages suffered by Freeman could not have been caused by "persons or entities over whom Ocwen had no control." *See, e.g., Wultz v. Bank of China Ltd.*, 2013 WL 1453258 (S.D.N.Y. April 9, 2013) (noting that "the opinions, analysis, and deliberations communicated by the OCC to BOC are themselves relevant to the issue of scienter.).

### 2. Freeman's Request for the Goldin Reports Is Proportional.

Ocwen also objects to Pl.'s Fourth Req. for the Prod. of Docs. No. 5, to producing the Goldin Reports, on the basis the request is disproportionate to the needs of the case; that the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery all outweigh its likely benefit. As demonstrated below, this is an entirely self-serving representation, and a proportionality analysis overwhelmingly favors production of the Goldin Reports.

      i.     *The amount in controversy and importance of the issues at stake favor production of the Goldin Reports.*

Previously, Ocwen has argued that because Freeman's pattern and practice claim under RESPA is subject to a "$2,000 statutory cap on damages" the time and expense associated with "gathering, analyzing, redacting, and producing" similar documents would be unwarranted. It will no doubt do so once more in relation to the Goldin Reports. But this position continues to be unavailing because the issues at stake in this litigation, allegations of systematic mortgage servicing abuse and wrongful foreclosure, the harm resulting therefrom, could hardly be of greater importance. In addition, each of Freeman's claims provide for an award of compensatory damages. As evidenced by Freeman's demand, and the $582,000 in compensatory damages awarded in *Saccameno v. Ocwen Loan Servicing, LLC,* 372 F. Supp. 3d 609 (N.D. Ill. 2019) - a case involving nearly identical conduct by Ocwen, the amount in controversy is in the hundreds of thousands of dollars notwithstanding Freeman's ability to recover statutory damages.

      ii.     *No burden or expense exists to justify Ocwen's refusal to produce the Goldin Reports.*

Directly and in furtherance of its proportionality objection, Ocwen also objects to producing the Goldin Reports on the basis the burden associated with producing them is unduly. However, as has been the case each time it has raised this objection previously, Ocwen does not provide any detail or make a specific showing in support. *See, e.g.*, *Perry v. City of Gary*, *Ind.*, No. 2:08-CV-280-JVB-PRC, 2009 WL 2253157, at *4 (N.D. Ind. July 27, 2009) (when a party objects to the production of documents as unduly burdensome, "it *must* adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how the disclosure of the requested documents and information would be particularly burdensome."). Even if it did, the

Golden Reports are a set of electronically stored documents able to be produced at a moment's notice.

        iii.    *The parties' resources and relative access to the Goldin Reports favor production.*

As for the parties' resources and relative access to the Goldin Reports, Ocwen alone has access to them and is a national corporation with revenue just shy of a billion dollars per annum. Freeman is an individual of modest means as demonstrated by the allegations contained in the Second Amended Complaint. The parties' resources could not be more disparate.

**3. Freeman's Request for the Goldin Reports Is Not Overly Broad.**

Ocwen also objects to Pl.'s Fourth Req. for the Prod. of Docs. No. 5, to producing the Goldin Reports, on the basis the request is overly broad. However, this objection obfuscates the nature of the Goldin Reports, a set of documents that were created during a critical time period to this case. As Ocwen knows, there is simply no way for Freeman to craft a narrower request without forfeiting her ability to fully assess the Golden Reports and in context. Further, if this objection were anything more than boilerplate fodder, Ocwen would have produced documents that it in good faith believed were responsive to an appropriately tailored request instead of producing nothing.

**4. The Goldin Reports are not protected by any Privilege or the Work-Product Doctrine.**

In addition, Ocwen objects to Pl.'s Fourth Req. for the Prod. of Docs. No. 5 under the premise the Goldin Reports are protected by the self-critical analysis privilege, banking privilege, attorney-client privilege, common-interest privilege, and the work product doctrine. But, as demonstrated below, each of these proclaimed privileges are inapplicable to the Goldin Reports and, even if they were, would be waived.

      i.      *Ocwen's failure to identify the Goldin Reports on its privilege logs constitutes a waiver of any alleged privilege.*

