UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMONA FREEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-03844-TWP-DLP |
| ) | |
| OCWEN LOAN SERVICING, LLC, and ) | |
| BANK OF NEW YORK MELLON, ) | |
| ) | |
| Defendants. ) | |

### ORDER ON DEFENDANT'S RULE 72 OBJECTION TO MAGISTRATE JUDGE'S MARCH 4, 2022 ORDER

This matter is before the Court on Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Rule 72 Objection to Magistrate Judge's March 4, 2022 Order (Filing No. 237). For the reasons stated below, the Court **overrules** Ocwen's Objection to the Magistrate Judge's Order and grants in part Plaintiff's Motion to Compel (Filing No. 170), as stated in the Report and Recommendation.

### I. PROCEDURAL BACKGROUND

Plaintiff Demona Freeman ("Freeman") initiated this action against Ocwen and co-defendant Bank of New York Mellon ("BONY") (collectively, "Defendants") for their alleged violation of numerous federal statutes—the Real Estate Settlement Procedures Act ("RESPA"), Truth in Lending Act, Fair Debt Collection Practices Act ("FDCPA"), Telephone Consumer Protection Act, and Fair Credit Reporting Act—as well as for breach of contract and other state law claims. After Freeman twice amended her Complaint, the Defendants filed motions to dismiss, asking the Court to dismiss each of the claims asserted in Freeman's Second Amended Complaint. The Court granted in part and denied in part the motions to dismiss (Filing No. 133). The parties then continued to litigate the remaining claims, engaging in further discovery and discovery

disputes. Freeman filed a motion to compel the production of "Risk Convergence Reports" ("RCRs") by Ocwen. The motion to compel was referred to the Magistrate Judge for decision, and on March 4, 2022, the Magistrate Judge granted the motion to compel the production of the RCRs (Filing No. 227). Ocwen then filed the pending Rule 72 Objection to Magistrate Judge's March 4, 2022 Order (Filing No. 237).

## II.  LEGAL STANDARDS

A district court may refer for decision a non-dispositive pretrial motion to a magistrate judge under Federal Rule of Civil Procedure 72(a). Rule 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

After reviewing objections to a magistrate judge's order, the district court will modify or set aside the order only if it is clearly erroneous or contrary to law. The clear error standard is highly differential, permitting reversal of the magistrate judge's ruling only when "the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Coley v. Landrum*, 2016 U.S. Dist. LEXIS 13377, at *3 (S.D. Ind. Feb. 4, 2016) (citation and quotation marks omitted).

The federal discovery rules are liberally construed. *Spier v. Home Ins. Co.*, 404 F.2d 896, 899 (7th Cir. 1968). Magistrate judges (and district judges) "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). "Relevance in discovery is broader than relevance at trial; during discovery, a broad range of

2

potentially useful information should be allowed when it pertains to issues raised by the parties' claims." *Advanced Magnesium Alloys Corp. v. Dery*, 2021 U.S. Dist. LEXIS 140217, at *15–16 (S.D. Ind. Apr. 19, 2021) (internal citations and quotation marks omitted). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. Rule of Civ. Proc. 26(b)(1).

### III. DISCUSSION

On March 18, 2021, Freeman filed a motion to compel the production of Ocwen's RCRs[1] as well as a request for sanctions against Ocwen. The RCRs are a set of twenty-two spreadsheets containing non-loan-specific information that were created on a monthly basis between January 2014 and February 2016. The RCRs were used by Ocwen to track regulatory and servicing issues. The motion to compel was fully briefed by the parties and referred to the Magistrate Judge for decision. On March 4, 2022, the Magistrate Judge granted the motion to compel the production of the RCRs but denied the request for sanctions (Filing No. 227). Then on March 18, 2022, Ocwen timely filed its pending Rule 72 Objection to the Magistrate Judge's Order, arguing that it should not be compelled to produce any of its RCRs (Filing No. 237).

