# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMONA FREEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:18-cv-03844-TWP-MKK |
| | ) |
| OCWEN LOAN SERVICING, LLC, and | ) |
| BANK OF NEW YORK MELLON, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Bank of New York Mellon ("BONY") (Filing No. 270) and a Motion for Leave to File Surreply filed by Plaintiff Demona Freeman ("Freeman") (Filing No. 386). Freeman initiated this action against BONY and co-defendant Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "Defendants") for their alleged violation of numerous federal statutes—the Real Estate Settlement Procedures Act, Truth in Lending Act, Fair Debt Collection Practices Act, Telephone Consumer Protection Act, and Fair Credit Reporting Act—as well as for breach of contract and other state law claims. After Freeman twice amended her Complaint, the Court narrowed her claims following the Defendants' motions to dismiss. BONY then filed the instant Motion for Summary Judgment, asking for entry of summary judgment on the remaining claim for breach of contract. Freeman seeks leave to file a surreply brief opposing summary judgment. For the following reasons, the Court **grants** BONY's Motion for Summary Judgment and **denies** Freeman's Motion for Leave to File Surreply.

I.        BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Freeman as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court notes that this background section is not intended to provide a comprehensive explanation of all the facts of this case but rather provides only the facts necessary for resolving the instant Motions.

The Court further notes that certain evidence has been excluded pursuant to the Defendants' motions in *limine* and is not being considered when resolving the instant Motions. In deciding those motions in *limine*, the Court ruled that Freeman and her medical providers (Dr. Valerie Beard, Dr. Pynkerton Newton, and Alta Skelton) may not testify as to medical causation opinion of Freeman's purported medical issues; the cause, presentation, and/or progression of psychosomatic symptoms in patients generally; and whether stress may hypothetically cause hypertension (*see* Filing No. 471 at 9). The Court also ruled that Freeman may not use during trial or for summary judgment her medical records (Filing No. 337-4; Filing No. 336-23 at 23), the OneMain term sheet describing a loan (Filing No. 336-23 at 16), and the statement of attorney's fees allegedly incurred in connection with her foreclosure (Filing No. 336-40) (*see* Filing No. 473 at 8).

A.        **Factual Background**

Freeman is the owner of real property and improvements located at 17373 Pine Wood Lane, Westfield, Indiana 46074. She purchased the property on December 2, 2003, as her primary residence and financed the purchase by a loan as evidenced by a note and a mortgage on the

2

property. The loan subsequently was assigned to BONY, and in September 2011, Ocwen began servicing the loan on behalf of BONY (Filing No. 84-15; Filing No. 272-1 at 5–6, 185–93).

In 2008, Freeman began experiencing financial difficulties that led to her falling behind on her mortgage payments under the loan, and on April 13, 2009, BONY filed a foreclosure action against Freeman in the Hamilton County Superior Court. Shortly thereafter, on April 23, 2012, Freeman filed Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Indiana (Filing No. 84 at 10).

In the bankruptcy case, a proof of claim was filed on BONY's behalf, asserting a secured claim in the amount of $133,064.46 and pre-petition arrearages of $22,668.03 (Filing No. 84 at 11; *see also In re Freeman*, Case No. 12-04713 (Bankr. S.D. Ind.), ECF No. 47). The bankruptcy trustee filed an objection to certain amounts in the proof of claim, which led to the bankruptcy court entering an order that disallowed $10,289.84 from the arrearage amount in BONY's proof of claim, leaving arrearages in the amount of $12,378.10. The bankruptcy court also disallowed a $300.00 fee claimed on BONY's behalf related to the litigation over the objection to the proof of claim (Filing No. 84 at 11–13; *see also In re Freeman*, Case No. 12-04713 (Bankr. S.D. Ind.), ECF Nos. 53, 85).

On April 12, 2017, the bankruptcy trustee filed a notice of final cure payment, informing the bankruptcy court that all of the allowed pre-petition arrearages and fees had been paid as well as post-petition payments up to that point. Ocwen filed a response to the notice of final cure payment on April 24, 2017, agreeing with the trustee's filing and indicating that the loan would be due for the May 1, 2017 payment (Filing No. 84 at 13–14; *see also In re Freeman*, Case No. 12-04713 (Bankr. S.D. Ind.), ECF Nos. 109 and doc). On November 21, 2017, Freeman obtained an

3

order of discharge in the Chapter 13 bankruptcy (Filing No. 84 at 14; *see also In re Freeman*, Case No. 12-04713 (Bankr. S.D. Ind.), ECF No. 132).

