## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEMONA FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03844-TWP-DLP |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Ocwen Loan Servicing, LLC ("Ocwen") (Filing No. 268), and a Motion for Leave to File Surreply filed by Plaintiff Demona Freeman ("Freeman") (Filing No. 391). Freeman initiated this action against Ocwen and now dismissed co-defendant Bank of New York Mellon ("BONY") (collectively, "Defendants") alleging violation of numerous federal statutes—the Real Estate Settlement Procedures Act, Truth in Lending Act, Fair Debt Collection Practices Act, Telephone Consumer Protection Act, and Fair Credit Reporting Act—as well as for breach of contract and other state law claims. After Freeman twice amended her Complaint, the Court narrowed her claims. (*See* Filing No. 475). Ocwen then filed the instant Motion for Summary Judgment, seeking summary judgment on the two claims remaining against it. Also pending is Freeman's request for leave to file a surreply brief opposing summary judgment. For the following reasons, the Court **grants** Ocwen's Motion for Summary Judgment and **denies** Freeman's Motion for Leave to File Surreply.

## I.      <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, they are presented in the light most favorable to Freeman as the non-moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court notes that this background section is not intended to provide a comprehensive explanation of all the facts of this case but rather provides only the facts necessary for resolving the instant Motions.

The Court further notes that certain evidence has been excluded pursuant to the Defendants' motions in *limine* and is not being considered when resolving the instant Motions. In deciding those motions in *limine*, the Court ruled that Freeman and her medical providers (Dr. Valerie Beard, Dr. Pynkerton Newton, and Alta Skelton) may not testify as to medical causation opinion of Freeman's purported medical issues; the cause, presentation, and/or progression of psychosomatic symptoms in patients generally; and whether stress may hypothetically cause hypertension (*see* Filing No. 471 at 9).  The Court also ruled that Freeman may not use during trial or for summary judgment her medical records (Filing No. 337-4; Filing No. 336-23 at 23), the OneMain term sheet describing a loan (Filing No. 336-23 at 16), and the statement of attorney's fees allegedly incurred in connection with her foreclosure (Filing No. 336-40) (*see* Filing No. 473 at 8).

### A.      <u>Factual Background</u>

Freeman is the owner of real property and improvements located at 17373 Pine Wood Lane, Westfield, Indiana 46074. She purchased the property on December 2, 2003, as her primary residence and financed the purchase by a loan as evidenced by a note and a mortgage on the

property. The loan subsequently was assigned to BONY, and in September 2011, Ocwen began servicing the loan on behalf of BONY (Filing No. 84-15; Filing No. 272-1 at 5–6, 185–93).

In 2008, Freeman began experiencing financial difficulties that led to her falling behind on her mortgage payments, so on April 13, 2009, BONY filed a foreclosure action against Freeman in the Hamilton County Superior Court. Three years later, on April 23, 2012, Freeman filed a bankruptcy case pursuant to Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Indiana (Filing No. 84 at 10).

In the bankruptcy case, a proof of claim was filed on BONY's behalf, asserting a secured claim in the amount of $133,064.46 and pre-petition arrearages of $22,668.03 (Filing No. 84 at 11; see also In re Freeman, Case No. 12-04713 (Bankr. S.D. Ind.), ECF No. 47). The bankruptcy trustee filed an objection to certain amounts in the proof of claim, which led to the bankruptcy court entering an order that disallowed $10,289.84 from the arrearage amount in BONY's proof of claim, leaving arrearages in the amount of $12,378.10. The bankruptcy court also disallowed a $300.00 fee claimed on BONY's behalf related to the litigation over the objection to the proof of claim (Filing No. 84 at 11–13; see also In re Freeman, Case No. 12-04713 (Bankr. S.D. Ind.), ECF Nos. 53, 85).

On April 12, 2017, the bankruptcy trustee filed a notice of final cure payment, informing the bankruptcy court that all of the allowed pre-petition arrearages and fees had been paid as well as post-petition payments up to that point. Ocwen filed a response to the notice of final cure payment on April 24, 2017, agreeing with the trustee's filing and indicating that the loan would be due for the May 1, 2017 payment (Filing No. 84 at 13–14; see also In re Freeman, Case No. 12-04713 (Bankr. S.D. Ind.), ECF Nos. 109 and doc). On November 21, 2017, Freeman obtained an

order of discharge in the Chapter 13 bankruptcy (Filing No. 84 at 14; *see also In re Freeman*, Case No. 12-04713 (Bankr. S.D. Ind.), ECF No. 132).

After the bankruptcy discharge, Ocwen undertook a reconciliation process of the loan in February 2018. However, an error was made during the initial reconciliation after the close of the bankruptcy, and disallowed amounts were not removed from the loan.  Because of the error, the due date on the loan was incorrect in Ocwen's records, which led to Freeman's loan appearing to be delinquent even though it was not.  The erroneous delinquency led to the loan being considered in default, triggering property inspections and the beginning of the foreclosure process in May 2018.  Because of the erroneous default status on the loan, Ocwen informed Freeman during a June 2018 telephone call that it would accept only a full reinstatement payment and not a regular monthly payment (Filing No. 272-1 at 6–7; Filing No. 84-2; Filing No. 84-1 at 75).

Soon thereafter, by letter dated July 12, 2018, Freeman sent correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 1") to Ocwen in hopes of obtaining documents necessary to ascertain the cause of the alleged default.  Ocwen received RFI No. 1 on July 17, 2018.  On July 20, 2018, Ocwen sent correspondence to Freeman, acknowledging receipt of RFI No. 1. On July 23, 2018, Ocwen sent Freeman correspondence responding to RFI No. 1, explaining what documents were being sent to her (Filing No. 84-3; Filing No. 272-1 at 4, 18–19, 26–29).