As touched on above, Ocwen's Second Supplemental Privilege Log does not contain any entry in relation to Pl.'s Fourth Req. for the Prod. of Docs. No. 5 or the Goldin Reports. This alone undermines any claim of privilege and, to the extent it was otherwise found applicable, should be deemed waived. *See Kartman v. State Farm Mut. Auto Ins. Co., 247 F.R.D. 561, 565* (S.D. Ind. 2007) (citing the party opposing discovery's failure to provide a privilege log as a basis "undermin[ing] the application of the work product doctrine."); *see also Fid. Nat. Title Ins. Co. v. Captiva Lake Invs., LLC,* No. 4:10-CV-1890 CEJ, 2012 WL 3562207, at *3 (E.D. Mo. Aug. 17, 2012) ("A party waives the attorney-client privilege and work-product protection when it fails to give notice in its privilege log that a document is being withheld based on a privilege or protection as required.").

      ii.     *The Goldin Reports are not protected by the self-critical analysis privilege.*

As stated, Ocwen objects to Pl.'s Fourth Req. for the Prod. of Docs. No. 5 on the basis the Goldin Reports are protected from disclosure by the self-critical analysis privilege – a privilege which the Seventh Circuit has never recognized, district courts within this Circuit have explicitly disavowed, and this Court recently declined to adopt on two different occasions including once during these very proceedings. *See, e.g.*, *Lund v. City of Rockford*, No. 17 CV 50035, 2017 WL 5891186, 2017 U.S. Dist. LEXIS 196202 (N.D. Ill. Nov. 29, 2017) ("This Court does more than just question the viability of the privilege; instead, it pronounces the self-critical analysis privilege dead . . . ."); *Todd v. Ocwen Loan Servicing*, No. 2:19-cv-00085-JMS-DLP, 2020 WL 1328640, 2020 U.S. Dist. LEXIS 52212, at *19 (S.D. Ind. Jan. 30, 2020) (Pryor, J.) ("Because the Seventh

Circuit has explicitly declined to adopt the self-critical analysis privilege, the Undersigned concludes the same."); [D.E. 227 at 12-13].

Nonetheless, should the Court be inclined to revisit the idea of adopting the self-critical analysis privilege, Freeman respectfully suggests it should ultimately decline to do so once again. First, as discussed in *Lund*, reason establishes multiple bases for not recognizing the privilege, including the holding in *University of Pennsylvania v. Equal Employment Opportunity Comm'n*, 493 U.S. 182, 110 S. Ct. 577, 107 L.Ed.2d 571 (1990), in which the Supreme Court unanimously refused to recognize the peer-review privilege - the rationale for which is identical to that of the self-critical analysis privilege.[4] *Lund*, 2017 U.S. Dist. LEXIS 196202 at *13 ("Accordingly, if the rationale fails for one, then it necessarily fails for the other."). Second, in light of no federal appellate court in this country having recognized the self-critical analysis privilege, experience likewise weighs in favor of reaffirming this Court's declination to adopt the privilege.

iii.     *The Goldin Reports are not protected by the bank examination privilege.*

Ocwen also objects to Pl.'s Fourth Req. for the Prod. of Docs. No. 5, to producing the Goldin Reports, on the basis they are protected by the "banking privilege." However, the bank examination privilege belongs solely to the … banking regulatory entities and may not be asserted by third parties on behalf of the banking agencies." *Merchants Bank v. Vescio,* 205 B.R. 37, 42 (D.Vt.1997). Accordingly, Ocwen lacks standing to assert the bank examination privilege and for this reason alone, its objection should be overruled. *See United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2015 WL 3942900, at *3 (E.D. Tex. June 26, 2015) (holding Ocwen lacked standing to assert the bank examination privilege); *see also United States of*

---

[4] Additionally, neither prong of the Seventh Circuit's balancing test used to determine whether to recognize a new privilege weighs in favor of recognition of the self-critical analysis in the context here. *See Lund*, 2017 U.S. Dist. LEXIS 196202 at *14-16 ("In balancing the search for the truth on the one side and the desire to protect this relationship on the other side, the Court finds that the former outweighs the latter.").

*America ex rel., Michael J. Fisher, & Michael Fisher Individually, & Brian Bullock, & Brian Bullock, Individually v. Ocwen Loan Servicing, LLC & Ocwen Financial Corporation*, No. 4:12-CV-543, 2016 WL 3172774, at *3 (E.D. Tex. June 7, 2016) (agreeing that Ocwen lacked standing to assert the bank examination privilege).