Ocwen describes the Magistrate Judge's March 4, 2022 Order in this manner:

> In the Order, the Magistrate Judge held that portions of the RCRs were relevant to Plaintiff's claim under RESPA and Ocwen's *bona fide* error defense under the FDCPA. (*Id.* at 7-8). However, the Magistrate Judge found that the RCRs were not relevant to Plaintiff's FDCPA claim. (*Id.* at 7). The Order also concluded that the RCRs were not disproportionate to the needs of the case under *Federal Rule of Civil Procedure* 26(b), and that the RCRs were not protected by the self-critical analysis or work-product privileges. (*Id.* at 9-15). The Magistrate Judge ultimately concluded that production of the RCRs "should be limited to certain subjects that relate to this litigation." (*Id.* at 8). To that end, the Magistrate Judge ultimately ordered that on or before March 11, 2022, Plaintiff was "required to submit a list of relevant RCR categories to Defendant," and that "Defendant w[ould] be required to produce the relevant RCR categories on or before March 18, 2022." (*Id.*).

---

[1] Freeman's request for production and motion to compel seek all of Ocwen's RCRs created between January 1, 2014, and August 31, 2018.

([Filing No. 237 at 3](#).)

In its Objection, Ocwen argues the Order is contrary to law because it directed Freeman to provide Ocwen with a list of relevant RCR categories that Ocwen then was required to produce, which gives Freeman unilateral control over determining what is relevant. Ocwen argues the point of the motion to compel was to have the Magistrate Judge determine what was relevant and discoverable, not to hand the decision back to Freeman to decide relevancy.

Ocwen further argues the Order is contrary to law and clearly erroneous because it compels the production of documents that are not relevant. The Order states that the RCRs are not relevant to Freeman's FDCPA claim, but they are relevant to Ocwen's FDCPA *bona fide* error defense. Ocwen asserts the Magistrate Judge misapprehended the nature of the *bona fide* error defense as well as misunderstood the information contained in the RCRs. The Magistrate Judge explained that neither party clarified the policies and procedures that existed at the time the RCRs were created and at the time the alleged violations occurred, so the she concluded the RCRs could contain relevant evidence. Ocwen argues this was legally and factually erroneous.

The *bona fide* error defense protects a debt collector "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Thus, Ocwen argues, all that is relevant is the violation and the maintenance of procedures at the time of that alleged violation. In this case, the FDCPA claim is limited to violations that occurred on or after December 6, 2017, which is nearly two years after the creation of the last RCR in February 2016. Ocwen asserts that any policies and procedures in existence prior to December 6, 2017, are not relevant to the *bona fide* error defense, so the Order compelling production of earlier RCRs is erroneous.

4

Next, Ocwen argues that the Order is contrary to law because the RCRs are not relevant to Freeman's Real Estate Settlement Procedures Act ("RESPA") claim or any allegation of a "pattern or practice" of RESPA violations. The RESPA claim arises under the dispute resolution provisions of 12 U.S.C. § 2605 and focuses on whether Ocwen properly investigated and responded to Freeman's qualified written requests, which were sent to Ocwen in 2018. Ocwen contends that non-loan-specific information about its loan servicing practices between 2014 and 2016 could never provide relevant information about how Ocwen investigated and responded to Freeman's qualified written requests in 2018 because the investigation and response is specific to the consumer. RESPA does not create a private right of action for the underlying servicing error but rather focuses on the investigation and response to a qualified written request. Therefore, Ocwen argues, information in the RCRs about Ocwen's loan servicing practices in 2014, 2015, and 2016 could never be relevant to Freeman's remaining RESPA claim because nothing in a document from 2014, 2015, or 2016 could provide information about how Ocwen investigated and responded to Freeman's notices of error in 2018.