After the bankruptcy discharge, Ocwen undertook a reconciliation process of the loan in February 2018. However, an error was made during the initial reconciliation after the close of the bankruptcy, and disallowed amounts were not removed from the loan. Because of the error, the due date on the loan was incorrect in Ocwen's records, which led to Freeman's loan appearing to be delinquent even though it was not. The erroneous delinquency led to the loan being considered in default, triggering property inspections and the beginning of the foreclosure process in May 2018. Because of the erroneous default status on the loan, Ocwen informed Freeman during a June 2018 telephone call that it would accept only a full reinstatement payment and not a regular monthly payment (Filing No. 272-1 at 6–7; Filing No. 84-2; Filing No. 84-1 at 75).

Soon thereafter, by letter dated July 12, 2018, Freeman sent correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 1") to Ocwen in hopes of obtaining documents necessary to ascertain the cause of the alleged default. Ocwen received RFI No. 1 on July 17, 2018. On July 20, 2018, Ocwen sent correspondence to Freeman, acknowledging receipt of RFI No. 1. On July 23, 2018, Ocwen sent Freeman correspondence responding to RFI No. 1, explaining what documents were being sent to her (Filing No. 84-3; Filing No. 272-1 at 4, 18–19, 26–29).

On August 15, 2018, BONY filed a second foreclosure action against Freeman in the Hamilton County Superior Court (Filing No. 84-12). Then on October 29, 2018, Freeman sent correspondence captioned "Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 1") to Ocwen, alleging two errors committed by Ocwen. NOE No. 1 was received by Ocwen on November 1, 2018. On November 6, 2018, Ocwen sent correspondence to Freeman that

4

acknowledged receipt of NOE No. 1 (Filing No. 84-5; Filing No. 272-1 at 4–5, 151; Filing No. 272-4).

On November 13, 2018, Freeman sent correspondence captioned "Second Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 2") to Ocwen, alleging seven errors committed by Ocwen.  NOE No. 2 was received by Ocwen on November 19, 2018.  On November 20, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 2 (Filing No. 84-8; Filing No. 272-1 at 5, 158; Filing No. 272-5). By a second letter dated November 13, 2018, Freeman sent correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 2") to Ocwen, asking for information regarding the servicing of Freeman's loan.  Ocwen received RFI No. 2 on November 17, 2018 (Filing No. 84-7; Filing No. 272-1 at 5).

On December 4, 2018, Freeman sent correspondence captioned "Third Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 3") to Ocwen, alleging two errors committed by Ocwen. NOE No. 3 was received by Ocwen on December 7, 2018. On December 10, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 3 (Filing No. 84-10; Filing No. 272-1 at 5, 178; Filing No. 272-7).

Two days after Freeman sent her NOE No. 3 to Ocwen, Freeman initiated the instant federal lawsuit against Ocwen in this Court on December 6, 2018 (Filing No. 1). Shortly thereafter, BONY agreed to voluntarily dismiss the second foreclosure action against Freeman, and an order dismissing BONY's claim and Freeman's counterclaim was entered on January 23, 2019, by the Hamilton County Superior Court (Filing No. 272-3). Effective June 1, 2019, loan servicing for Freeman's loan was transferred from Ocwen to PHH Mortgage Services ("PHH"), the successor

by merger to Ocwen. On June 7, 2019, PHH sent correspondence to Freeman, notifying her of the loan servicing transfer (Filing No. 272-1 at 8; Filing No. 272-18).

**B.      Procedural Background**

On December 6, 2018, Freeman initiated this action against Ocwen by filing her initial complaint (Filing No. 1). Approximately three months later, she filed her first amended complaint (Filing No. 24), and less than a year later, on September 20, 2019, Freeman filed her Second Amended Complaint, the operative pleading in this case (Filing No. 84). The Second Amended Complaint asserts eleven claims against Defendants Ocwen and BONY and dismissed co-defendant Manley Deas Kochalski, LLC. The sole claim against Manley Deas Kochalski, LLC for violation of the Fair Debt Collection Practices Act ("FDCPA") was dismissed with prejudice by stipulation of the parties (*see* Filing No. 112; Filing No. 113). A claim against Ocwen for violation of the Telephone Consumer Protection Act was dismissed with prejudice by stipulation of the parties (*see* Filing No. 123; Filing No. 124).