On August 15, 2018, BONY filed a second foreclosure action against Freeman in the Hamilton County Superior Court (Filing No. 84-12). Then on October 29, 2018, Freeman sent correspondence captioned "Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 1") to Ocwen, alleging two errors committed by Ocwen.  NOE No. 1 was received by Ocwen on November 1, 2018.  On November 6, 2018, Ocwen sent correspondence to Freeman that

acknowledged receipt of NOE No. 1 (Filing No. 84-5; Filing No. 272-1 at 4–5, 151; Filing No. 272-4).

On November 13, 2018, Freeman sent correspondence captioned "Second Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 2") to Ocwen, alleging seven errors committed by Ocwen.  NOE No. 2 was received by Ocwen on November 19, 2018.  On November 20, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 2 (Filing No. 84-8; Filing No. 272-1 at 5, 158; Filing No. 272-5). By a second letter dated November 13, 2018, Freeman sent correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 2") to Ocwen, asking for information regarding the servicing of Freeman's loan.  Ocwen received RFI No. 2 on November 17, 2018 (Filing No. 84-7; Filing No. 272-1 at 5).

On December 4, 2018, Freeman sent correspondence captioned "Third Notice of Error Pursuant to Section 1024.35 of Regulation X" ("NOE No. 3") to Ocwen, alleging two errors committed by Ocwen.  NOE No. 3 was received by Ocwen on December 7, 2018.  On December 10, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 3 (Filing No. 84-10; Filing No. 272-1 at 5, 178; Filing No. 272-7).

Two days after Freeman sent her NOE No. 3 to Ocwen, she initiated the instant federal lawsuit against Ocwen in this Court on December 6, 2018 (Filing No. 1).  Shortly thereafter, BONY agreed to voluntarily dismiss the second foreclosure action against Freeman, and an order dismissing BONY's claim and Freeman's counterclaim was entered on January 23, 2019, by the Hamilton County Superior Court (Filing No. 272-3).

Concerning the three notices of error sent to Ocwen by Freeman, Ocwen's counsel sent correspondence to Freeman's counsel, explaining that Ocwen would be utilizing the statutory

extension for time to respond to the notices of error.  These letters regarding extensions of time for responding were sent to Freeman's counsel on December 10, 2018, December 20, 2018, and January 7, 2019 (Filing No. 272-8 at 2; Filing No. 272-9 at 2; Filing No. 272-10 at 2).  On January 7, 2019, Ocwen's counsel sent to Freeman's counsel a substantive response to NOE No. 1 (Filing No. 272-12).  Then on January 22, 2019, Ocwen's counsel sent to Freeman's counsel a substantive response to NOE No. 2 and a separate substantive response to NOE No. 3 (Filing No. 272-13; Filing No. 272-14).  Ocwen's responses to the notices of error provided an explanatory response to Freeman's asserted errors and also provided supporting documents.

In preparing to respond to the notices of error, Ocwen undertook research and investigation of Freeman's account.  Because of its findings from the research and investigation, Ocwen made changes to Freeman's account between November 23, 2018, and January 3, 2019, to correct its previous failure to remove disallowed amounts from Freeman's account. Ocwen removed disallowed fees and escrow amounts and made retroactive adjustments to the escrow charge on the account. After these changes were made, another reconciliation was undertaken, resulting in the account being paid through July 1, 2018, with an escrow surplus of $2,491.29 (Filing No. 272-1 at 8; Filing No. 272-2 at 26–27).

Effective June 1, 2019, loan servicing for Freeman's loan was transferred from Ocwen to PHH Mortgage Services ("PHH"), the successor by merger to Ocwen.  On June 7, 2019, PHH sent correspondence to Freeman, notifying her of the loan servicing transfer (Filing No. 272-1 at 8; Filing No. 272-18).  PHH's notice informed Freeman where her monthly payments should be made and provided a mortgage account record.  The notice also informed Freeman that there were no late charges, collection costs, escrow advances, or non-sufficient funds fees on her account (Filing No. 272-18 at 9).

B.    **Procedural Background**

On December 6, 2018, Freeman initiated this action against Ocwen by filing her initial complaint (Filing No. 1). Approximately three months later, Freeman filed a first amended complaint (Filing No. 24), and less than a year later, on September 20, 2019, Freeman filed a Second Amended Complaint, the operative pleading in this case (Filing No. 84). The Second Amended Complaint asserts eleven claims against Ocwen and previously dismissed co-defendants BONY and Manley Deas Kochalski, LLC. The sole claim against Manley Deas Kochalski, LLC for violation of the Fair Debt Collection Practices Act ("FDCPA") was dismissed with prejudice by stipulation of the parties (*see* Filing No. 112; Filing No. 113). The claim against Ocwen for violation of the Telephone Consumer Protection Act was also dismissed with prejudice by stipulation of the parties (*see* Filing No. 123; Filing No. 124).

In September 2019, Defendants Ocwen and BONY filed motions to dismiss the claims brought against them. After the motions were fully briefed, the Court issued a ruling, dismissing some of the claims and narrowing other claims (Filing No. 133). The Court dismissed Freeman's claim against BONY for violations of the Truth in Lending Act. *Id.* at 24. The Court also dismissed the following claims against Ocwen: violation of the Fair Credit Reporting Act, violation of the Discharge Injunction and Federal Rule of Bankruptcy Procedure 3002.1, violation of the Bankruptcy Court Orders, violation of the Indiana Crime Victim's Relief Act, and violation of the Indiana Deceptive Consumer Sales Act.