Moreover, even if Ocwen had standing to assert the bank examination privilege, and had provided a rule compliant privilege log, good cause exists to override it. *See, e.g.*, *Gradeless v. American Mut. Share Ins. Corp.*, No. 1:10-cv-00086-TWP-DML, 2011 WL 221895, at *6 (S.D. Ind. Jan. 19, 2011) ("[T]he bank examination privilege is not absolute, and a party may be able to override the privilege for showing good cause for doing so.").

      iv.    *The Goldin Reports are not protected by attorney-client privilege.*

Ocwen also objects to Pl.'s Fourth Req. for the Prod. of Docs. No. 5 on the basis the Goldin Reports are protected by the attorney-client privilege. However, this is impossible because there was no attorney-client relationship between Ocwen and Goldin Associates, LLC nor could the Goldin Reports ever have been "communications made in confidence." *Integra Bank Corp. v. Fid. & Deposit Co. of Maryland*, No. 3:11-CV-00019-RLY, 2014 WL 116292, at *4 (S.D. Ind. Jan. 10, 2014) ("Essential elements of the attorney-client privilege include the existence of an attorney-client relationship and a communication by the client made in confidence to his or her attorney for the purpose of obtaining legal advice.") (citing *Sandra T.E. v. South Berwyn Sch. Dist. 100,* 600 F.3d 612, 618 (7th Cir. 2010)). As set forth in the Consent Order dated December 22, 2014, Goldin Associates, LLC was selected to serve as Operations Monitor by, and reported directly to, the New York Department of Financial Services – *not* Ocwen. *See* **Exhibit A, para. 31**.

      v.    *The Goldin Reports are not protected by the common interest privilege.*

Ocwen also objects to Pl.'s Fourth Req. for the Prod. of Docs. No. 5 on the basis the Goldin Reports are protected by the common-interest privilege. However, the Goldin Reports cannot be protected by the common interest privilege because, for the reasons set out above, they are not protected by the attorney client privilege. *See Integra Bank Corp. v. Fid. & Deposit Co. of Maryland*, No. 3:11-CV-00019-RLY, 2014 WL 116292, at *4–5 (S.D. Ind. Jan. 10, 2014) ("Because the common interest doctrine is dependent upon the existence of the attorney-client privilege, the court must first determine whether the attorney-client privilege exists in this instance.").

Moreover, the common-interest privilege, an exception to the principle that a client and his attorney cannot share their otherwise privileged communications with a third party without destroying it, "can only apply to communications involving an appropriate 'common interest' and only where protecting the communications from disclosure is necessary…." *Ducker v. Amin*, No. 1:12-CV-0156-SEB, 2013 WL 6887970, at *4 (S.D. Ind. Dec. 31, 2013). Here, Ocwen and Goldin did not share a justified "common interest" in the Goldin Reports and monitorship. In fact, as the court-appointed Operations Monitor pursuant to the Consent Order between Ocwen and the NYDFS, Ocwen and Goldin's legal interests were diametrically opposed.

vi.    *The Goldin Reports are not protected by the work product doctrine.*

Ocwen also objects to Pl.'s Fourth Req. for the Prod. of Docs. No. 5 on the basis the Goldin Reports are protected from disclosure by the work product doctrine. But to the contrary, the Goldin Reports were not prepared by or for Ocwen as required by Fed. Rule Civ. P. 26(b)(3). They were prepared by Goldin Associates, LLC in its capacity as Operations Monitor – not Ocwen. *See* **Exhibit A, para. 31.** (providing that the Operations Monitor will report directly to the NYDFS). Thus, Ocwen cannot invoke the work product doctrine to shield production of the Goldin Reports

in this action. *See* Fed. R. Civ. P. 26(b)(3); *see also Davis v. Carmel Clay Schools*, 282 F.R.D. 201, 205 (S.D. Ind. 2012); *Keaton v. Hannum*, No. 1:12-CV-00641-SEB, 2013 WL 1818993, at *7 (S.D. Ind. Apr. 29, 2013).