Ocwen contends that even if any underlying errors alleged in Freeman's 2018 notices of error were similar to servicing errors noted in the RCRs from 2014, 2015, and 2016, this information still would be irrelevant because RESPA concerns the investigation and response, not the underlying error. Ocwen argues RESPA damages are available if a consumer shows a pattern or practice of noncompliance with the dispute resolution procedures set forth in § 2605, not by showing that the underlying servicing error previously has occurred in a scenario wholly unrelated to RESPA's dispute resolution requirements. Thus, Ocwen asserts, the RCRs' records of underlying servicing errors are not relevant to a RESPA pattern or practice claim.

Next, Ocwen argues that the Order is clearly erroneous and contrary to law because the RCRs are not proportional to the needs of the case. It argues that the Magistrate Judge was incorrect in noting that Ocwen addressed only two of the factors regarding proportionality, when Ocwen really addressed four of the factors. Ocwen points the Court to its brief at Filing No. 174 at 14–19 for this assertion. Ocwen reiterates that the RCRs simply are not relevant to any remaining claims and to any calculation of potential damages, so they are not important to the issues at stake and are not important to resolving the issues. The Magistrate Judge erred by not considering its argument regarding the statutory damages cap for RESPA "pattern or practice" claims. Additionally, the Magistrate Judge erred by not considering the "real" threat of significant future discovery if the RCRs must be produced. Instead, the Magistrate Judge dismissed consideration of "potential" future discovery, ignoring the subpoenas and deposition notices that have already been served.

Next, Ocwen asserts that the Order was in error because it erroneously concluded that, because the Seventh Circuit has explicitly declined to adopt the self-critical analysis privilege, the Magistrate Judge reached the same conclusion. But this was an incorrect statement of law at the time it was made because the Seventh Circuit has not affirmatively recognized the availability of the self-critical analysis privilege, but it has also not specifically addressed the question of whether to adopt it. Ocwen asserts that relying on this misstatement of the law to justify not even considering whether the privilege applies is clearly erroneous and contrary to law.

Similarly, Ocwen asserts that the Order was in error because it failed to properly apply the work-product privilege to the RCRs when it compelled their production. Ocwen argues that the RCRs themselves and the source of their creation demonstrate that they were prepared because of the prospect of litigation. The creation of the RCRs followed Ocwen's entry into a consent

judgment with the Consumer Financial Protection Bureau and States' Attorneys General in December 2013. The fact that the RCRs did not exist prior to the consent judgment indicates that the RCRs were not created in the ordinary course of Ocwen's business. The RCRs were developed following the conclusion of a regulatory action in anticipation of potential litigation and/or regulatory action in the future. Ocwen argues that this is patently obvious from the timing of their creation and the subject matter which they covered. It is objectively clear that the RCRs came into existence because of some articulable claim that would likely lead to litigation. Ocwen asserts that to hold otherwise is erroneous, and the Magistrate Judge should have applied the work-product privilege.

In response, Freeman contends,

> Ocwen does not identify **_any_** misapplication of precedent it believes has been overlooked in error, only an ill-defined belief Judge Pryor was wrong. This type of objection is particularly disfavored. *See, e.g., Directv, LLC v. Spina*, 1:15-cv-00104-JMS-TAB, 2016 WL 3097212, at *3 (S.D. Ind. June 3, 2016). This is even more true in the context of discovery related disputes where the magistrate judge was and remains in the best position to determine questions of relevancy and proportionality. *See, e.g., Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013); *Garner v. St. Clair County, Illinois*, Case No. 15-cv-00525-JPG-DGW, 2016 WL 1059238, at *2–3 (S.D. Ill. Mar. 17, 2016) ("[A] magistrate judge is in the best position to gauge the extent to which discovery should be allowed in this matter. Further, magistrate judges enjoy extremely broad discretion in controlling discovery."). Here, Judge Pryor has presided over this litigation since its inception, has commenced several discovery conferences in relation to the RCRs, and has considered full briefing about whether the RCRs are discoverable.

(Filing No. 252 at 2–3 (emphasis in original).)