In September 2019, Defendants Ocwen and BONY filed motions to dismiss the claims brought against them. After the motions were fully briefed, the Court issued a ruling, dismissing some of the claims and narrowing other claims (Filing No. 133). The Court dismissed Freeman's claim against BONY for violations of the Truth in Lending Act. *Id.* at 24. The Court also dismissed the following claims against Ocwen: violation of the Fair Credit Reporting Act, violation of the Discharge Injunction and Federal Rule of Bankruptcy Procedure 3002.1, violation of the Bankruptcy Court Orders, violation of the Indiana Crime Victim's Relief Act, and violation of the Indiana Deceptive Consumer Sales Act.

The Court dismissed in part the claim against Ocwen for violations of the Real Estate Settlement Procedures Act to the extent that the claim is based upon Section 2609, but in all other

respects, the claim survived the motion to dismiss. *Id.* at 27. The Court also dismissed in part the claim against Ocwen for violations of the FDCPA to the extent that the claim is based upon the Bankruptcy Case and Discharge and to the extent that it is based on any conduct that occurred before December 6, 2017. In all other respects, the FDCPA claim survived the motion to dismiss. *Id.* at 29.

Freeman's breach of contract claim against BONY is based upon the following theories: (i) failure to accept Freeman's timely and adequate mortgage payments as contractually obligated; (ii) failure to credit and apply Freeman's payments as contractually obligated; (iii) assessment of unauthorized late fees, legal fees, costs, and property inspection fees; (iv) failure to dismiss the foreclosure action upon receiving notice of the facts; (v) placing the Loan in default and inaccurately reporting to credit bureaus said status; and (vi) converting funds towards fees or costs specifically disallowed by Order dated October 26, 2012 (*see* Filing No. 84 at 35–36). However, in the Order on Defendants' Motions to Dismiss, the Court dismissed the breach of contract claim based on the theories of (1) failure to timely dismiss the foreclosure action, (2) inaccurately reporting to credit bureaus, and (3) converting funds towards fees or costs specifically disallowed by the Bankruptcy Court's order dated October 26, 2012 (Filing No. 133 at 18). The breach of contract claim against BONY was permitted to proceed on the other theories.

On April 25, 2022, BONY filed the instant Motion asking the Court to enter summary judgment on the remaining breach of contract claim that survived dismissal. Throughout the subsequent months, the parties filed numerous ancillary motions related to the Motion for Summary Judgment, including Freeman's Motion for Leave to File Surreply.

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

8

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.     DISCUSSION

BONY asks the Court to enter summary judgment in its favor on the remaining breach of contract claim that freeman has asserted against it. after bony filed its summary judgment reply brief, Freeman filed a motion requesting leave to file a surreply. The Court will first address the Motion for Leave to File Surreply and then turn to the parties' summary judgment arguments.

**A.     Motion for Leave to File Surreply**

On April 25, 2022, BONY filed its Motion for Summary Judgment. Three months later, on July 25, 2022, Freeman filed a response to the Motion. Almost two months later, on September 6, 2022, BONY filed its reply brief. Freeman requests leave to file surreply, arguing that BONY advanced new arguments and asserted objections to her evidence in its reply brief.

> The purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion. New arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief. Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response.

*Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils.*, 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019) (internal citations and quotation marks omitted).

Freeman asserts that her "Surreply is limited to addressing the new arguments and evidentiary objections raised in BONY's Reply in Support." (Filing No. 386 at 1.) However, upon review of the parties' summary judgment briefing and surreply briefing, the Court determines that BONY's reply brief did not inject new arguments or issues into the summary judgment briefing. BONY's reply brief arguments were appropriate rebuttal to Freeman's response brief arguments.

9

BONY did not raise new arguments or issues in the reply brief. Regarding the limited evidentiary objections asserted in BONY's reply brief, the Court notes that those objections were fully briefed (including Freeman's opposition), analyzed, and decided in the Defendants' motions in *limine* and the Court's Orders on those motions. In light of the limited purposes of a surreply brief and the limited circumstances under which they are permitted (which do not exist here), the Court **denies** Freeman's Motion for Leave to File Surreply as her surreply brief is an impermissible attempt to usurp from the movant the final opportunity to be heard.