The Court dismissed in part the claim against Ocwen for violations of the Real Estate Settlement Procedures Act ("RESPA") to the extent that the claim is based upon Section 2609, but in all other respects, the claim survived the motion to dismiss. *Id.* at 27. The Court also dismissed in part the claim against Ocwen for violations of the FDCPA to the extent that the claim is based

upon the Bankruptcy Case and Discharge and to the extent that it is based on any conduct that occurred before December 6, 2017.  In all other respects, the FDCPA claim survived the motion to dismiss.  *Id.* at 29.

In the Order on Defendants' Motions to Dismiss, the Court narrowed Freeman's breach of contract claim against BONY (*see* Filing No. 133 at 18–19).  Following additional litigation, BONY filed a motion for summary judgment on the narrowed breach of contract claim.  The Court granted that motion, awarding summary judgment in favor of BONY, and with no remaining claims pending against BONY, the Court terminated BONY as a defendant in this action (Filing No. 475 at 17).

On April 25, 2022, Ocwen filed its pending Motion for Summary Judgment, asking the Court to enter summary judgment on the two remaining claims that survived the motion to dismiss. Throughout the subsequent months, the parties filed numerous ancillary motions related to the Motion for Summary Judgment, including Freeman's Motion for Leave to File Surreply.

## II.       SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.      <u>DISCUSSION</u>

Ocwen asks the Court to enter summary judgment in its favor on the two remaining claims that Freeman has asserted against it: (1) violation of RESPA to the extent that the claim is not based upon Section 2609, and (2) violation of the FDCPA to the extent that the claim is not based upon the Bankruptcy Case and Discharge and to the extent that it is not based on any conduct that occurred before December 6, 2017. After Ocwen filed its summary judgment reply brief, Freeman requested leave to file surreply. The Court will first address the Motion for Leave to File Surreply and then turn to the parties' summary judgment arguments.

A.   <u>**Motion for Leave to File Surreply**</u>

On April 25, 2022, Ocwen filed the instant Motion for Summary Judgment. Four months

later, on August 18, 2022, Freeman filed her response to the Motion. Approximately one month

later, on September 6, 2022, Ocwen filed its reply brief. Freeman then filed a Motion for Leave to

File Surreply, arguing that Ocwen advanced new arguments and asserted objections to her

evidence in its reply brief.

> The purpose for having a motion, response and reply is to give the movant
> the final opportunity to be heard and to rebut the non-movant's response, thereby
> persuading the court that the movant is entitled to the relief requested by the motion.
> New arguments and evidence may not be raised for the first time in a reply
> brief. Reply briefs are for replying, not raising new arguments or arguments
> that could have been advanced in the opening brief. Courts allow a surreply brief
> only in limited circumstances to address new arguments or evidence raised in the
> reply brief or objections to the admissibility of the evidence cited in the response.

*Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils.*, 410 F. Supp. 3d 943, 949 (S.D. Ind.

2019) (internal citations and quotation marks omitted).

By her Motion,

> Freeman respectfully seeks leave to file the attached Surreply to Ocwen's
> Reply in Support for Summary Judgment ('Surreply'), confront arguments,
> objections, and misstatements of law raised in its Reply for the first time. The
> Surreply is limited in focus to these issues and provides the Court with relevant
> authority and citation to the record Ocwen has omitted.

(Filing No. 391 at 1.) However, upon review of the parties' summary judgment briefing and

surreply briefing, the Court determines that Ocwen's reply brief did not inject new arguments or

issues into the summary judgment briefing.  A review of the parties' opening, response, and reply

briefs reveals that Ocwen's reply brief arguments were appropriate rebuttal to Freeman's response

brief arguments.  Ocwen did not raise new arguments or issues in its reply brief.  Regarding the

limited evidentiary objections asserted in Ocwen's reply brief, the Court notes that those objections

were fully briefed (including Freeman's opposition), analyzed, and decided in the Defendants'

motions in *limine* and the Court's Orders on those motions. In light of the limited purposes of a surreply brief and the limited circumstances under which they are permitted (which do not exist here), the Court **denies** Freeman's Motion for Leave to File Surreply as her surreply brief is an impermissible attempt to usurp from the movant the final opportunity to be heard.

**B.**   **Ocwen's Motion for Summary Judgment**

Freeman's two remaining claims against Ocwen allege violations of RESPA and the FDCPA. In ruling on the Defendants' motions to dismiss, the Court narrowed these two claims. The Court dismissed the RESPA claim to the extent it is based upon Section 2609. And the Court dismissed the FDCPA claim to the extent it is based upon the Bankruptcy Case and Discharge and to the extent that it is based on any conduct that occurred before December 6, 2017 (*see* Filing No. 133 at 35). The Court will first address the RESPA claim and then turn to the FDCPA claim.

**1.**   **Real Estate Settlement Procedure Act (RESPA) Claim**

Freeman's RESPA claim is based on her NOE No. 1, NOE No. 2, NOE No. 3, RFI No. 1, and RFI No. 2 that she sent to Ocwen. Among the many regulations that implement RESPA, two provisions provide that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). And a servicer must respond to a notice of error by *either*

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a

statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1). The regulations also establish time requirements for acknowledging receipt of a notice of error,[1] responding to a notice of error,[2] and utilizing an extension of time to respond to a notice of error.[3]

On October 29, 2018, Freeman sent NOE No. 1 to Ocwen, alleging two errors committed by Ocwen. NOE No. 1 was received by Ocwen on November 1, 2018. On November 6, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 1. One of the errors asserted by Freeman was a failure to provide an accurate payoff balance amount, which normally requires a response within a seven-day deadline; however, Freeman coupled this asserted error with another asserted error that provides for the thirty-day deadline, and Freeman acknowledged in her correspondence to Ocwen that its required response fell under the thirty-day deadline (Filing No. 84-5 at 1). Ocwen's response was due on December 14, 2018, but before that deadline expired, Ocwen notified Freeman that it would be utilizing the statutorily permitted extension, thereby making its response due on January 8, 2019. Ocwen's counsel sent to Freeman's counsel a timely substantive response to NOE No. 1 on January 7, 2019.