Additionally, the Goldin Reports were not prepared in anticipation of litigation, as discussed in *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 659-60 (S.D. Ind. 1991):

> The Rule requires that the subject documents be produced "in anticipation of litigation." However, because litigation can be anticipated, in a general sense, at the time almost any incident occurs—thus closing off much pertinent discovery—courts have interpreted the Rule to require a more substantial and specific threat of litigation before a party's anticipation will be considered a reasonable and justifiable motivating force. There are many formulations of this level of threat, but the cases generally concur that a party must show more than a "remote prospect," an "inchoate possibility," or "a likely chance" of litigation. Rather, a party must demonstrate that "at the very least some articulable claim, likely to lead to litigation" had arisen, that the probability of litigation is "substantial and imminent", "objective facts establishing an identifiable resolve to litigate", or "an identifiable specific claim or impending litigation when the materials were prepared". The fact that litigation did in fact occur, that a party has consulted or retained an attorney, that a party has undertaken an investigation, or engaged in negotiations over the claim, is insufficient to establish a reasonable anticipation of litigation under the Rule.

(internal citations omitted). Here, the Goldin Reports were prepared ***after*** the Consent Order was entered and not in relation to some articulable claim. The fact that there was some inchoate possibility of future litigation concerning the contents of the Goldin Reports, or the fact that such litigation has ensued after the preparation of the Goldin Reports, is simply insufficient to establish a reasonable anticipation of litigation under the rule.

Accordingly, Freeman respectfully requests the Court enter an Order compelling Ocwen to produce an unequivocal written response and all documents responsive to Pl.'s Fourth Req. for the Prod. of Docs. No. 5.

**B.  Ocwen's Object.'s and Resp. to Pl.'s Fourth Req. for the Prod. of Docs. No. 3:**

Please produce each Risk Convergence Tracker created between January 1, 2014 and January 1, 2020.

OBJECTION: Defendant objects to the Request because it is vague and ambiguous because the term "Risk Convergence Tracker" is undefined. To that end, Defendant objects to this Request as overbroad and unduly burdensome because it does not specify a particularized category of documents to be produced. Defendant also objects to this Request as overbroad and unduly burdensome because it requests "each Risk Convergence Tracker created between January 1, 2014 and January 1, 2020," which explicitly encompasses information that would be outside the scope of, and time period relevant to, Plaintiff's remaining claims in this case, including the applicable statute of limitations that govern Plaintiff's remaining claims. In particular, the Court has specifically limited Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim to conduct occurring on or after December 6, 2017, and her Real Estate Settlement Procedures Act ("RESPA") claim concerns purported Qualified Written Requests ("QWRs") sent no earlier than October 2018. Additionally, there is no limitation on the subject matter of the purported "Risk Convergence Tracker" such that the Request is relevant to any of the claims and defenses remaining in this case, all of which concern conduct related to the servicing of her loan specifically and individually. Defendant further objects because this Request is disproportional to the needs of the case, considering the amount in controversy, the parties' resources, the lack of importance of the discovery in resolving the liability issue, and because the burden or expense of the proposed discovery outweighs its likely benefit, in particular because the purported "Risk Convergence Trackers" have no apparent or claimed relevance to Plaintiff's remaining claims in this case, which only concern alleged conduct regarding Plaintiff's loan. Moreover, none of Plaintiff's remaining claims require or are proven by showing evidence unrelated to Plaintiff's specific loan and the servicing thereof. Defendant also objects to the extent that this Request seeks to elicit trade secrets or other confidential or proprietary commercial or business information, including but not limited to confidential information regarding its business practices. Defendant objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, mental impressions of counsel, common-interest privilege, banking privilege, self-critical analysis privilege, and/or information generated in anticipation of litigation and trial, including but not limited to notes/memoranda prepared by counsel and/or correspondence between Defendant and its counsel.

RESPONSE: Pursuant to the foregoing objections, no documents will be produced at this time.

Contrary to Ocwen's objection, Pl.'s Fourth Req. for the Prod. of Docs. No. 3 is neither vague or ambiguous. *See, e.g., Monsanto Co. v. Genetic Tech. Ltd.,* No. 4:06CV00989 HEA, 2007 WL 1174851, at *2 (E.D. Mo. Apr.20, 2007) (criticizing discovery responses that focus "on semantics rather than the substance of the request"). In light of prior communications between counsel, briefing, and the affidavit previously submitted by Denise Lundquist, it strains credulity to think Ocwen does not know exactly what documents are sought.