Regarding the RCRs' relevance to the *bona fide* error defense, Freeman points out that Ocwen has not provided any legal support for its contention that any consideration is limited to only the violation and the maintenance of procedures at the time of the violation. If Ocwen knew and was tracking in its RCRs an ongoing failure to comply with the FDCPA, or of its propensity to commit the servicing errors complained of by Freeman, and those failures continued on without

correction—which is what is allegedly contained in the RCRs—the documents would be relevant to and probative of an absence of reasonable procedures and intentional conduct.

Concerning the RESPA claim, Freeman asserts that the RCRs are entirely relevant to her claims and her allegations that Ocwen failed to conduct reasonable investigations in response to her notices of error and engaged in a "pattern and practice" of servicing misconduct required for an award of statutory damages. She notes that Ocwen has not provided any case law to support its position that the Magistrate Judge's Order was erroneous regarding the RCRs' relevance to RESPA.

Regarding Ocwen's claim of privilege, Freeman asserts that Ocwen's "arguments continue to be made with neither evidentiary support nor a corresponding entry within a privilege log. They are also made without addressing how such a privilege could survive Ocwen's voluntary production of partially redacted RCRs in *Todd*." (Filing No. 252 at 5.) Freeman acknowledges that the Seventh Circuit has not explicitly declined to adopt the self-critical analysis privilege, but the Seventh Circuit has considered the self-critical analysis privilege and has never adopted it, and other district courts within the Circuit have considered it and declined to adopt it. Freeman argues,

> the Seventh Circuit has more accurately *implicitly* declined to adopt the self-critical analysis privilege. But this distinction without a difference is not a permissible basis to set aside Judge Pyor's ruling as there was and remains no controlling authority, or even persuasive authority within this District, calling for the adoption of the self-critical analysis privilege.

*Id.* at 6 (emphasis in original). Additionally,

> Judge Pryor's opinion cites to her holding in *Todd* and notes '[n]o relevant case in this Circuit has addressed the self-critical analysis privilege since the issuance of *Todd* and, thus, the analysis has not changed.' [D.E. 237 at 12-13]. Thus, it is quite clear Judge Pryor did, in fact, consider whether the self-critical analysis privilege 'exists and applies to this case.'

*Id.* at 7.

As to the work-product privilege, Freeman asserts that Ocwen does nothing more than repeat its rejected, threadbare assertion that the privilege applies based on the nature and context of the RCRs' creation and their content. Ocwen simply disagrees with the Magistrate Judge's conclusion about the privilege. There is nothing clearly erroneous about the Magistrate Judge's factual findings nor is there anything contrary to law in her conclusion that the work-product privilege does not apply to the RCRs.

Concerning proportionality of the discovery, Freeman contends that Ocwen's concerns do not rise to the level of a failure to follow controlling precedent or a clear error regarding facts. Freeman argues that Ocwen failed to establish any burden or expense associated with production of the RCRs, and Ocwen also provided no legal support for its contention that the Court should consider potential future discovery when weighing the burden of production of the RCRs. Freeman argues it does not matter whether future discovery was "real" or "potential" because future discovery is not a proper consideration for proportionality.

Finally, Freeman asserts,

> Ocwen also argues Judge Pryor has erred in allowing Freeman to make determinations of relevancy with respect to what portions of the RCRs are ultimately produced. At the same time, Ocwen has and continues to take the position that it may appropriately self-redact documents *it* believes are irrelevant. These two positions are irreconcilable and evidence a dilatory motive. Nonetheless, Ocwen does identify a potential problem the Order creates - albeit not in the way it describes. While it is clear Judge Pryor has endeavored to strike a fair balance between the parties['] competing interests, the Federal Rules do not provide a mechanism for unilateral redactions or partial production, and it is frowned upon by a weight of authority. . . . Here, the RCRs have been deemed discoverable and Ocwen should not be afforded an opportunity to redact portions simply because it believes them to be damaging.
>
> Accordingly, if any action is taken with respect to the Order, Freeman asks that it be amended so as to require Ocwen to produce the RCRs in their entirety.