### B.     BONY's Motion for Summary Judgment

Freeman's sole remaining claim against BONY is for breach of contract. After the Court ruled on the Defendants' motions to dismiss, the narrowed breach of contract claim is premised upon the following theories: (1) failure to accept Freeman's timely and adequate mortgage payments as contractually obligated; (2) failure to credit and apply Freeman's payments as contractually obligated; and (3) assessment of unauthorized late fees, legal fees, costs, and property inspection fees (*see* Filing No. 84 at 35–36; Filing No. 133 at 18).

A breach of contract claim is founded on "the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). To succeed on a breach of contract claim, a plaintiff must successfully establish each of these elements. The parties do not dispute the existence of a contract. While BONY contends that the evidence does not support a breach of the parties' contract, it primarily focuses its argument on the third element: Freeman did not suffer any damages resulting from the alleged breach. BONY also argues that the breach of contract claim is preempted by the Bankruptcy Code. The Court focusses its discussion and analysis on the element of "damages resulting from the alleged breach."

Freeman argues that she has suffered damages caused by BONY's breach of contract. She asserts, "BONY has improperly collected at least one fee since it allegedly reconciled her account and corrected its errors. Moreover, additional improper fees and charges remain on the account as reflected in the advance balance." (Filing No. 338 at 19.) Freeman argues specifically that an unauthorized fee of $299.43 was collected on September 26, 2019, and as of December 31, 2019, the advance balance was $44,462.98. *Id.* She argues that the fact she has not yet paid the amount on her advance balance does not preclude that balance amount being treated as consequential damages because she is contractually bound to pay them.

Furthermore, "Freeman was required to retain counsel to attempt to halt the wrongful foreclosure proceedings and to have her loan reinstated. She owes $12,067.50 to Clark, Quinn, Moses, Scott, and Grahn, LLP for this work. Freeman also had to take time away from work to address BONY's breach of contract." *Id.* at 21. "In addition, Ocwen issued a Form 1098 Mortgage Interest Statement [Filing No. 336] to Freeman reflecting interest paid in 2018 in the amount of $2,056.38 when in fact she paid more. As a result, she will incur costs to amend her 2018 tax return. *See* Patterson Report [Filing No. 336]." *Id.* at 22 (bracketed information in original).

Freeman argues that BONY's refusal to accept her payments and its maintenance of her loan in default causes continuing harm to Freeman's credit and reputation. She points to *American Fletcher Nat. Bank & Trust Co. v. Flick*, 252 N.E.2d 839, 845–46 (Ind. Ct. App. 1970) to argue that such harm to credit and reputation is presumed.

Lastly, Freeman acknowledges,

> [E]motional distress is not a recoverable element of damage under a pure breach of contract theory. *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind. Ct. App. 1998) (citing *Plummer v. Hollis*, 11 N.E.2d 140 (Ind. 1937)). "Rather, the proper measure of damages for breach of contract is the loss actually suffered as a result of the breach." *Id.*

11

(Filing No. 338 at 23.) However, Freeman argues, monetary loss for physical ailments is recoverable if the breach of contract was a substantial factor in contributing to the loss. And she asserts that she experienced "physical illnesses stemming from [BONY's] acts, multiple doctor visits, the medications prescribed by her doctors and her absence from work" beyond simply emotional distress. *Id.* at 24.

BONY argues that Freeman has failed to provide any admissible, designated evidence that is not speculative to support any damages resulting from an alleged breach. BONY asserts that there are no damages resulting from any alleged failure to accept Freeman's timely and adequate mortgage payments as contractually obligated, failure to credit and apply Freeman's payments as contractually obligated, or assessment of unauthorized late fees, legal fees, costs, and property inspection fees. Freeman has not actually paid any money that was not owed under the terms of the contract, and she has not actually paid any unauthorized fees or costs.

Addressing Freeman's specific arguments, BONY asserts,

> Plaintiff argues – without citation to the record – that a fee in the amount of $299.43 was collected from her on September 26, 2019. See Pl.'s Opp. at 19. This is, of course, not a harm or damage that she allegedly suffered before filing her lawsuit. As a result, it could not serve as the "injury in fact" that gives her standing for a breach of contract claim. Nor is this fee a damage that she ever alleged in her Complaint or discovery in this matter. Moreover, even if this alleged fee from September 2019 could support a breach of contract claim filed almost a year beforehand, Plaintiff makes no attempt to explain how this fee was in any way improper. Simply put, Plaintiff [sic] conclusory reference to the September 2019 fee is insufficient to create a genuine dispute of fact that she suffered recoverable damages [sic] a result of a breach of contract that occurred over a year beforehand, particularly where the underlying error giving rise to the alleged breach had been corrected.