On November 13, 2018, Freeman sent NOE No. 2 to Ocwen, alleging seven errors committed by Ocwen. NOE No. 2 was received by Ocwen on November 19, 2018, and on November 20, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE

---

[1] 12 C.F.R. § 1024.35(d): within five (5) days excluding legal public holidays, Saturdays, and Sundays of a servicer receiving a notice of error from a borrower.

[2] 12 C.F.R. § 1024.35(e)(3)(i): within thirty (30) days excluding legal public holidays, Saturdays, and Sundays of a servicer receiving a notice of error from a borrower.

[3] 12 C.F.R. § 1024.35(e)(3)(ii): a servicer may extend the time period for responding by an additional fifteen (15) days excluding legal public holidays, Saturdays, and Sundays.

No. 2. Ocwen's response was due on January 3, 2019, but before that deadline expired, Ocwen notified Freeman that it would be utilizing the statutorily permitted extension, thereby making its response due on January 25, 2019. Ocwen's counsel sent to Freeman's counsel a timely substantive response to NOE No. 2 on January 22, 2019.

On December 4, 2018, Freeman sent NOE No. 3 to Ocwen, alleging two errors committed by Ocwen. NOE No. 3 was received by Ocwen on December 7, 2018. On December 10, 2018, Ocwen sent correspondence to Freeman that acknowledged receipt of NOE No. 3. Ocwen's response was due on January 23, 2019, but before that deadline expired, Ocwen notified Freeman that it would be utilizing the statutorily permitted extension, thereby making its response due on February 13, 2019. Ocwen's counsel sent to Freeman's counsel a timely substantive response to NOE No. 3 on January 22, 2019.

On July 12, 2018, Freeman sent RFI No. 1 to Ocwen, requesting information and documents concerning her account. Ocwen received RFI No. 1 on July 17, 2018, and on July 20, 2018, Ocwen sent correspondence to Freeman, acknowledging receipt of RFI No. 1. Three days later, on July 23, 2018, Ocwen timely sent Freeman correspondence responding to RFI No. 1, explaining what documents were being sent to her.

On November 13, 2018, Freeman sent RFI No. 2 to Ocwen, asking for information regarding the servicing of her loan. Ocwen received RFI No. 2 on November 17, 2018, thereby making the response due on January 2, 2019. Freeman initiated this federal lawsuit on December 6, 2018, before a response was due from Ocwen regarding NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2.

Ocwen argues that the timing of Freeman's lawsuit is fatal to her RESPA claim as to NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2. Ocwen asserts that a plaintiff must have standing

at the time the original complaint is filed. *See Pennell v. Glob. Tr. Mgmt. LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021). "Article III standing asks whether the complaint clearly alleges facts demonstrating that [the plaintiff] has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (internal quotation marks omitted).

Ocwen argues that Freeman clearly lacks standing because she filed her original complaint on December 6, 2018, alleging violation of RESPA with respect to the three notices of error and RFI No. 2, before the statutory deadline to respond had expired. Thus, Freeman could not have suffered any injury as a result of the notices of error or RFI No. 2 because the thirty-day deadline had not expired.

Freeman responds,

> This argument is a red herring. Though Freeman's Original Complaint was filed on December 6, 2018, allegedly before the 30-day deadline to respond to RFI No. 2 had expired, Freeman's Second Amended Complaint – the operative complaint – was filed on September 20, 2019, long after the 30-day deadline to respond to RFI No. 2 had expired. As Ocwen knows or should know, "an amended complaint completely replaces previous complaints, . . . ." *Ross v. Carter*, No. 1:20-cv-00876-JPH-MPB, 2020 WL 3104374, at *1 (S.D. Ind. June 10, 2020) Doc. 25 (additional citations). Accordingly, Freeman had indeed suffered an injury as a result of RFI No. 2, and had standing, at the time the operative complaint was filed.

([Filing No. 365 at 35](Filing No. 365 at 35).)

As to the notices of error, Freeman similarly argues,

> Freeman's Second Amended Complaint – the operative complaint – was filed on September 20, 2019, long after the 30-day deadline to respond to the NOE's had expired. *See Ross*, 2020 WL 3104374, at *1 ("an amended complaint completely replaces previous complaints, . . . ."). Accordingly, Freeman had indeed suffered an injury as a result of the NOE's, and had standing, at the time the operative complaint was filed.

*Id.*

14

The case upon which Freeman relies does not stand for the legal proposition for which Freeman asserts that it stands. *Ross* does not discuss or analyze standing. That case simply and fleetingly stated the unremarkable and undisputed legal principle that an amended complaint replaces any previous complaints.

The Seventh Circuit has clearly and unequivocally stated,

> The plaintiff "must establish standing at the time suit is filed and cannot manufacture standing afterwards." *Pollack v. United States DOJ*, 577 F.3d 736, 742 n.2 (7th Cir. 2009). The Article III standing inquiry "remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994).

*Pennell*, 990 F.3d at 1044. Citing the United States Supreme Court, the Seventh Circuit explained,

> Because standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the commencement of the suit. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 63 L. Ed. 2d 479, 100 S. Ct. 1202 (1980) (defining standing as the requisite personal interest that must exist at the commencement of the litigation) . . . . The requirements of standing must be satisfied from the outset . . . .

*Perry v. Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999). Furthermore,

> [S]tanding must be present at all stages of the litigation, including on appeal. When a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness. Mootness is the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).

*Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010) (internal citations and quotation marks omitted).

And finally, the Supreme Court has clearly stated, "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (emphasis added, internal citations omitted).