18

Also, Pl.'s Fourth Req. for the Prod. of Docs. No. 3 does not seek work product nor implicate attorney client privilege, or common interest privilege, or any banking privilege just as Freeman's request for the Risk Convergence Reports did not. Even if it did, any such privilege would be waived as a result of Ocwen's failure to include any corresponding entry within its Second Amended Privilege Log. *See Kartman*, 247 F.R.D. at 565 (citing the party opposing discovery's failure to provide a privilege log as a basis "undermin[ing] the application of the work product doctrine."); *see also Fid. Nat. Title Ins. Co.*, 2012 WL 3562207, at *3 ("A party waives the attorney-client privilege and work-product protection when it fails to give notice in its privilege log that a document is being withheld based on a privilege or protection as required.").

Accordingly, Freeman respectfully requests the Court enter an Order compelling Ocwen to provide an unequivocal written response to Pl.'s Fourth Req. for the Prod. of Docs. No. 3 and produce all documents responsive thereto.

### C.   Ocwen's Sec. Suppl. Resp. and Obj. to Pl.'s First Req. for the Prod. of Docs. No. 26.

Full and complete copies of all servicing manuals, memoranda, notes, policies, and employee training materials related to reviewing, analyzing, and responding to Notices of Errors pursuant to 12 C.F.R. §1024.35 and/or responding to any other correspondence from a borrower regarding concerns or potential errors with their loans.

OBJECTION: Defendant objects to this Request as overbroad and unduly burdensome because it seeks "all servicing manuals, memoranda, notes, policies, and employee training materials related to reviewing, analyzing, and responding to Notices of Errors pursuant to 12C.F.R. §1024.35 and/or responding to any other correspondence from a borrower regarding concerns or potential errors with their loans," without any time limitation which necessarily encompasses irrelevant information outside the scope of, and time period relevant to, Plaintiff's claims in this case. Defendant also objects to this Request as disproportional to the needs of the case, considering the amount in controversy, the parties' resources, the lack of importance of the discovery in resolving the liability issue, and because the burden or expense of the proposed discovery outweighs its likely benefit. Defendant objects to this Request on the grounds it seeks information protected by the attorney-client privilege, work product doctrine, mental impressions of counsel, common-interest privilege, and information generated in anticipation of litigation and trial, including but not limited to notes/memoranda prepared by counsel and/or correspondence between Defendant and its counsel related to this matter. Defendant also objects to the extent that this Request seeks to elicit trade secrets or other confidential or proprietary commercial or business information, including but not limited to confidential information regarding its business practices.

RESPONSE: Pursuant to the foregoing objections, no documents will be produced at this time.

SECOND SUPPLEMENTAL RESPONSE: Without waiving its objections, see documents Bates stamped Ocwen_Freeman004444-004825

As an initial consideration, Ocwen's response to Pl.'s First Req. for the Prod. of Docs. No. 26, like so many of its others, does not comply with Fed. R. Civ. Proc. 34(b)(2)(C). Its failure to do so serves no purpose besides obfuscating the truth about whether additional documents responsive to the requests are being withheld. *See, e.g.*, *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production.").

In addition, Pl.'s First Req. for the Prod. of Docs. No. 26 does not seek work product nor implicate attorney client privilege, or common interest privilege, or any banking privilege. Even if it did, any such privilege would be waived as a result of Ocwen's failure to include any corresponding entry within its Second Amended Privilege Log. *See Kartman*, 247 F.R.D. at 565 (citing the party opposing discovery's failure to provide a privilege log as a basis "undermin[ing] the application of the work product doctrine."); *see also Fid. Nat. Title Ins. Co.*, 2012 WL 3562207, at *3 ("A party waives the attorney-client privilege and work-product protection when it fails to give notice in its privilege log that a document is being withheld based on a privilege or protection as required.").

As for Ocwen's proportionality objection to Pl.'s First Req. for the Prod. of Docs. No. 26, under Fed. R. Civ.P. 26 (b)(1): (i) the requested discovery relates to larger public policy issues and could impact vulnerable third parties – other borrowers who directed Notices of Error or complaints about servicing errors to Ocwen only to have those items go unaddressed as a result of a lack procedural safeguards and because a reasonable investigation into said errors was not performed; (ii) the cost of obtaining the requested discovery are minimal – the information is