*Id.* at 9–10 (emphasis in original).

The Court is persuaded that Ocwen has not shown that the Magistrate Judge's Order was clearly erroneous or contrary to law to justify sustaining Ocwen's Objections.  As noted above, "[r]elevance in discovery is broader than relevance at trial;  during discovery,  a broad range  of potentially useful information should be allowed when it pertains to issues raised by the parties' claims." *Advanced Magnesium Alloys*, 2021 U.S. Dist. LEXIS 140217, at *15–16. "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. Rule of Civ Proc. 26(b)(1).  The Magistrate Judge determined that the limited RCRs are relevant to the remaining RESPA claim and to Ocwen's *bona fide* error defense.  Ocwen did not support with case law or authority its assertion that these are limited to the violations and the maintenance of policies, procedures, and practices at the time of the violations. Ocwen also did not provide evidentiary support showing that the Magistrate Judge made a clear error of fact concerning the RCRs. The Court agrees with the Magistrate Judge that the RCRs very well may provide relevant information concerning the RESPA claim and Ocwen's *bona fide* error defense.

Ocwen's proportionality argument opposing the motion to compel focused primarily on its assertion that *any* amount of burden would be undue because the RCRs are not relevant. Ocwen also primarily argued the RCRs' production is disproportional because of the small dollar amount of potential damages. Ocwen now argues that it addressed in explicit detail the importance of the issues at stake in the action and the importance of the discovery in resolving the issues in the case, pointing to its brief at Filing No. 174 at 14–19. However, that portion of Ocwen's brief does not clearly support its present argument. While Ocwen's argument about relevancy in that portion of its earlier brief could arguably relate to the importance of the discovery in resolving the issues in the case, Ocwen did not "explicitly address" these "proportionality factors," so it was not an error for the Magistrate Judge to note that Ocwen addressed only two of the factors. Regarding the

statutory damages cap for RESPA "pattern or practice" claims, the Magistrate Judge noted that this is not the only claim pending in this matter, so regardless of a RESPA "pattern or practice" cap, there also are other damages at stake in the case. Furthermore, Ocwen did not point to any case law or authority requiring the Magistrate Judge to consider the threat of (real or potential) future discovery in weighing the burden of producing the presently requested RCRs. The Court concludes there was no error regarding the proportionality analysis that would justify a different outcome.

Concerning the self-critical analysis privilege, Ocwen argues the Magistrate Judge committed error by refusing to even consider the privilege and by summarily dismissing its potential application in this case. Ocwen bases its argument on the Magistrate Judge's quotation from the *Todd* case: "Because the Seventh Circuit has explicitly declined to adopt the self-critical analysis privilege, the Undersigned concludes the same." (Filing No. 227 at 12.) However, Ocwen's argument disregards the rest of the Magistrate Judge's discussion about the privilege. The Magistrate Judge also explained,

> Defendant contends that the Seventh Circuit has not affirmatively recognized the availability of the privilege, but that it has also not specifically addressed the question of whether to adopt it. (Dkt. 174 at 20-21). Defendant is correct. The Seventh Circuit has not recognized the self-critical analysis privilege, nor has it explicitly stated whether the privilege even exists.

*Id*. The Magistrate Judge further explained, "No relevant case in this Circuit has addressed the self-critical analysis privilege since the issuance of *Todd* and, thus, the analysis has not changed. Accordingly, the Undersigned concludes that the self-critical analysis privilege does not apply." *Id.* at 13.  While it was imprecise to state in the *Todd* case that the Seventh Circuit has "explicitly declined to adopt the self-critical analysis privilege," it remains true that the privilege has not been adopted, and the Magistrate Judge acknowledged Ocwen was correct that the Seventh Circuit has

11

not affirmatively recognized the availability of the privilege and it has not specifically addressed the question of whether to adopt it. A review of the entirety of the Magistrate Judge's Order makes it clear that she did not refuse to even consider the privilege and summarily declined to apply it. She considered the privilege, recognized it has yet to be adopted, and determined that nothing in the state of the law has changed since *Todd*, so she concluded the privilege does not apply. Ocwen's Objection regarding a self-critical analysis privilege does not justify a different outcome.