(Filing No. 377 at 16.)

Regarding the advance balance, BONY points out that Freeman has made no attempt to explain or cite to evidence in the record demonstrating how the advance balance on the loan or any

12

portion thereof is improper, and her conclusory statement fails to create a genuine dispute of fact as to damages. BONY argues that Freeman's cited case law is inapplicable and does not support her argument. Instead, Freeman is obligated under her mortgage to make monthly payments, which include amounts for taxes and insurance, and to the extent BONY is even seeking the advance balance from Freeman, which she has not demonstrated through any evidence in the record, such amounts are not a consequence of any breach of contract; rather, they are a consequence of the mortgage itself.

As to any attorney's fees for defending against the foreclosure action, BONY contends that attorney's fees are not recoverable on a breach of contract claim unless authorized by contract, rule, statute, or agreement, but there is no evidence that such applies in this case. And as explained in the Defendants' motion in *limine*, these alleged attorney's fees were never disclosed or claimed as damages caused by BONY's alleged breach. Freeman has not produced or cited to evidence demonstrating she is responsible for such fees, and she has not produced or cited to evidence demonstrating that the alleged fees were actually incurred. Freeman never identified these alleged damages in response to BONY's discovery requests. Likewise, Freeman never asserted that she would incur costs of having to refile her 2018 taxes due to an alleged inaccuracy in the 1098 mortgage interest statement issued for the year 2018, and she cannot add in claims for alleged future expenses in an opposition to summary judgment. Furthermore, filing taxes is free, and Freeman has presented no evidence that she would incur an expense for refiling her taxes.

Concerning harm to credit and reputation, BONY asserts that Freeman's argument is without merit.

> Plaintiff cites to *American Fletcher Nat. Bank & Trust Co. v. Flick*, 252 N.E.2d 839, 845-46 (Ind. Ct. App. 1970) for the proposition that if a bank dishonors a customer's business check, a presumption arises that the customer's credit and business standing are thereby harmed. *See* Pl.'s Opp. at 22. She then goes on to

13

>analogize that "BONY's designation of Freeman's account as being in default renders the existence of some harm to her credit so probable that, despite uncertainty as to the dollar value of the harm, there is no good reason for refusing damages altogether." *Id.* at 23. Plaintiff then asserts – in what can only be described as an attempt to create law from whole cloth – that "the burden is on BONY to demonstrate that Freeman's credit wasn't harmed . . . ." *Id.* Plaintiff's arguments are woefully flawed.

([Filing No. 377 at 20](#).) BONY points out that the *Flick* case involved a bank dishonoring a check written by the plaintiff to a third-party, and the plaintiff's credit and reputation with the third-party was injured. This case is different: it does not involve any injured reputation with a third-party. Freeman did not point to any evidence that she was harmed; rather, she argues that BONY has to provide evidence that she was not harmed, but that is not what the law requires.

Finally, BONY argues that Freeman "gratuitously conflates her alleged stress induced ailments with physical injuries. There is no evidence in the record that Plaintiff has been physically injured – she alleges that stress caused by BONY has led to hypertension (i.e., high blood pressure)." *Id.* at 21. "Plaintiff is merely attempting to make an end run around the non-availability of emotional damages in a breach of contract case by claiming her emotional damages (i.e., stress) led to what she characterizes as a physical injury." *Id.* BONY argues that Freeman's self-diagnosis that stress related to BONY's conduct caused her hypertension is purely speculative and unsupported by any evidence in the record. Furthermore, Freeman has not shown how medical expenses such as prescription costs and co-pays are damages naturally arising from a breach of contract based on a failure to accept a monthly payment, imposition of unauthorized fees, or failure to credit payments.

As noted earlier, to succeed on her breach of contract claim, Freeman must successfully establish each element of the claim, including damages resulting from the breach. After carefully considering the evidence designated to the Court and the parties' arguments concerning "damages

resulting from the breach," the Court concludes that Freeman has failed to establish this element to support her breach of contract claim against BONY.

The Court reiterates that, in its Orders on the Defendants' motions in *limine*, the Court excluded medical causation opinion of Freeman's purported medical issues from Freeman and her medical providers; the cause, presentation, and/or progression of psychosomatic symptoms in patients generally; and whether stress may hypothetically cause hypertension. The Court also excluded Freeman's medical records, the OneMain loan term sheet, and the statement of attorney's fees allegedly incurred in connection with her foreclosure. The Court is not required to scour the record in search of evidence to defeat a motion for summary judgment, and speculation or conjecture will not defeat a summary judgment motion. Unfortunately for Freeman, her arguments were based upon speculation or evidence that was excluded as well as citations to evidence that did not support the factual allegations for which it was asserted.