The Supreme Court and the Seventh Circuit have made it abundantly clear that the standing analysis focuses on the time that the original complaint is filed and the lawsuit has commenced, not at the time of any subsequently filed amended complaint. While standing must exist throughout the life of the litigation to avoid mootness, standing must exist at the time the plaintiff brings the lawsuit. Ocwen's argument is well-taken. Pertaining to NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2 for the RESPA claim, no injury occurred or could have occurred at the time that Freeman filed her federal lawsuit because Ocwen's deadline to respond had not yet expired. When this lawsuit was commenced, Ocwen still had additional time to provide an adequate response to Freeman's NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2, and thus, there was no injury. Therefore, summary judgment in favor of Ocwen is appropriate on the RESPA claim to the extent it is based on Freeman's NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2.

Regarding RFI No. 1, Ocwen argues that it is entitled to summary judgment on the RESPA claim because it fully complied with the statute's requirements. Ocwen points out,

> If a loan servicer receives a valid qualified written request, RESPA requires it to take the following actions, but only "if applicable": (A) "make appropriate corrections in the account of the borrower"; (B) after investigating the account, "provide the borrower with a written explanation or clarification" explaining why the account is correct; or (C) "provide the borrower with . . . [the] information requested by the borrower" or explain why it is "unavailable".

*Perron v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (internal citations omitted). Ocwen argues that it met its statutory obligations by fully responding to RFI No. 1 by providing the documents and information requested relating to the servicing of Freeman's account. Ocwen met all of the technical requirements of RESPA, including sending an acknowledgement letter.

In response, Freeman contends,

> Freeman directed RFI No. 1 on July 12, 2018 and it was received by Ocwen on or about July 17, 2018. [Filing No. 84-3]. Ocwen responded via correspondence dated July 20, 2018 and July 23, 2018. A true and accurate copy of Ocwen's

16

combined responses are attached hereto as [Filing No. 336-39]. In addition, a table reflecting the documents requested and whether they were provided is attached hereto as *Exhibit QQ*. As set forth therein and as reflected in the documents themselves, Ocwen did not respond to Freeman's RFI No. 1 or RFI No. 2 in accordance with 12 CFR § 1024.36(d)(1). *See* [Filing No. 336-39]; *see also Exhibit QQ* The documents and information requested were appropriate and readily available to Ocwen yet it declined to provide them. It provides nothing by way of specific evidence to support the contrary.

(Filing No. 365 at 27–28.)

After reviewing the designated evidence, the statutory requirements, and the parties' arguments, the Court concludes that Ocwen appropriately responded to Freeman's RFI No. 1 and is entitled to summary judgment on the RESPA claim as it relates to RFI No. 1. Freeman's "Exhibit QQ" is nothing more than an attorney's subjective summarization and characterization of some evidence, which is not authenticated or sworn to. Ocwen's acknowledgment of receipt and substantive response to RFI No. 1 (Filing No. 336-39; Filing No. 272-1 at 4, 16–149) were timely provided to Freeman, and they sufficiently responded to Freeman's request for information. Ocwen's responses provided written explanation to Freeman's questions, provided supporting documentation, and asked for additional information from Freeman where more information was needed to be able to respond further. Ocwen's responses also provided a statement of Freeman's right to request documents relied upon by the servicer in reaching its determination, information regarding how Freeman could request such documents, and contact information, including a telephone number, for further assistance. As to Freeman's RFI No. 1, Ocwen satisfied its RESPA obligations.

Because Ocwen fulfilled its RESPA duties as to RFI No. 1, and because Freeman lacks standing as to NOE No. 1, NOE No. 2, NOE No. 3, and RFI No. 2, summary judgment is **granted** in favor of Ocwen on Freeman's RESPA claim.

Concerning Freeman's allegations of a pattern or practice of RESPA violations, Freeman argues that she "has also established numerous violations of RESPA with respect to other parties as well as herself by way of portions of the RCRs set out above. *See also* Ocwen_006925, attached to Filing No. 337-2 as ***Exhibit F***, dealing with the tracking of consumer complaints." (Filing No. 365 at 38.) Freeman continues, "This risk area remained unresolved in 2016 and there is nothing in the record to evidence these issues were resolved before the relevant time period." *Id.* "This, along with other portions of the RCRs and the stark similarity between this case and *Saccameno*, 372 F. Supp. 3d 609 (N.D. Ill. 2018), create a question of fact as to whether Ocwen has engaged in a pattern and practice of servicing misconduct." *Id.*

Ocwen replies,

> Plaintiff's claims of a "pattern and practice" of violations under RESPA is supported by nothing more than conclusory allegations and fails. Even assuming that a claim of pattern and practice under RESPA may involve one or many borrowers, the cases Plaintiff cites bely her argument. Specifically, Plaintiff cites (ostensibly) to *Quimby v. Caliber Home Loans*, 2015 WL 3751511, at *2 (S.D. Ind. 2015) and *Obazee v. Bank of New York Mellon*, 2015 WL 8479677, at *3 (N.D. Tex. 2015), both of which concern whether the plaintiffs had sufficiently alleged a "pattern and practice" such that their claims could survive a motion to dismiss. Moreover, *Obazee* notes specifically that "[o]ther courts have held – quite correctly – that '[a]lleging a pattern or practice of *noncompliance* requires more than a bare assertion' of the making of complaints. One reason that alleging the making of complaints is insufficient to plead a 'pattern or practice' is because '"complaints" do not equate to "noncompliance[.]"'" *Obazee*, 2015 WL 8479677 at *3 (emphasis in original) (citations omitted). In support of her allegations, Plaintiff argues merely that she "has also established numerous violations of RESPA with respect to other parties as well as herself by way of portions of the RCRs set out above," Pl.'s Opp. at 38, which she herself characterizes as "dealing with the tracking of consumer *complaints*." *Id.* (emphasis added). Even if the RCRs were relevant and admissible evidence, such a conclusory allegation as to what Plaintiff has established and Plaintiff's concession that such evidence deals with complaints rather than cases of non-compliance is insufficient to establish a genuine dispute of material fact. *See Obazee*, 2015 WL 8479677 at *3. Thus, Plaintiff has failed to establish a pattern and practice of noncompliance under RESPA and therefore her claim for statutory damages fails as a matter of law.