20

readily obtainable by Ocwen, accessible to only Ocwen, and the amount in controversy is significant; (iii) Ocwen has failed to admit to facts the requested discovery will show – that Ocwen has failed to conduct reasonable investigations upon receipt of the Plaintiff's Notices of Errors and complaints of servicing errors, that Ocwen has failed to appropriately fix or respond to said Notices of Errors and complaints of servicing errors, that Ocwen's failures constitute a pattern and practice that has harmed the Borrower and others; and (iv) the information and documents are essential in establishing liability – whether reasonable investigations occurred, whether easily accessible documents were reviewed, whether errors were readily identifiable, and what actions should have been taken pursuant to Ocwen's own policies and procedures to correct the errors at issue. Notwithstanding the foregoing, Ocwen has failed to support this objection with requisite detail. *See, e.g.*, *Equal Employment Opportunity Comm'n v. Fair Oaks Dairy Farms*, Civil No. 2:11 cv 265, 2012 WL 3138108, at *3 (S.D. Ind. Aug. 1, 2012) (J. Dinsmore) ("Dairy Farms simply states that the discovery would be burdensome and expensive without greater detail. These insufficiencies are fatal…").

Accordingly, Freeman respectfully requests the Court specifically overrule the foregoing objections and enter an Order compelling Ocwen to produce an unequivocal written response to, and all documents responsive to, Pl.'s First Req. for the Prod. of Docs. No. 26.

## IV.    SANCTIONS

Under Rule 37(a), "[i]f the court grants the motion, the non-complying party or its attorney or both must pay the moving party's reasonable expenses, including attorneys' fees, unless the non-complying party's position was substantially justified or an award of expenses would be unjust. Fed. R. Civ. P. 37(a)(5). "The Seventh Circuit has held that Rule 37 'presumptively requires every loser to make good the victor's costs,' suggesting that the fee shifting requirements encourage the

voluntary resolution of discovery disputes by the parties." *FinishMaster, Inc. v. GMP Cards Collision Fairfield, LLC, et al.*, No. 1:20-cv-00299-RLY-MJD, 2020 WL 4473001, at *1 (S.D. Ind. Aug. 3, 2020) (J. Dinsmore) (quoting *Tecnomatic, S.p.A. v. Remy, Inc.*, 2013 WL 6665531, at *1 (S.D. Ind. Dec. 17, 2013). Rule 37(a) sanctions should encompass all the expenses that would not have been sustained had the opponent conducted itself properly. *Lightspeed Media Corp. v. Smith*, 830 F. 3d 500, 507 (7th Cir. 2016).

Here, there is simply no justification for Ocwen's refusal to comply with Fed. R. Civ. Proc. 34(b)(2)(C) or its continued use of the kitchen sink approach to objections and claims of privilege. Worse, those objections and claims are largely boilerplate, and many are entirely inapplicable. As evidenced by the multiple supplemental responses and efforts detailed above or included herewith, this has caused Freeman (and the Court) to unnecessarily expend countless hours confronting layer upon layer of obfuscation to obtain even partial compliance with fundamental aspects of the discovery. The number of discovery deficiency letters, follow-ups, "meet and confers", and discovery conferences has been extraordinary.  And while it may be common for parties to disagree about the proper scope of discovery, it is entirely uncommon and unjustifiable for a party to conjure all manner of privilege and force the relitigation of questions recently visited by the Court. For these reasons, Freeman respectfully requests the Court sanction Ocwen for its improper conduct.

## V.    CONCLUSION

For the foregoing reasons, Freeman respectfully asks the Court to enter an Order compelling Ocwen to provide unequivocal written responses to, and produce all documents responsive to, Pl.'s Fourth Req. for the Prod. of Docs. No. 5, Pl.'s Fourth Req. for the Prod. of Docs. No. 3, and Pl.'s First Req. for the Prod. of Docs. No. 26.

Respectfully submitted,

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30
Olivia Hess, No. 36166-49
**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
tcohron@clarkquinnlaw.com
ohess@clarkquinnlaw.com

*/s/ Nick Wooten*
Nick Wooten
**Nick Wooten, LLC**
5125 Burnt Pine Drive
Conway, Arkansas 72034
nick@nickwooten.com

**Counsel for the Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Carter R. Nichols
Ethan G. Ostroff
John C. Lynch (admitted *Pro Hac Vice*)
**TROUTMAN SANDERS LLP**
carter.nichols@troutman.com
ethan.ostroff@troutman.com
john.lynch@troutman.com
*Counsel for Ocwen Loan Servicing, Inc. and The Bank of New York Mellon*

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30

**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204