Turning to the work-product doctrine, this privilege provides an exception to the liberal discovery rules. To claim protection of the doctrine, a party must demonstrate that the materials in question would otherwise be discoverable and were prepared in anticipation of litigation. The burden is on the discovery opponent to establish that the work-product doctrine protects the documents against discovery. The threshold determination is whether the documents sought to be protected were prepared in anticipation of litigation or for trial. However, not all documents generated from an internal investigation are protected by the work-product doctrine simply because a company's internal investigation is coexistent with a present or anticipated lawsuit that is the same subject matter of the litigation. Documents created in the ordinary course of business that would have been created regardless of litigation are not under the protection of the work-product doctrine. *See Long v. Anderson Univ.*, 204 F.R.D. 129, 135–36 (S.D. Ind. 2001).

Ocwen argues that the RCRs themselves and the source of their creation demonstrate that they were prepared because of the prospect of litigation. Ocwen argues that the RCRs came into existence after the consent judgment because of some articulable claim that would likely lead to litigation. The Magistrate Judge considered this argument presented by Ocwen, and Ocwen (the party having the burden to show that the work-product doctrine applies) failed to convince the Magistrate Judge by its argument. The Magistrate Judge considered the correct and applicable law

and determined that the privilege did not apply to the RCRs.  When considering the discoverability of Ocwen's RCRs, this same Magistrate Judge explained in *Todd*, "The consent decrees do not mandate that Ocwen maintain RCRs — rather, it appears from the briefing that Ocwen prepared the RCRs for internal use in order to track and prevent any further issues that may result in a subsequent consent decree." *Todd v. Ocwen Loan Servicing*, 2020 U.S. Dist. LEXIS 52212, at *15 (S.D. Ind. Jan. 30, 2020). And "the RCRs appear to be spreadsheets created in the normal course of Ocwen's business, in an attempt to track potential points of liability and forestall future regulatory action." *Id.* The Court overrules Ocwen's Objection as to the work-product privilege because Ocwen has not shown the decision was clearly erroneous or contrary to law.

Finally, regarding the Order's direction to Freeman to compile a list of relevant categories in the RCRs and provide that list to Ocwen for its production of documents, the Court concludes that such a direction was improper.  The Magistrate Judge concluded, and the Court agrees, that the RCRs are relevant to Freeman's RESPA claim and Ocwen's *bona fide* error defense.  Thus, the RCRs are to be produced to Freeman.

## IV.     CONCLUSION

For the foregoing reasons, Ocwen's Rule 72 Objection to Magistrate Judge's March 4, 2022 Order (Filing No. 237) is **OVERRULED**. The Stay requiring the production of RCRs is lifted effective tomorrow, April 5, 2022.

**SO ORDERED.**

Date:   4/4/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Rusty A. Payton
PAYTON LEGAL GROUP LLC
info@payton.legal

Nicholas H. Wooten
NICK WOOTEN, LLC
nick@nickwooten.com

Travis W. Cohron
CLARK QUINN MOSES SCOTT & GRAHN LLP
tcohron@clarkquinnlaw.com

Michael P. Maxwell, Jr.
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

Olivia Anne Hess
CLARK QUINN MOSES SCOTT & GRAHN LLP
ohess@clarkquinnlaw.com

John Curtis Lynch
TROUTMAN SANDERS LLP
john.lynch@troutman.com

Carter Randall Nichols
TROUTMAN SANDERS LLP
carter.nichols@troutman.com

Ethan Geoffrey Ostroff
TROUTMAN SANDERS LLP
ethan.ostroff@troutman.com

Guerino Cento
CENTO LAW
cento@centolaw.com