The Court will briefly discuss each of the claimed categories of damage that Freeman discussed in her response brief. It is difficult for the Court to conclude that $299.43 collected on September 26, 2019, amounts to damages resulting from a breach that was pursued as a claim in court on December 6, 2018, nearly ten months earlier. Importantly, in the evidence, there is no foundation for Freeman's conclusory allegation that the fee was unauthorized or wrongful. Freeman's expert witness, Bernard Jay Patterson ("Patterson"), provided a forensic analysis of Freeman's loan transactions. Yet, Patterson did not state anything about the fee of $299.43 that was collected on September 26, 2019, nor did he state that it was unauthorized or wrongful. The same is true of the advance balance of $44,462.98 as of December 2019. Freeman provides no foundation for her conclusory allegation that the advance balance was improper or wrongful. And

15

Patterson (Freeman's expert witness) did not state anything about the December 2019 advance balance of $44,462.98, nor did he state that it was unauthorized, improper, or wrongful.

There is no evidence in the record to support Freeman's claim for attorney's fees from the foreclosure proceedings because that evidence was excluded by the Order in *limine* (*see* [Filing No. 473](#)). Freeman contends that she will incur costs to amend her 2018 tax return, relying on Patterson's expert report. However, nowhere in Patterson's expert report does he opine or conclude that Freeman will incur costs to amend her 2018 tax return, nor does he even discuss her 2018 tax return.

Freeman relies on *Flick*, 252 N.E.2d at 845–46, to argue that her harm to credit and reputation is presumed. However, the circumstances of the 1969 *Flick* case—three checks drawn on the plaintiff's account were returned for insufficient funds—that the court concluded justified a presumption are not present here. Importantly, Freeman failed to point to any evidence in the record that her credit and reputation were harmed by any alleged breach of contract by BONY.

Finally, Freeman admits that emotional distress is not a recoverable element of damage under a breach of contract theory. But she argues she has suffered physical injury, such as high blood pressure, as a result of BONY's actions. Yet, there is no evidence in the record of medical causation for Freeman's medical conditions, so she cannot support her allegation that BONY's alleged breach of contract caused her physical injury to support a claim for damages.

Freeman has not provided competent, admissible, non-speculative evidence to establish damages resulting from BONY's alleged failure to accept Freeman's timely and adequate mortgage payments as contractually obligated, failure to credit and apply Freeman's payments as contractually obligated, or assessment of unauthorized late fees, legal fees, costs, and property

inspection fees. As such, Freeman cannot support her claim for breach of contract against BONY, and BONY is entitled to summary judgment on this claim.

### IV.     CONCLUSION

For the reasons discussed above, BONY's Motion for Summary Judgment ([Filing No. 270](Filing No. 270)) is **GRANTED**, and Freeman's sole remaining claim against BONY for breach of contract is **dismissed**. Furthermore, Freeman's Motion for Leave to File Surreply ([Filing No. 386](Filing No. 386)) is **DENIED**. With no remaining claims pending against it, Defendant Bank of New York Mellon is **terminated as a defendant** in this action.

To void "piecemeal appeals," final judgment pertaining to BONY will issue in a separate filing once all claims in this case are resolved.

**SO ORDERED.**

Date:   3/31/2023

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Olivia Anne Hess
CLARK QUINN MOSES SCOTT & GRAHN LLP
ohess@clarkquinnlaw.com

Travis W. Cohron
CLARK QUINN MOSES SCOTT & GRAHN LLP
tcohron@clarkquinnlaw.com

Michael P. Maxwell, Jr.
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

Jennifer F. Perry
CLARK QUINN MOSES SCOTT & GRAHN LLP
jperry@clarkquinnlaw.com

Rusty A. Payton
PAYTON LEGAL GROUP LLC
info@payton.legal

John Curtis Lynch
TROUTMAN SANDERS LLP
john.lynch@troutman.com

Carter Randall Nichols
TROUTMAN SANDERS LLP
carter.nichols@troutman.com

Ethan Ostroff
TROUTMAN SANDERS LLP
ethan.ostroff@troutman.com

Nicholas H. Wooten
DC Law, PLLC
nick@texasjustice.com