(Filing No. 376 at 35–36.)

Ocwen further asserts that the Seventh Circuit has held that in order to show a "pattern or practice" under RESPA, there must be more than random examples of similar behavior; rather, there must be some evidence of "coordination." *See Perron*, 845 F.3d at 858. And fatal to Freeman's pattern or practice claim is that Ocwen did not violate RESPA in this case. There can be no pattern or practice claim against Ocwen in this case because there is no violation here to be a part of any pattern or practice.

The Court agrees with Ocwen; the designated evidence does not establish a pattern or practice of noncompliance with RESPA that is connected to any violation of RESPA against Freeman in this case. The evidence shows that Ocwen complied with RESPA as to its interactions with Freeman, so Freeman cannot establish that Ocwen failed to comply with RESPA making it liable to Freeman for additional damages in the case of a pattern or practice of noncompliance with the requirements of RESPA. *See* 12 U.S.C. § 2605(f). Thus, summary judgment is appropriate in favor of Ocwen as to Freeman's pattern or practice allegations.

### 2. **Federal Debt Collection Practices Act (FDCPA) Claim**

When the Court ruled on Ocwen's motion to dismiss, the Court concluded, "[t]he FDCPA claim against Ocwen is dismissed to the extent it is based on any conduct that occurred before December 6, 2017, and where it is based upon the Bankruptcy Case and Discharge. The FDCPA claim may proceed in all other respects." (Filing No. 133 at 35.) In reaching this conclusion, the Court explained,

> The Court first notes that the Supreme Court recently held that the discovery rule does not apply to the FDCPA to extend the one-year statute of limitations, which begins on the "date on which the violation occurs." *Rotkiske v. Klemm*, 140 S. Ct. 355 (U.S. 2019). Therefore, the Court **grants** Ocwen's Motion to Dismiss the FDCPA claim to the extent it is based on any conduct that occurred before December 6, 2017, because this case was filed on December 6, 2018. The Court agrees with Ocwen's position regarding preemption or preclusion of the FDCPA claim to the extent it is based upon the bankruptcy proceedings and the Bankruptcy

19

Code. Paragraph 257 of the Second Amended Complaint contains explicit references to the Bankruptcy Case and Discharge, and therefore, the Court **dismisses** the FDCPA claim to the extent it is based upon these allegations.

The remaining allegations supporting Freeman's FDCPA claim are not based solely on conduct arising from the bankruptcy proceeding, so those theories of liability are not preempted. Freeman has alleged sufficient facts regarding Ocwen's conduct to support a claim for an FDCPA violation to move beyond the motion to dismiss stage. The Court **denies** dismissal of the FDCPA claim based upon Freeman's allegations not directly tied to the Bankruptcy Case and Discharge.

*Id.* at 29.

Ocwen argues that it is entitled to summary judgment on Freeman's FDCPA claim because (1) Freeman lacks Article III standing as she did not suffer a concrete injury that is fairly traceable to Ocwen's challenged conduct, (2) the FDCPA claim is preempted by the Bankruptcy Code, and (3) any alleged FDCPA violation was the result of a *bona fide* error. Because the issue of standing and a lack of concrete injury is dispositive of the FDCPA claim, the Court focuses its discussion and analysis on that argument.

"Standing must be established with the manner and degree of evidence required at the successive stages of the litigation." *Pierre v. Midland Credit Mgmt.*, 29 F.4th 934, 939 (7th Cir. 2022) (internal quotation marks and citation omitted). Now at the summary judgment stage of litigation, Freeman cannot merely rest upon her bare allegations; she must support her FDCPA claim with admissible designated evidence.

Standing has three elements. A plaintiff must have (1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Without "an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019).

*Pierre*, 29 F.4th at 937.

The Seventh Circuit has explained,

A concrete injury is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (quotation marks omitted). Qualifying injuries are those with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 578 U.S. at 341). This standard includes "traditional tangible harms, such as physical harms and monetary harms," as well as "[v]arious intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*; *see also Spokeo*, 578 U.S. at 340–42.

*Pierre*, 29 F.4th at 937–38.

A "concrete" injury must be "*de facto*," meaning it must actually exist. *Spokeo*, 578 U.S. at 340. A plaintiff cannot satisfy the requirement of standing by alleging a bare procedural violation because a violation of a procedural requirement may result in no harm. *Id.* at 342. "A plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized." *Pierre*, 29 F.4th at 938 (citing *TransUnion*, 141 S. Ct. at 2210–11).

Within the context of FDCPA claims, the Seventh Circuit has held,

As our bevy of recent decisions on FDCPA standing makes clear, anxiety and embarrassment are not injuries in fact. Indeed, we have expressly rejected "stress" as constituting concrete injury following an FDCPA violation. *Pennell v. Global Tr. Mgmt.*, 990 F.3d 1041, 1045 (7th Cir. 2021). Likewise, it is not enough for a plaintiff to be "annoyed" or "intimidated" by a violation. *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020). Nor is it enough for a plaintiff to experience "infuriation or disgust" or "a sense of indignation." *Id.* Likewise, a plaintiff's "state of confusion" resulting from an FDCPA-deficient communication, without any ensuing detriment, is not a concrete injury for if it were, "then everyone would have standing to litigate about everything." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068–69 (7th Cir. 2020). These are quintessential abstract harms that are beyond our power to remedy. The same is true of the stress and embarrassment that [plaintiff] complains of in this case.

*Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668–69 (7th Cir. 2021). *See also Pucillo v. Nat'l Credit Sys.*, 66 F.4th 634, 638–39 (7th Cir. 2023) (being "concerned," "upset," "worried," "stressed," or "alarmed" is not a concrete injury); *Markakos v. Medicredit, Inc.*, 997

F.3d 778, 780 (7th Cir. 2021) ("confusion" and "aggravation" is not a concrete injury; there must be more than just an emotional response).

Ocwen argues that, in this case, Freeman has not shown that she has suffered a concrete injury fairly traceable to its alleged violations of the FDCPA. Instead, Ocwen asserts, all that Freeman has alleged is that she suffered anxiety, stress, embarrassment, and psychological harm, and this is not enough to rise to the level of a concrete injury to support Article III standing for an FDCPA claim. Freeman has not paid any money to Ocwen that she was not legally obligated to pay under the terms of her loan, and she has not acted to her detriment in any way. Instead, she has allegedly suffered vague emotional damages. Ocwen argues that Freeman failed to designate admissible evidence to support a concrete injury, and she advances arguments based upon theories and facts that were never alleged in the pleadings or disclosed during discovery and that she contradicts with her own evidence.

In response, Freeman contends that she has Article III standing because Ocwen's FDCPA violations have resulted in concrete injuries to her. She argues that these concrete injuries are in the form of foreclosure fees and costs; $12,067.50 in attorney's fees and costs owed to Clark, Quinn, Moses, Scott & Grahn, LLP to defend against a foreclosure action; a loss of time in disputing charges and contacting her lawyers; and physical manifestations of her emotional distress. She further argues that she has been concretely injured because her claim is akin to the recognized claims of reputational harm caused by defamation; portrayal in a false light; unjustifiable litigation torts leading to mental distress; loss of consortium leading to marital stress; and invasion of privacy or intrusion upon seclusion.

After careful consideration of the controlling case law, the admissible designated evidence, and the parties' arguments, the Court determines that Freeman has failed to establish that she

suffered a concrete injury that is fairly traceable to Ocwen's alleged violations of the FDCPA; thus, Freeman lacks Article III standing to pursue her FDCPA claim. In its Orders on the Defendants' motions in *limine*, the Court excluded medical causation opinion of Freeman's purported medical issues from Freeman and her medical providers; the cause, presentation, and/or progression of psychosomatic symptoms in patients generally; and whether stress may hypothetically cause hypertension. The Court also excluded Freeman's medical records, the OneMain loan term sheet, and the statement of attorney's fees allegedly incurred in connection with her foreclosure.

The Court is not required to scour the record in search of evidence to defeat a motion for summary judgment, and speculation or conjecture will not defeat a summary judgment motion. A motion for summary judgment also is not defeated by conclusory statements and allegations or by an attorney's characterizations.

There is no evidence in the record to support Freeman's claim that she was concretely injured by having to incur attorney's fees from the foreclosure proceedings because that evidence was excluded by the Order in *limine* (*see* Filing No. 473). There also is no admissible evidence in the record that Freeman actually has paid fees, charges, or costs that were not proper. Similarly, Freeman has not designated any admissible evidence that her credit or reputation have been harmed by Ocwen's alleged FDCPA violations. Regarding Freeman's argument that she has been concretely injured because her FDCPA claim is similar to other recognized common law claims, Freeman's conclusory assertions are not supported by admissible evidence of actual injury, and at the summary judgment stage, Freeman must designate admissible evidence to move forward. Conclusory statements are not enough. The alleged result suffered by Freeman was embarrassment, anxiety, and stress, but these types of harm are not concrete injuries under Seventh Circuit FDCPA precedent.

Freeman repeatedly argues that she has suffered emotional or psychological harms that have resulted in physical manifestations of injury. However, there is no admissible evidence in the record of medical causation for Freeman's physical conditions, so she cannot support her allegation that Ocwen's FDCPA violations caused her physical injury arising from mental distress. Such assertion is based upon speculation and conjecture. Again, the Seventh Circuit has been clear that anxiety, stress, fear, confusion, and embarrassment are not concrete injuries for FDCPA standing.

Relying on an Illinois federal district court's opinion, Freeman argues that her loss of time dealing with Ocwen and working with her lawyers is sufficient to support a concrete injury. However, the Seventh Circuit very recently explained, "Making a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit. Nor is seeking legal advice." *Pierre*, 29 F.4th at 939.

In light of the admissible evidence that has been designated by the parties and the Seventh Circuit's recent FDCPA standing case law, Freeman has not shown that she suffered a concrete injury that is fairly traceable to Ocwen's alleged FDCPA violations. As such, she lacks standing to pursue her FDCPA claim against Ocwen. Ocwen is entitled to summary judgment on this claim.

## C.   Counsel's Misrepresentations

The Court takes a moment to note that an attorney's zealous advocacy for a client's position is expected. Misrepresenting case law and designated evidence is unacceptable. Unfortunately, Freeman's counsel crossed the line into the unacceptable in opposing summary judgment.

For example, when discussing the issue of standing and the timing of filing a complaint, Freeman's counsel represented to the Court that the case *Ross v. Carter*, 2020 WL 3104374 (S.D. Ind. June 10, 2020), stands for the proposition that an amended complaint completely replaces any previous complaints, so standing is determined at the time the operative complaint is filed. Yet,

the order in *Ross* was the court's simple screening order, and it did not consider, analyze, or discuss in any way principles of standing.

After Ocwen pointed out in its reply brief that Freeman's counsel had grossly taken out of context the quote from *Ross* and that *Ross* did not discuss standing, Freeman's counsel persisted in misrepresenting the case law to the Court. In the proposed surreply brief, Freeman's counsel represented that the Seventh Circuit in *Wellness Cmty. Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995), held that standing must be considered on the basis of the amended complaint, not the original complaint, because it is well established that the amended pleading supersedes the original pleading. However, again, the court in *Wellness* did not consider, analyze, or discuss in any way principles of standing. Rather, the court was considering whether federal question jurisdiction or diversity jurisdiction applied based on consideration of either the original or amended complaint. The Seventh Circuit did not hold in *Wellness*—as Freeman's counsel represented—that standing must be considered on the basis of the amended complaint, not the original complaint.

Freeman's counsel misrepresented to the Court that Ocwen's deadlines to respond to Freeman's correspondence were December 14, 2018 (NOE No. 1), December 28, 2018 (NOE No. 2), January 18, 2019 (NOE No. 3), and December 28, 2019 (RFI No. 2) (*see* Filing No. 365 at 35). The correct dates for Ocwen's original deadlines were December 14, 2018 (NOE No. 1), January 3, 2019 (NOE No. 2), January 23, 2019 (NOE No. 3), and January 2, 2019 (RFI No. 2). What is more, Freeman's counsel did not bother to inform the Court that Ocwen had notified Freeman that it would be utilizing the statutorily permitted extension of time to respond, so the deadlines to respond actually were extended to January 8, 2019 (NOE No. 1), January 25, 2019 (NOE No. 2), February 13, 2019 (NOE No. 3), and January 24, 2019 (RFI No. 2).

An example of Freeman's counsel making representations to the Court that were not

supported by the evidence is the following:

> Paragraph 11 of Ocwen's Statement of Undisputed Material Facts proclaims "Ocwen also did not receive any payments from Plaintiff between July 2018 and December 2018." This is incorrect. Freeman submitted payment to Ocwen by check for her monthly payments in July, August, September, October and November 2018. Demona Freeman Dep. 98:6-11 [Filing No. 336-18]. Those checks were neither deposited nor returned. Ocwen's records do not reflect this because its system of record does not track such information. *See* Ocwen_Freeman 006883, "CGS-CMS - Cash Rejection Specifics - Q1-2014-001", attached to Filing No. 337-1 as ***Exhibit E***; Ocwen_Freeman 006885, "Misidentified Payments Are Misapplied or Not Remitted", attached to Filing No. 337-1 as ***Exhibit E***.

(Filing No. 365 at 11–12.)

Freeman failed to point to any evidence for her assertion that the "checks were neither

deposited nor returned." As to Freeman's assertion that "Ocwen's records do not reflect this because

its system of record does not track such information," the evidence cited by Freeman relates to

issues with the rejection of cash payments in 2014, 2015, and early 2016, with an anticipated

resolution date in April 2016, and the entry was last modified on January 7, 2016 (Filing No. 337-1 at 8). The other evidence cited by Freeman relates to issues when inaccurate or incomplete

information is provided by the borrower, with an anticipated resolution date in May 2016, and the

entry was last modified on February 12, 2016. *Id.* at 9.  This evidence does not support Freeman's

assertion that her checks allegedly sent in July, August, September, October, and November 2018

were not deposited or returned and Ocwen's system of records did not track such information.

When Freeman opposed the summary judgment motion filed by co-defendant BONY,

Freeman's counsel represented that "Ocwen issued a Form 1098 Mortgage Interest Statement

[Filing No. 336] to Freeman reflecting interest paid in 2018 in the amount of $2,056.38 when in

fact she paid more. As a result, she will incur costs to amend her 2018 tax return. *See* Patterson

Report [Filing No. 336]." (Filing No. 338 at 22 (bracketed information in original)).  However,

upon examination of the Patterson Report, nowhere in the lengthy Patterson expert report does Patterson opine or conclude that Freeman will incur costs to amend her 2018 tax return, nor does he discuss her 2018 tax return.

Misrepresenting case law and designated evidence significantly delays the process of ruling on motions. This is especially burdensome and damaging in a federal district such as this one where the case load already is very heavy. Freeman's counsel is admonished regarding the actions taken in this case and should carefully consider the boundary between zealous advocacy for a client's position and misrepresenting evidence and case law.

### IV.    <u>CONCLUSION</u>

For the reasons discussed above, Ocwen's Motion for Summary Judgment (Filing No. 268) is **GRANTED**, and summary judgment is awarded in favor of Ocwen on Freeman's RESPA and FDCPA claims.  Furthermore, Freeman's Motion for Leave to File Surreply (Filing No. 391) is **DENIED**.  With no other claims remaining to be adjudicated, the final pretrial conference and the trial are **VACATED**, and all other pending motions are **DENIED as moot**.  Final judgment will issue under separate order.

**SO ORDERED.**

Date:   7/5/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Olivia Anne Hess
CLARK QUINN MOSES SCOTT & GRAHN LLP
ohess@clarkquinnlaw.com

Travis W. Cohron
CLARK QUINN MOSES SCOTT & GRAHN LLP
tcohron@clarkquinnlaw.com

Michael P. Maxwell, Jr.
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

Jennifer F. Perry
CLARK QUINN MOSES SCOTT & GRAHN LLP
jperry@clarkquinnlaw.com

Rusty A. Payton
PAYTON LEGAL GROUP LLC
info@payton.legal

John Curtis Lynch
TROUTMAN SANDERS LLP
john.lynch@troutman.com

Carter Randall Nichols
TROUTMAN SANDERS LLP
carter.nichols@troutman.com

Ethan Ostroff
TROUTMAN SANDERS LLP
ethan.ostroff@troutman.com

Nicholas H. Wooten
DC Law, PLLC
nick@texasjustice.com